Daniel P. Pepple
PEPPLE JOHNSON CANTU & SCHMIDT
1501 Western Avenue, Suite 600
Seattle, WA 98101
206.625.1711 / 206.625.1627 Fax
dpepple@pjcs.com
*Attorneys for Creditor – Bank of America*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Arlie & Company,<br><br>Debtor. | Case No. 10-60244-aer11<br><br>BANK OF AMERICA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY FOR CONTINUED USE OF CASH COLLATERAL |

Ten months have elapsed since the Debtor filed bankruptcy. During those ten months, the Debtor has used the secured creditors' cash collateral to pay operating expenses of more than $2,000,000, including close to $375,000 in salaries to the principals of the Debtor (September Monthly Report, Doc. 286). During that ten-month period, Debtor has not submitted a proposed plan of reorganization with any realistic possibility of being confirmed and has not even managed to get a disclosure statement approved.

The revised proposed plan of reorganization filed by the Debtor on August 20, 2010 (Doc 235) reflected extensive negotiations with secured creditor Umpqua Bank, but by that date there still had been no substantive discussions with any of the other secured creditors.[1] At the request of Debtor's previous counsel, the creditors consented to extension of the

---

[1] Apparently, the extensive negotiations with Umpqua were for naught, floundering on the Debtor's insistence on retaining dubious lender liability claims against Umpqua.

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 1

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

exclusivity period to September 15, 2010, and again to October 15, 2010, based on the Debtor's representation to the Court and to the creditors that the Debtor would use that time to try and negotiate a confirmable plan with the creditors. Instead, notwithstanding a number of calls to the Debtor by Bank of America representatives (see Declaration of Jo Ann Tallerico filed in support of these Objections), the Debtor had virtually no substantive discussions with Bank of America about potential terms of the plan. We expect the other secured creditors would give a similar report. It now turns out that the Debtor was using that time not to negotiate with the creditors but to find new bankruptcy counsel.

Having accomplished basically nothing for ten months, the Debtor now has the temerity to ask for extension of the Cash Collateral Order (Doc 275). Bank of America strenuously objects.

## BACKGROUND

Bank of America has two real estate secured construction loans to the Debtor. The first loan ("Building A Loan") was made to Debtor on or about February 27, 2007, in the maximum principal amount of $9,000,000 in order to finance the construction of "Crescent Village Building A," which is a mixed-use retail and multifamily apartment property. The second loan ("Building D Loan") was made to Debtor's subsidiary, 2911 Tennyson Avenue, LLC (merged into Debtor on the eve of Debtor's bankruptcy filing) on or about November 2, 2007, in the maximum principal amount of $5,970,000.00, in order to finance the construction of "Crescent Village-Building D," which is a mixed-use retail and office property.

The Building A Loan is secured by a first deed of trust against Crescent Village Building A and the Building D Loan is secured by a first deed of trust against Crescent Village Building D. Each deed of trust contains an absolute assignment of rents and leases to Bank of America and grants Bank of America a security interest in all tangible and

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 2

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

intangible personal property perfected by recordation in the real property records of Lane County, Oregon and by filing a UCC-1 Financing Statement in the offices of the Secretary of State of the State of Oregon. Both the Building A Loan and the Building D Loan naturally matured on January 2, 2010, which was prior to commencement of this case (see, Declaration of John J. Wuest, Doc 92).

The principal amount currently owing on the Building A Loan is $8,956,961.00 and as of October 8, 2010, the accrued unpaid interest on the Building A Loan totaled $296,929.70. Interest is continuing to accrue at a per diem of $1,044.62 (see Declaration of Jo Ann Tallerico filed in support of these Objections). After maturity the Building A Loan and the Building D Loan accrue interest at 4% over the one month LIBOR rate which is now approximately 0.3% for an accrual rate of approximately 4.3% (see, Declaration of John J. Wuest, Doc 92). Under 11 USC Section 506(b), as an oversecured creditor as of the petition date, Bank of America is entitled to receive interest on the Loans at the contractual rate set out in the loan documents. See, United States v. Ron Pair Enterprises 489 U.S. 235 (1989) and Bank of Honolulu v. Anderson 833 F. 2d 834 (9th Cir. 1987).

In addition, to date Bank of America has incurred approximately $31,000 in legal fees allocable to the Building A Loan (see, Declaration of Jo Ann Tallerico filed in support of these Objections), which the Debtor is obligated to pay under the loan documents for the Building A loan (see, Declaration of John J. Wuest, Doc 92). Of course, those fees are continuing to accrue. Also owing are delinquent property taxes in excess of $220,000 which have priority over the Bank's deed of trust and property taxes are continuing to accrue. (See, Declaration of Daniel P. Pepple filed in support of these Objections). Inexplicably, the amended budget for Buiding A filed by the Debtor in connection with its motion to extend the Cash Collateral Order (see, Exhibit 1, Doc 283) reduces the property taxes for Building A (property tax account no. 1743127) from $101,202.11, which was the amount originally represented by the Debtor (See, Exhibit 1 to Final Order Authorizing Use of Cash Collateral,

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 3

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

Doc 133), to $33,900.70. The Lane County Real Property Tax Statement attached to the Declaration of Daniel P. Pepple filed herewith discloses that unpaid 2009 and 2010 property taxes for Building A total more than $220,000, not $33,900.

The cash on hand in the cash collateral account for Building A totaled $302,946.83 as of September 30, 2010 (see September Monthly Report, Doc 286), *which is more than $240,000 short of the amount necessary to pay the property taxes on Building A ($220,000), the accrued interest on the Building A Loan ($296,929.70) and legal fees ($31,000). Thus, every month the existing Cash Collateral Order remains in effect, Bank of America's "equity cushion" in the Building A property is being further eroded.*

That "equity cushion" for the Building A Loan is already perilously small. Including principal, accrued interest, property taxes and legal fees, the amount now owing on the Building A Loan (after credit for funds in the Building A cash collateral account) is more than $9,200,000. According to a third party MAI appraisal of Building A, the fair market value of Building A was $10,380,000 as of February 24, 2010 (see, Declaration of Brian L. Kelley, MAI filed in support of these Objections), which results in an 89% loan-to-value ratio, or an equity cushion of less than 11% which, as indicated above, is eroding each month the existing Cash Collateral Order remains in effect.

Because of the Debtor's previous use of Bank of America's cash collateral, the Building D situation is considerably worse. The principal amount now owing on the Building D Loan is $5,455,581.38, and as of October 8, 2010, the accrued unpaid interest on the Building D Loan was $180,856.45 with interest continuing to accrue at a per diem of $636.27 (see Declaration of Jo Ann Tallerico filed in support of these Objections). There are delinquent property taxes owing in excess of $143,000 which have priority over the Bank's deed of trust and property taxes are continuing to accrue. Similarly to Building A, the Amended Budget for Building D filed by the Debtor in connection with its motion to extend the Cash Collateral Order (See, Exhibit 1, Doc 283) inexplicably reduces the property taxes

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 4

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

for Building D from $81,875 (see Exhibit 1 to Final Cash Collateral Order, Doc 133) to $27,291.66. According to the Lane County Assessor, the 2009 and 2010 property taxes owing on Building D total more than $143,000 (see, Declaration of Daniel P. Pepple filed herewith). Legal fees to date allocable to the Building D Loan total in excess of $18,000 and those fees are continuing to accrue.

The cash on hand in the cash collateral account for Building D totaled $140,553.63 as of September 30, 2010 (see September Monthly Report, Doc 286), *which is more than $200,000.00 short of the amount required to pay the property taxes now owing on Building D ($143,000), the accrued interest on the Building D Loan ($180,856.45) and accrued legal fees ($18,000). Every month the existing Cash Collateral Order remains in effect, the deficit increases.*

While the "equity cushion" for the Building A Loan is perilously small, because of the Debtor's prior use of the Building D cash collateral, there is now virtually no "equity cushion" for the Building D Loan. Including principal, accrued interest, property taxes and legal fees, the amount now owing on the Building D Loan (after credit for funds in the Building D cash collateral account) is almost $5,657,000. The appraised fair market value of Building D was $5,700,000 as of February 19, 2010 (see, Declaration of Robert L. Hickok, MAI, filed in support of these Objections), a loan-to-value ratio of more than 99%. While the Debtor claims to have leased about 5,000 square feet of space in Building D since the date of the appraisal, that minor leasing activity does not significantly increase the value of the Building D Property and does not make up for the fact that for each month the Debtor is permitted to pay overhead and administrative expenses out of the Building D cash collateral account, the deficit in funds available to pay interest, property taxes and fees increases.

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 5

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

## ARGUMENT

Under 11 USC Section 363(c)(2), the Debtor may use a secured creditor's cash collateral only if the secured creditor consents to such use or the court, after notice and hearing, authorizes the use of the cash collateral in accordance with the provisions of 11 USC Section 363. When this case was commenced, Bank of America stipulated to entry of the Cash Collateral Order (Doc 133) permitting Debtor's temporary use of Bank of America's cash collateral for payment of overhead and administrative expenses on the assumption that the Debtor would use the exclusive period to come up with a plausible and confirmable plan of reorganization. Now that the Debtor has dissipated the extended exclusive period, Bank of America is no longer willing to consent to the use of its cash collateral for anything other than payment of expenses directly pertaining to its collateral and submits that any other use would violate both the letter and the spirit of 11 USC Section 363, since Bank of America's security interests would not be "adequately protected."

Under 11 USC Section 363(e), the Debtor may use Bank of America's cash collateral over the Bank's objections only if the Debtor can provide "adequate protection" of the Bank's security interests. "Adequate protection" is intended to safeguard the secured creditor's right to have the value of its secured claim, as it existed on the petition date, preserved. See, United States Sav. Ass'n v. Timber of Inwood Forest Assoc. 484 U.S. 365, 370 (1988). Under 11 USC Section 363(p), the Debtor bears the burden of proof regarding whether the secured creditor's security interest is "adequately protected." If the secured creditor's security interest is not "adequately protected," the Debtor's use of the cash collateral must be denied.

The liens granted Bank of America in the Building A and Building D cash collateral accounts under the existing Cash Collateral Order would constitute "adequate protection" if the funds accumulating in those accounts were sufficient to keep up with the accruing interest, property taxes and legal fees. Thus far, those accounts are deficient and the

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 6

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

Debtor's own projections reveal that they will be deficient for so long as the Debtor is permitted to raid those accounts to pay overhead and administrative expenses, including salaries to each of the Debtor's principals of $18,750 per month (see, Notice of Filing Amended Budgets, Doc 283). If the correct property tax numbers are used, the deficiency is even more alarming.

Since the funds accumulated in the cash collateral accounts are not sufficient to pay accrued and accruing interest, property taxes and legal fees, the only other possible source of "adequate protection" of the Bank's security interests is an "equity cushion" in the collateral. The Bank's "equity cushion" for the Building A Loan is less than 9% and there is now no "equity cushion" for the Building D Loan. While an "equity cushion" may constitute "adequate protection," an "equity cushion" as marginal as the Bank has with respect to the Building A Loan does not, particularly when the "equity cushion," such as it is, is eroding each month. See, In Re Schaller 27 B.R. 959, 961-62 (W.D. Wis., 1983) (equity cushion of 17%-18% insufficient where cushion was being eroded by daily accrual of interest); Bank of Rhode Island v. Pawtuxet 386 B.R. 1 (U.S. District Ct., Rhode Island, 2008) (equity cushion of 4% insufficient); In re The Atrium Development Company 159 B.R. 464 (E.D Va., 1993) (12% equity cushion not sufficient adequate protection for use of cash collateral).

The only way to assure that the interests of Bank of America are adequately protected is to permit the cash collateral from Building A and Building D to be used exclusively to pay the expenses of operating, maintaining and preserving those properties, with the rest of the rents and revenues of those properties accumulating in the cash collateral accounts for payment of property taxes, legal fees and accrued interest on the Loans when and if a plan of reorganization is approved (or this case is otherwise resolved). Those expenses would properly include a management fee to the Debtor so long as it acts as the property manager but no funds to pay the Debtor's general overhead and administrative expenses. See, Federal National Mortgage Association v. Dacon Bollybrook

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 7

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

Associates 153 B.R. 204, 214 (N.D. Ill., 1993) (" absent alternative adequate protection, the use of Rents must be strictly limited to preserving . . . the Property which generates the Rents.").

## CONCLUSION

Since Bank of America will no longer consent to the use of its cash collateral to pay the Debtor's general overhead and administrative expenses, Section 363 of the Bankruptcy Code does not permit such use unless Bank of America is given "adequate protection" of its perfected, first lien security interests in the Building A property and the Building B property, including the rents and revenues from those properties. Since the net revenues of the properties accumulating in the cash collateral accounts are not sufficient to pay the accruing interest, fees and property taxes and because the "equity cushion" for the Building A Loan is marginal and there is no "equity cushion" for the Building D Loan, the Debtor cannot meet its burden of providing "adequate protection." Bank of America respectfully requests that the Court prohibit use of the Bank's cash collateral for anything other than expenses related to the properties producing such cash collateral.

In addition to preserving and protecting Bank of America's interests in its collateral, there is another potential benefit to all of the creditors, secured and unsecured, from the Court prohibiting the use of the Bank's cash collateral to pay the Debtor's overhead. To date, given the lack of progress in this case, the Debtor appears to be operating almost exactly as it did before the petition date, including paying salaries to its principals of $18,750 per month. To say that the Debtor lacks a sense of urgency is a considerable understatement. Perhaps that urgency will be supplied if the Debtor can no longer raid the secured creditors' collateral to pay salaries to its principals.

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 8

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627

DATED this 18th day of October, 2010.

                    PEPPLE JOHNSON CANTU & SCHMIDT, PLLC

By _____
     Daniel P. Pepple, OSB #030628
     Jackson Schmidt, OSB #030524
     Counsel for Creditor, Bank of America

BOA'S OBJECTION TO DEBTOR'S MOTION FOR AUTHORITY
FOR CONTINUED USE OF CASH COLLATERAL - 9

PEPPLE JOHNSON
CANTU & SCHMIDT, PLLC
1501 WESTERN AVENUE, SUITE 600
SEATTLE, WASHINGTON 98101
(206) 625-1711 - FACSIMILE (206) 625-1627