John D. Fiero (CA Bar No. 136557)
Linda F. Cantor (CA Bar No. 153762)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California  94111-4500
Telephone:  415/263-7000
Facsimile:  415/263-7010
Email: jfiero@pszjlaw.com
        lcantor@pszjlaw.com
        tkapur@pszjlaw.com

and

Brad T. Summers (OSB No. 911116)
David W. Criswell (OSB No. 925930)
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone:  503/228-2525
Facsimile:  503/295-1058
Email: tsummers@balljanik.com
        dcriswell@balljanik.com

Attorneys for Debtor Arlie & Company

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF OREGON

| In re | Case No. 10-60244-aer11 |
|---|---|
| **ARLIE & COMPANY,** | Chapter 11 |
| Debtor. | **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (JANUARY 10, 2011)** |
| | **Hearing** |
| | Date:   TBD |
| | Time:   TBD |
| | Place:  United States Bankruptcy Court 405 E. 8th Avenue, #2600 Eugene, Oregon 97401 |
| | Judge:  Honorable Albert E. Radcliffe |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINITIONS** .............................................................................................. 1

1.1 "Administrative Expense Claim" ............................................................... 1
1.2 "Agent". ....................................................................................................... 1
1.3 "Allowed". ................................................................................................... 1
1.4 "Avoidance Actions". .................................................................................. 2
1.5 "Bankruptcy Case". ..................................................................................... 2
1.6 "Bankruptcy Code". ..................................................................................... 2
1.7 "Bankruptcy Court". .................................................................................... 2
1.8 "Bankruptcy Rules". .................................................................................... 2
1.9 "BLM Secured Creditors". .......................................................................... 2
1.10 "Building D Value". ..................................................................................... 2
1.11 "Business Day". ........................................................................................... 3
1.12 "Cash" .......................................................................................................... 3
1.13 "Claim". ....................................................................................................... 3
1.14 "Class". ........................................................................................................ 3
1.15 "Collateral". ................................................................................................. 3
1.16 "Confirmation Date". ................................................................................... 3
1.17 "Confirmation Hearing". .............................................................................. 3
1.18 "Confirmation Order". .................................................................................. 3
1.19 "Creditor". ................................................................................................... 3
1.20 "Debtor". ...................................................................................................... 3
1.21 "Deficiency Claim". ..................................................................................... 3
1.22 "Disclosure Statement". ............................................................................... 4
1.23 "Disputed Claim". ........................................................................................ 4
1.24 "Effective Date". .......................................................................................... 4
1.25 "Entity" ........................................................................................................ 4
1.26 "Excess Sale Proceeds". .............................................................................. 4
1.27 "Filed". ......................................................................................................... 4
1.28 "Final Order". ............................................................................................... 4
1.29 "General Unsecured Claim". ........................................................................ 4
1.30 "Interests". ................................................................................................... 5
1.31 "Lord Byron Collateral Value" .................................................................... 5
1.32 "Maturity Date". ........................................................................................... 5
1.33 "Non-core assets". ....................................................................................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.34    "Other Priority Claim"..........................................................................5
1.35    "Petition Date"...................................................................................5
1.36    "Plan"....................................................................................................5
1.37    "Priority Tax Claim"...........................................................................5
1.38    "Pro Rata"............................................................................................5
1.39    "Property Tax".....................................................................................5
1.40    "Property Tax Lien Claim"..................................................................5
1.41    "Rejection Claim"................................................................................5
1.42    "Reorganized Debtor".........................................................................6
1.43    "Roberts Distributions".......................................................................6
1.44    "Schedules" .........................................................................................6
1.45    "Scheduled Amounts"..........................................................................6
1.46    "Secured Claim"..................................................................................6
1.47    "Small Unsecured Claim"....................................................................6
1.48    "Tonkon Claims"..................................................................................6
1.49    "Unsecured Claim"..............................................................................6

**ARTICLE II UNCLASSIFIED CLAIMS** ....................................................1
2.1    Administrative Expense Claims...........................................................1
2.2    Priority Tax Claims. ............................................................................1
2.3    Bankruptcy Fees. ................................................................................1

**ARTICLE III CLASSIFICATION** ............................................................1
3.1    Class 1 (Other Priority Claims)...........................................................2
3.2    Class 2 (BofA)......................................................................................2
3.3    Class 3 (Century Bank)........................................................................2
3.4    Class 4 (Pioneer)..................................................................................2
3.5    Class 5 (Siuslaw Bank).......................................................................2
3.6    Class 6 (Summit Bank). .......................................................................2
3.7    Class 7 (Umpqua Bank).......................................................................2
3.8    Class 8 (Washington Federal Savings)................................................2
3.9    Class 9 (BLM Secured Creditors)........................................................2
3.10   Class 10 (Property Tax Lien Claims)...................................................2
3.11   Class 11 (Small Unsecured Claims). ...................................................2
3.12   Class 12 (General Unsecured Claims). ................................................2
3.13   Class 13 (Interests)...............................................................................2

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ........3
4.1    Class 1 (Other Priority Claims)...........................................................3
4.2    Class 2 (Allowed Secured Claims of BofA)........................................3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | | | |
|---|---|---|---|
| 4.3 | Class 3 (Allowed Secured Claim of Century Bank) | ...... | 5 |
| 4.4 | Class 4 (Allowed Secured Claim of Pioneer).. | ...... | 6 |
| 4.5 | Class 5 (Allowed Secured Claims of Siuslaw Bank) | ...... | 7 |
| 4.6 | Class 6 (Summit Bank).. | ...... | 15 |
| 4.7 | Class 7 (Umpqua Bank).. | ...... | 17 |
| 4.8 | Class 8 (Washington Federal Savings). | ...... | 30 |
| 4.9 | Class 9 (BLM Secured Creditors). | ...... | 32 |
| 4.10 | Class 10 (Property Tax Lien Claims) | ...... | 35 |
| 4.11 | Class 11 (Small Unsecured Claims).. | ...... | 36 |
| 4.12 | Class 12 (General Unsecured Claims).. | ...... | 36 |
| 4.13 | Class 13 (Interests) | ...... | 36 |
| **ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** | | ...... | 36 |
| 5.1 | Distributions by Debtor. | ...... | 36 |
| 5.2 | Disputed Claims; Objections to Claims | ...... | 36 |
| 5.3 | Subsequent Allowance of Disputed Claims. | ...... | 37 |
| 5.4 | Unclaimed Distributions. | ...... | 37 |
| **ARTICLE VI MEANS FOR EXECUTION OF PLAN** | | ...... | 37 |
| 6.1 | Continued Business Operations. | ...... | 37 |
| 6.2 | Siuslaw Loan. | ...... | 38 |
| 6.3 | Operating Revenues.. | ...... | 38 |
| 6.4 | Sales or Refinancing of Real Property Collateral.. | ...... | 38 |
| 6.5 | Marketing and Sales of Non-Core Assets. | ...... | 39 |
| 6.6 | Setoffs. | ...... | 39 |
| 6.7 | Corporate Action. | ...... | 39 |
| 6.8 | Saturday, Sunday, or Legal Holiday. | ...... | 40 |
| 6.9 | Deposits. | ...... | 40 |
| 6.10 | Event of Default; Remedy.. | ...... | 40 |
| 6.11 | Continuation of Unsecured Creditors' Committee. | ...... | 40 |
| **ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** | | ...... | 41 |
| 7.1 | Assumption and Rejection.. | ...... | 41 |
| 7.2 | Assignment. | ...... | 41 |
| 7.3 | Rejection Claims. | ...... | 42 |
| 7.4 | Compensation and Benefit Programs. | ...... | 42 |
| **ARTICLE VIII EFFECT OF CONFIRMATION** | | ...... | 42 |
| 8.1 | Binding Effect. | ...... | 42 |
| 8.2 | Discharge and Permanent Injunction | ...... | 43 |
| 8.3 | Limitation of Liability. | ...... | 43 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| | | | |
|---|---|---|---|
| | 8.4 | Exculpation.. | 43 |
| **ARTICLE IX RETENTION OF JURISDICTION** | | | **44** |
| | 9.1 | Jurisdiction of the Bankruptcy Court. | 44 |
| | 9.2 | Failure of Bankruptcy Court to Exercise Jurisdiction | 45 |
| **ARTICLE X ADMINISTRATIVE PROVISIONS** | | | **45** |
| | 10.1 | Modification or Withdrawal of the Plan.. | 45 |
| | 10.2 | Revocation or Withdrawal of Plan | 45 |
| | 10.3 | Modification of Payment Terms. | 45 |
| | 10.4 | Nonconsensual Confirmation. | 46 |
| | 10.5 | Compromise of Controversies.. | 46 |
| | 10.6 | Final Decree. | 46 |
| **ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION** | | | **46** |
| **AND CONSUMMATION OF THE PLAN** | | | **46** |
| | 11.1 | Conditions to Confirmation. | 46 |
| | 11.2 | Conditions to Effective Date | 46 |
| | 11.3 | Waiver of Conditions. | 47 |
| **ARTICLE XII MISCELLANEOUS PROVISIONS** | | | **47** |
| | 12.1 | Revesting. | 47 |
| | 12.2 | Rights of Action. | 47 |
| | 12.3 | Governing Law.. | 47 |
| | 12.4 | Withholding and Reporting Requirements. | 47 |
| | 12.5 | Time.. | 48 |
| | 12.6 | Section 1146(c) Exemption. | 48 |
| | 12.7 | Severability.. | 49 |
| | 12.8 | Successors and Assigns. | 49 |
| | 12.9 | Notices to Claim and Interest Holders. s. | 49 |
| | 12.10 | Post Effective-Date Notices. | 49 |
| | 12.11 | Retiree Benefits. | 49 |
| | 12.12 | Provisions Enforceable. | 50 |
| | 12.13 | Recordable Order. | 50 |
| | 12.14 | Plan Controls. | 50 |
| | 12.15 | Delivery of Promissory Notes. | 50 |
| | 12.16 | Effectuating Documents and Further Transactions. | 51 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Arlie & Company, as debtor and debtor-in-possession ("Debtor"), proposes the following Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code.

The Plan provides for the repayment in full of Debtor's obligations to its Creditors. A Disclosure Statement is enclosed herewith to assist you in understanding the Plan and making an informed judgment concerning its terms.

## ARTICLE I

## DEFINITIONS

Definitions of certain terms used in the Plan are set forth below. Other terms are defined in the text of the Plan or in the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in the Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1     "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2     "Agent" means any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

1.3     "Allowed" means, when used to modify the term Claim or Administrative Expense Claim, either a proof of which has been properly Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

contingent or an Administrative Expense Claim that the Debtor has received by the applicable bar date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent (a) such objection is resolved between such claimant and either the Debtor or the Reorganized Debtor or (b) such Claim is allowed by a Final Order.

1.4    "Avoidance Actions" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law (including, without limitation, Sections 506(c), 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

1.5    "Bankruptcy Case" means the case under Chapter 11 of the Bankruptcy Code with respect to Debtor, pending in the District of Oregon, administered as *In Arlie & Company,* Case No. 10-60244-aer11.

1.6    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

1.7    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or any proceeding therein, including the United States District Court for the District of Oregon, to the extent that the reference to the Bankruptcy Case or any proceeding therein is withdrawn.

1.8    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

1.9    "BLM Secured Creditors" means each of Francis Cline, William Greenhoot, McKillop II Limited Partnership, Karen Merwin, Alice Smith and Linda Trickey.

1.10    "Building D Value" means $4,200,000.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.11    "Business Day" means a day other than a Saturday, Sunday, any legal holiday as defined in Bankruptcy Rule 9006(a), or other day on which banks in Portland, Oregon are authorized or required by law to be closed.

1.12    "Cash" means lawful currency of the United States of America and equivalents, including, without limitation, checks, wire transfers and drafts.

1.13    "Claim" means (a) any right to payment from Debtor arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.14    "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.15    "Collateral" means any property in which Debtor has an interest that is subject to a lien or security interest securing the payment of an Allowed Secured Claim.

1.16    "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

1.17    "Confirmation Hearing" means the hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

1.18    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.19    "Creditor" means any entity holding a Claim against Debtor.

1.20    "Debtor" means Arlie & Company, as Debtor and Debtor-in-Possession in the Bankruptcy Case.

1.21    "Deficiency Claim" has the meaning set forth in the sentence following the definition of "Secured Claim."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.22    "Disclosure Statement" means Debtor's Disclosure Statement as amended, modified, restated or supplemented from time to time, pertaining to the Plan.

1.23    "Disputed Claim" means a Claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of such Claim.  If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only to the extent of the objection.

1.24    "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all conditions to the occurrence of the Effective Date set forth in Article 11.2 of this Plan have been either satisfied or waived but in no event later than April 25, 2010.

1.25    "Entity" shall have the meaning ascribed to it by Section 101(15) of the Bankruptcy Code.

1.26    "Excess Sale Proceeds" means proceeds from the sale of property of the Debtor after payment of all debt secured by such property, Property Taxes, commissions, closing and transaction costs including, without limitation, legal and marketing expenses.

1.27    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

1.28    "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

1.29    "General Unsecured Claim" means any Unsecured Claim that is not otherwise classified under the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.30 "Interests" means an equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code.

1.31 "Lord Byron Collateral Value" means $1,500,000.

1.32 "Maturity Date" means the fifth anniversary of the Effective Date.

1.33 "Non-core assets" means those real property assets of Reorganized Debtor identified by Reorganized Debtor from time to time in its sole discretion as assets that are not core to Reorganized Debtor's long-term business success.

1.34 "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Section 507(a)(3), (4), (5) (6) or (7) of the Bankruptcy Code.

1.35 "Petition Date" means January 20, 2010, the date on which the petition commencing this Bankruptcy Case was Filed.

1.36 "Plan" means this Plan of Reorganization, as amended, modified, restated or supplemented from time to time.

1.37 "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.38 "Pro Rata" means a proportionate share, so that the ratio of (a) the amount of property distributed on account of any Allowed Claim, or retained on account of a Disputed Claim, in a Class, to (b) the amount distributed on account of all Allowed Claims, or allocated to on account of all disputed claims, in such Class, is the same as the ratio (x) such Claim bears to (y) the total amount of all Claims (including Disputed Claims in their respective Disputed Claim Amounts) in such Class.

1.39 "Property Tax" means *ad valorem* property taxes or similar impositions by a governmental unit on property of the Debtor.

1.40 "Property Tax Lien Claim" means the Secured Claim of any governmental unit for Property Taxes that are secured by statutory liens on any of Debtor's property (real or personal).

1.41 "Rejection Claim" means a Claim arising from the rejection of an unexpired lease or executory contract.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.42    "Reorganized Debtor" means Debtor from and after the Effective Date.

1.43    "Roberts Distributions" means any and all distributions made to Debtor or Reorganized Debtor from the Bankruptcy estate of In re: Roberts Prof. Const. Svcs., Inc. (Case No. 08-60615-fra7).

1.44    "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

1.45    "Scheduled Amounts" means the Claim amounts as set forth in Debtor's Schedules.

1.46    "Secured Claim" means any Claim against Debtor held by any entity, including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.  Unless otherwise provided in the Plan, the unsecured portion, if any, of such Claim shall be treated as a General Unsecured Claim and shall be referred to herein as "Deficiency Claim."

1.47    "Small Unsecured Claim" means any Unsecured Claim that is equal to or less than $2,000, or that has been reduced by election in writing to $2,000, provided that such written election shall be served on Debtor not later than the first date fixed by the Bankruptcy Court for the filing of acceptances or rejections of the Plan.

1.48    "Tonkon Claims" means all of the Debtor's claims for relief and causes of action, whether legal or equitable, against Tonkon Torp LLP, whether sounding in contract or tort specifically including but not limited to professional negligence related to Tonkon Torp LLP's representation of the Debtor at any time.

1.49    "Unsecured Claim" means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Property Tax Lien Claim, or a Secured Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**ARTICLE II**

**UNCLASSIFIED CLAIMS**

2.1    <u>Administrative Expense Claims</u>.  Each holder of an Allowed Administrative Expense Claim shall be paid by Reorganized Debtor in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute or regulation governing such Claim); provided, however, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtor during the Bankruptcy Case shall be paid by Debtor or Reorganized Debtor in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

2.2    <u>Priority Tax Claims</u>.  Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtor the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D), together with interest as provided in 11 U.S.C. §  511, over a period ending not later than five years after the date on which such claim was assessed.

2.3    <u>Bankruptcy Fees</u>.  Any then outstanding fees payable by Debtor under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date.  After confirmation, Reorganized Debtor shall continue to pay quarterly fees of the Office of the United States Trustee and will continue to file quarterly reports with the Office of the United States Trustee until this case is closed by the Bankruptcy Court, dismissed or converted except as otherwise ordered by the Bankruptcy Court.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

**ARTICLE III**

**CLASSIFICATION**

For purposes of this Plan, Claims (except those treated under Article II are classified as provided below.  A Claim is classified in a particular Class only to the extent that such Claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

qualifies within the description of such Class, and is classified in a different Class to the extent that such Claim qualifies within the description of such different Class.

    3.1    <u>Class 1 (Other Priority Claims)</u>.  Class 1 consists of all Allowed Other Priority Claims.

    3.2    <u>Class 2 (BofA)</u>.  Class 2 consists of the Allowed Secured Claims of Bank of American, N.A. ("BofA").

    3.3    <u>Class 3 (Century Bank)</u>.  Class 3 consists of the Allowed Secured Claims of Century Bank.

    3.4    <u>Class 4 (Pioneer)</u>.  Class 4 consists of the Allowed Secured Claim of Pioneer Asset Investment Ltd. ("Pioneer").

    3.5    <u>Class 5 (Siuslaw Bank)</u>.  Class 5 consists of the Allowed Secured Claims of Siuslaw Bank.

    3.6    <u>Class 6 (Summit Bank)</u>.  Class 6 consists of the Allowed Secured Claims of Summit Bank.

    3.7    <u>Class 7 (Umpqua Bank)</u>.  Class 7 consists of the Allowed Secured Claims of Umpqua Bank.

    3.8    <u>Class 8 (Washington Federal Savings)</u>.  Class 8 consists of the Allowed Secured Claims of Washington Federal Savings ("Washington Federal").

    3.9    <u>Class 9 (BLM Secured Creditors)</u>.  Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors.

    3.10    <u>Class 10 (Property Tax Lien Claims)</u>.  Class 10 consists of all Allowed Property Tax Lien Claims.

    3.11    <u>Class 11 (Small Unsecured Claims)</u>.  Class 11 consists of all Allowed Small Unsecured Claims.

    3.12    <u>Class 12 (General Unsecured Claims)</u>.  Class 12 consists of all Allowed General Unsecured Claims.

    3.13    <u>Class 13 (Interests)</u>.  Class 13 consists of all Interests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**ARTICLE IV**

**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

4.1     Class 1 (Other Priority Claims).  Class 1 is impaired. Each Class 1 Claimant will be paid in full in Cash the amount of its Class 1 Claim on the latter of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such Class 1 Claimant shall agree or has agreed to a different treatment of its Class 1 Claim (including any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim).

4.2     Class 2 (Allowed Secured Claims of BofA).  Class 2 is impaired.  The Class 2 Claim of BofA includes Claims for amounts owing under two separate loans, each of which will be separately classified and treated as hereinafter described.  Each property of Debtor that is Collateral of BofA shall serve as Collateral for each of BofA's Class 2 Claims.  As security for BofA's Class 2 Claims, BofA will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

4.2.1     Class 2.1 – Building A Loan.

BofA will have an Allowed Class 2.1 Claim in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the Effective Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about February 27, 2007 in the original principal amount of $9,000,000 (the "Building A Loan"), which loan is secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building A ("Building A").

BofA's Class 2.1 Claim shall be satisfied by delivery of a promissory note to BofA (the "Building A Note") in the amount of the present value of the amount of the Allowed Class 2.1 Claim.  The Building A Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building A Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the Building A Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Building A Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.2.2    Class 2.2 – Building D Loan.

BofA will have an Allowed Claim (the "BofA Claim") in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the Effective Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about November 2, 2007 in the original principal amount of $5,376,088.93 (the "Building D Loan"), which loan is partially secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building D ("Building D"). BofA shall have an Allowed Class 2.2 Claim in the amount of the Building D Value; the remainder of the BofA Claim shall be a Class 12 Claim.

BofA's Class 2.2 Claim shall be satisfied by delivery of a promissory note to BofA (the "Building D Note") in the amount of the present value of the Allowed Class 2.2 Claim. The Building D Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building D Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

than the tenth) day of each month thereafter until the Building D Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Building A Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

### 4.2.3    Treatment of Bank of America's Cash Collateral Accounts.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building A (the "Building A Cash Collateral") for payment of any past due Property Taxes on Building A.  The remainder of the Building A Cash Collateral will be retained and used by Reorganized Debtor for its general operating purposes.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building D (the "Building D Cash Collateral") for payment of any past due Property Taxes on Building D.  The remainder of the Building D Cash Collateral shall be retained in a segregated BofA account to be used for Property Taxes, capital expenses, tenant improvements, maintenance, improvements, or other expenses directly pertaining to the improvement of Building D or the sale, lease or marketing of Building D.

### 4.3    Class 3 (Allowed Secured Claim of Century Bank)

Class 3 is impaired.  Century Bank will have an Allowed Class 3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Century Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Century Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Century Bank to Debtor on or about April 10, 2009 in the original principal amount of $236,000 (the "3058 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3058 Kinney Loop.

As Collateral for the Class 3 Claim, Century Bank will retain its security interests and liens upon its Collateral that secures the 3058 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Century Bank's Class 3 Claim shall be satisfied by delivery of a promissory note to Century Bank in the amount of the present value of the Allowed Class 3 Claim (the "3058 Kinney Loop Note"). The 3058 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum (or such other rate as determined by the Court) and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3058 Kinney Loop Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the 3058 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3058 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.4    Class 4 (Allowed Secured Claim of Pioneer). The Class 4 Secured Claim of Pioneer is disputed. If and to the extent Pioneer is determined by Final Order of the Bankruptcy Court to have a valid, perfected security interest in or lien upon property of the Debtor, Pioneer will have an Allowed Class 4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Pioneer as of the Effective Date (in such amounts as are determined by agreement of Debtor and Pioneer or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Pioneer to Debtor on or about on or about September 12, 2008 in the original principal amount of $1,500,000 (the "Pioneer Loan').

As Collateral for the Pioneer Allowed Class 4 Claim, Pioneer will retain its security interest and liens upon its Collateral that secures the Pioneer Loan with the same priority and to the same extent such security had as of the Petition Date and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Pioneer's Allowed Class 4 Claim shall be satisfied by delivery of a promissory note to Pioneer (the "Pioneer Note") in the amount of the present value of the Pioneer Class 4 Claim. The

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Pioneer Note will bear interest at a fixed rate of 4.5% per annum.  The Pioneer Note will be payable by Reorganized Debtor as follows:

The Pioneer Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date.  In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Pioneer Note.  At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Pioneer Note

If and to the extent the Pioneer Secured Claim is avoided or otherwise determined to be unsecured by Final Order of the Bankruptcy Court, the Pioneer Claim will be treated as a Class 12 Claim.

4.5     Class 5 (Allowed Secured Claims of Siuslaw Bank).  Class 5 is impaired.  The Class 5 Claims of Siuslaw Bank includes Claims for amounts owing under eight separate loans.  Each loan is separately classified and treated as hereinafter described.

4.5.1     Class 5.1 – Crescent Village Lots Loan.

Siuslaw Bank will have an Allowed Class 5.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about August 17, 2006 in the original principal amount of $4,000,000 (the "Crescent Village Lots Loan"), which loan is secured by real property and improvements owned by Debtor located in Eugene, Oregon commonly referred to as Crescent Village Lots 10, 11, 12 and 13 (the "Crescent Village Lots").

As Collateral for the Class 5.1 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Crescent Village Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.1 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Crescent Village Lots Note") in the amount of the present value of the Allowed Class 5.1 Claim, payable by Reorganized Debtor as follows.

The Crescent Village Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Crescent Village Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Crescent Village Lots Note.

Notwithstanding the foregoing, in the event Reorganized Debtor consummates a sale of the Crescent Village Lots to the U.S. Department of Veterans Affairs (the "VA Sale") prior to the Maturity Date, the Reorganized Debtor shall pay off the Crescent Village Lots Note, including all accrued and unpaid interest then owing under the Crescent Village Lots Note, and shall utilize twenty percent (20%) of the Excess Sale Proceeds (the "Siuslaw Payoff Proceeds") to pre-pay such other Allowed Class 5 Secured Claim(s) of Siuslaw Bank (other than the Florence Medical Building Note, as hereinafter defined) as shall be determined by agreement of Reorganized Debtor and Siuslaw Bank..

4.5.2    Class 5.2 – 2850 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about July 10, 2008 in the original principal amount of $88,318 (the "2850 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2850 Kinney Loop.

As Collateral for the Class 5.2 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2850 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.2 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2850 Kinney Loop Note") in the amount of the present value of the Allowed Class 5.2 Claim. The 2850 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2850 Kinney Loop Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the 2850 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2850 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 2850 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 4.5.3    Class 5.3 – 2960 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about August 20, 2008 in the original principal amount of $245,000 (the "2960 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2960 & 3100 Kinney Loop.

As Collateral for the Class 5.3 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2960 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.3 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2960 Kinney Loop Note") in the amount of the present value of the Allowed Class 5.3 Claim. The 2960 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2960 Kinney Loop Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the 2960 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2960 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 2960 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 4.5.4    Class 5.4 – 3082 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about October 15, 2007 in the original principal amount of $219,910 (the "3082 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3082 Kinney Loop.

As Collateral for the Class 5.4 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3082 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.4 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3082 Kinney Loop Note") in the amount of the present value of the Allowed Class 5.4 Claim. The 3082 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3082 Kinney Loop Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the 3082 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3082 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 3082 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 4.5.5    Class 5.5 – 3108 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about October 15, 2007 in the original principal amount of $180,000 (the "3108 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3108 Kinney Loop.

As Collateral for the Class 5.5 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3108 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.5 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3108 Kinney Loop Note") in the amount of the present value of the Allowed Class 5.5 Claim. The 3108 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3108 Kinney Loop Note. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the 3108 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3108 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 3108 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.6    Class 5.6 – Florence Medical Building Loan.

Siuslaw Bank will have an Allowed Class 5.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about March 27, 2009 in the original principal amount of $611,250 (the "Florence Medical Building Loan"), which loan is secured by Debtor's real property and improvements in Florence, Oregon commonly referred to as 4480 Hwy. 101 N., Florence (the "Florence Medical Building").

As Collateral for the Class 5.6 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Florence Medical Building Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.6 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Florence Note") in the amount of the present value of the Allowed Class 5.6 Claim.  The Florence Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

On the Effective Date, Reorganized Debtor shall pay down the Florence Note to the original principal amount of the Florence Medical Building Loan.  Thereafter, commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Florence Note.  Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the Florence Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Florence Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

### 4.5.7    Class 5.7 – Kinney Loop Lots Loan.

Siuslaw Bank will have an Allowed Class 5.7 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about March 20, 2007 in the original principal amount of $1,087,500 (the "Kinney Loop Lots Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2802/2804 & 2834 Kinney Loop and 2729 & 2743 Coburg Road.

As Collateral for the Class 5.7 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Kinney Loop Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank's Class 5.7 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Kinney Loop Lots Note") in the amount of the present value of the Allowed Class 5.7 Claim, payable by Reorganized Debtor as follows.

The Kinney Loop Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Kinney Loop Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Kinney Loop Lots Note.

### 4.5.8 Class 5.8 – Natron Land Loan.

Siuslaw Bank will have an Allowed Class 5.8 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about February 21, 2008 in the original principal amount of $945,000 (the "Natron Land Loan"), which loan is secured by Debtor's real property and improvements in Springfield, Oregon known as South 60th Street and commonly referred to by Debtor as the Natron Vacant Land. In the event a sale of the Natron Vacant Land has not been consummated prior to the Effective Date, the Class 5.8 Claim shall be addressed as follows.

As Collateral for the Class 5.8 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Natron Land Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.8 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Natron Note") in the amount of the present value of the Allowed Class 5.8 Claim, payable by Reorganized Debtor as follows.

The Natron Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Natron Note. At the time

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Natron Note. Notwithstanding the foregoing, the Natron Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.9    Treatment of Siuslaw Bank's Cash Collateral Account.

On the Effective Date, all amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Siuslaw Bank pursuant to the Cash Collateral Order shall be utilized to pay any past due Property Taxes on the Collateral securing the Class 5 Claims. Any amounts remaining in the account after the payment of such taxes shall be utilized by the Reorganized Debtor for its general operating purposes.

4.6    Class 6 (Summit Bank). Class 6 is impaired. The Class 6 Claim of Summit Bank includes two subclaims, each of which will be separately classified and treated as hereinafter described.

4.6.1    Class 6.1 – Road Radio Tower Loan.

Summit Bank will have an Allowed Class 6.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Summit Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Summit Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Summit Bank to Debtor on or about November 4, 2004 in the original principal amount of $331,946 (the "Radio Tower Loan "), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 650 Goodpasture Island Road.

As Collateral for the Class 6.1 Claim, Summit Bank will retain its security interests in and liens upon its Collateral that secures the Radio Tower Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Summit Bank's Class 6.1 Claim shall be satisfied by delivery of a promissory note to Summit Bank (the "Radio Tower Note") in the amount of the present value of the Allowed Class 6.1 Claim. The Radio Tower Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Radio Tower Note.  Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the Radio Tower Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Radio Tower Note based on a 25 year amortization schedule, with a balloon payment due of all principal and interest due on the Maturity Date.

4.6.2    Class 6.2 – Guaranty Claim.

Debtor executed in favor of Summit Bank a guaranty dated June 7, 2006 (the "Churchill Media Guaranty") pursuant to which Debtor guaranteed the obligations of Churchill Media, LLC (an affiliate of Debtor) to Summit Bank.  In connection with such guaranty and such indebtedness, including a promissory note in the original principal amount of $3,000,000 dated May 8, 2007 from Churchill Media, LLC to Summit Bank, Debtor granted Summit Bank a security interest in Debtor's real property in Eugene, Oregon generally known as NNK Crescent Drive (Crescent Village Lot 4) and in Debtor's real property in Eugene, Oregon commonly known as NNK Willow Creek Road (W. 11th & Willow Creek)**.**

Summit Bank will have an Allowed Class 6.2 claim in the amount of the present value of the amount owing by Debtor under the Churchill Media Guaranty.  Summit Bank's Class 6.2 Claim will be satisfied by delivery of a promissory note to Summit Bank (the "Guaranty Note"), payable by Reorganized Debtor as follows.

The Guaranty Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date.  In addition, within 3 years after the Effective Date, Reorganized Debtor or Churchill shall have pre-paid at least 50% of the principal of the Guaranty Note.  At the time of any such pre-payment, Reorganized Debtor or Churchill shall also pay all accrued but unpaid interest then owing under the Guaranty Note.  All payments received by Summit Bank from Churchill or any successor to or trustee or receiver for Churchill will be applied by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Summit Bank in reduction of the principal owing on the Guaranty Note.  In the event that Reorganized Debtor pays or satisfies the Guaranty Note, then Reorganized Debtor will be subrogated to the position of Summit Bank with respect to the obligations of Churchill and Summit Bank will execute and deliver such documents as may be necessary or appropriate to evidence such payment and subrogation.

As security for the Class 6.2 Claim, Summit Bank will retain its security interest in and liens upon its Collateral securing the Churchill Media Guaranty with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

4.6.3    Treatment of Summit Bank's Cash Collateral Account.

On the Effective Date, Reorganized Debtor shall utilize the amounts maintained in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Summit Bank pursuant to the Cash Collateral Order towards payment by Reorganized Debtor of any past due Property Taxes on the Collateral securing the Class 6 Claims.  Any amounts remaining in the account after payment of such taxes shall be retained by Reorganized Debtor to be used for general operating purposes.

4.7    Class 7 (Umpqua Bank).  Class 7 is impaired.  The Class 7 Claim of Umpqua Bank includes Claims for amounts owing under twelve separate loans, each of which will be classified and treated as hereinafter described.  The total amount of each Umpqua Bank Allowed Claim includes the principal balance owing under the Umpqua Bank loan, together with all accrued and unpaid non-default interest owing under the loan as of the Effective Date and such fees (excluding any late payment fees) and costs (the "Umpqua Bank Fees") as allowed by Umpqua Bank's existing loan documents with Debtor.  Umpqua Bank shall have no Claims and shall make no demands on Debtor, Reorganized Debtor or any guarantor of a Umpqua Bank Loan for defaults under or relating to the Umpqua Bank loans that occurred before the Effective Date and any such Claims shall be deemed waived, released and extinguished.  Except to the extent specifically modified by this Plan, Umpqua Bank will retain its pre-Petition Date security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date, all of which

liens and security interests are and will continue to be cross-defaulted and cross collateralized. Notwithstanding the foregoing, Umpqua Bank shall have no claim against, lien on or security interest in the Roberts Distributions.

Reorganized Debtor will conform to the requirements set forth in such security documents, other than any financial covenant requirements or financial reporting requirements which shall be of no force or effect. Notwithstanding the foregoing, Debtor and/or Reorganized Debtor shall execute and deliver to Umpqua Bank such amendments to the existing loan documents as Umpqua Bank generally requires to conform the loan documents to the terms of this Plan, and Debtor and/or Reorganized Debtor shall provide such financial reports to Umpqua Bank as it reasonably requests in light of the treatment of Umpqua's Claims under the Plan and the nature of Umpqua Bank's Collateral. Without limiting the preceding, in the event and to the extent that any provision of the Plan is inconsistent with the provisions set forth in any Umpqua Bank loan document, the provisions of the Plan shall control and take precedence.

As used below, the "Arlie Debt Amount" as to any property securing an Umpqua Bank loan is the amount of principal and the then accrued and outstanding non-default interest owing on the Umpqua loan associated with such property.

### 4.7.1     Class 7.1 – Westlane Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about on or about February 12, 2002 in the original principal amount of $5,910,000 (the "Westlane Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Veneta, Oregon commonly referred to as 88330 N. Territorial Road (the "Westlane Property"). Umpqua Bank's Class 7.1 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Westlane Property at a price in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, or (b) transfer title to the Westlane Property to Umpqua Bank,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property including, without limitation, the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the Westlane Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3/) of any sale proceeds in excess of the Arlie Debt Amount and Property Taxes will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, or 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).

4.7.2    Class 7.2 - West 11th Land Loan.

Umpqua Bank will have an Allowed Class 7.2 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under the unpaid principal balance that certain loan made by Umpqua Bank to Debtor on or about December 29, 2003 in the original principal amount of $1,404,650 (the "West 11th Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3802, 3810 and 3838 W. 11th. Avenue, Eugene, Oregon (the "West 11th Land Property"). Umpqua Bank's Class 7.2 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the West 11th Land Property at a price in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, or (b) transfer title to the West 11th Land Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property including, without limitation, the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the West 11th Land Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3/) of any sale proceeds in excess of the Arlie Debt

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Amount and Property Taxes will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).

### 4.7.3    Class 7.3 – 2892 Crescent Ave. Loan.

Umpqua Bank will have an Allowed Class 7.3 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about October 27, 2008 in the original principal amount of $2,000,000 (the "2892 Crescent Ave. Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2892 Crescent Avenue ("2892 Crescent Avenue"). Umpqua Bank's Class 7.3 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of 2892 Crescent Avenue at a price in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, or (b) transfer title to 2892 Crescent Avenue to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount  for such property including, without limitation, the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven.  Provided that Reorganized Debtor effectuates a sale of 2892 Crescent Avenue within the time limits set forth in the immediately preceding sentence, two-thirds (2/3/) of any sale proceeds in excess of the Arlie Debt Amount and Property Taxes will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.7.4        Class 7.4 Woodburn and College Park Loan.

Umpqua Bank will have an Allowed Class 7.4 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain line of credit loan made by Umpqua Bank to Debtor on or about July 29, 1999 in the original principal amount of $600,000 (with 1/20/2006 Change in Terms Agreement increasing principal amount to $4,000,000) (the "Woodburn and College Park Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 85701 Scharen Road, Lane County, Northside of Cemetery Road near Lorane Highway, Lane County (the "College Park Property"), and Debtor's real property and improvements in Woodburn, Oregon commonly referred to as 2450 Country Club Road, Marion County (the "Woodburn Property").  The Woodburn Property secures $931,750 of the outstanding amounts owing under the Woodburn and College Park Loan.  The College Park Property secures the remaining amounts owing under the Woodburn and College Park Loan.  Umpqua Bank's Class 7.4 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Woodburn Property at a price in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, or (b) transfer title to the Woodburn Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount relating to the Woodburn Property including, without limitation, the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven.  Provided that Reorganized Debtor effectuates a sale of the Woodburn Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3) of any sale proceeds in excess of the Arlie Debt Amount and Property Taxes will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

05437-001\DOCS_LA:230606.7

21

FIRST AMENDED PLAN OF REORGANIZATION
(JANUARY 10, 2011)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Subject to the reduction of debt owing against the College Park Property from the sale

2    of approximately 315 acres of the College Park Property approved by the Bankruptcy Court in the

3    Bankruptcy Case (the "College Park Sale") and the reduction of debt owing against the Woodburn

4    Property from the disposition of the Woodburn Property described above, as of the Effective Date

5    the Woodburn and College Park Loan shall bear simple interest at a fixed rate of 4.5% per annum

6    and will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a

7    mandatory pay down of the Woodburn and College Park Loan within three years of the Effective

8    Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes

9    (less any previously paid real estate taxes included therein (the "College Park Pay Down").

10    The accrued non-default interest and reasonable fees and costs owing as of the

11    Effective Date on the College Park Loan will be due and payable upon a sale or refinancing of the

12    College Park Land.

13    ### 4.7.5    Class 7.5 – Roseburg Loan #1.

14    Umpqua Bank will have an Allowed Class 7.5 Claim in the amount of all principal,

15    accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under

16    that certain loan made by Umpqua Bank to Debtor on or about January 16, 2004 in the original

17    principal amount of $2,630,000 (the "Roseburg Loan #1"), which loan is secured by, among other

18    things, Debtor's real property and improvements in Roseburg, Oregon commonly referred to as

19    1156, 1176 and 1200 N.W. Garden Valley Boulevard (the "Roseburg Property").  Umpqua Bank's

20    Class 7.5 Claim shall be satisfied as follows.

21    On the Effective Date, Reorganized Debtor will use funds in the cash collateral bank

22    account established and maintained by Debtor with respect to Umpqua Bank pursuant to the

23    Bankruptcy Court's cash collateral order (the "Umpqua Cash Collateral Account") to bring current

24    the Roseburg Loan #1 by making all regularly scheduled but then unpaid payments of interest (at the

25    non-default contract rate) and any past due Property Taxes on the Roseburg #1 Property.  Any

26    default, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted

27    with respect to Roseburg Loan #1 shall be deemed waived or released.  Thereafter, interest will

28    accrue on the Roseburg Loan #1 at a fixed rate of 4.5% per annum.  Commencing on the first (but no

later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Roseburg Loan #1 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

Reorganized Debtor may use up to $457,000 of the Umpqua Cash Collateral Account funds for the reasonable and necessary costs of removing the fascia from the Hollywood Video building, erecting a demising wall and otherwise provide the tenant improvements required by the prospective tenants for such building.

### 4.7.6    Class 7.6 – Roseburg Loan #2

Umpqua Bank will have an Allowed Class 7.6 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about April 1, 2008 in the original principal amount of $1,720,000 (the "Roseburg Loan #2"), which loan is secured by, among other things, the Roseburg Property.  Umpqua Bank's Class 7.6 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use funds in the Umpqua Cash Collateral Account to make all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Roseburg Loan #2.  Any default, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to Roseburg Loan #2 shall be deemed waived or released.  Thereafter, interest will accrue on the Roseburg Loan #2 at a fixed rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on Roseburg Loan #2 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.7.7        Class 7.7 – Oil Can Henry's Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about July 31, 2008 in the original principal amount of $668,000 (the "Oil Can Henry's Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3804 W. 11th Avenue (the "Oil Can Henry's Property").  Umpqua Bank's Class 7.7 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use funds in the Umpqua Cash Collateral Account to bring current the Oil Can Henry's Loan by making all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Oil Can Henry's Loan and any past due Property Taxes on the Oil Can Henry Property.  Any default, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to the Oil Can Henry's Loan shall be deemed waived or released.  Thereafter, interest will accrue on the Oil Can Henry's Loan at the rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Oil Can Henry's Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.7.8        Class 7.8 – My Coffee Loan.

Umpqua Bank will have an Allowed Class 7.8 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about August 22, 2005 in the original principal amount of $661,600 (the "My Coffee Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3808 W. 11th Avenue (the "My Coffee Property").  Umpqua Bank's Class 7.8 Claim shall be satisfied as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   Interest will accrue on the principal amount owing on the My Coffee Loan at a fixed

2   rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month

3   following the Effective Date and continuing on the first (but no later than the tenth) day of each

4   month thereafter through and including the Maturity Date, Reorganized Debtor will make equal

5   monthly amortizing payments of principal and interest on the outstanding principal amount of the

6   My Coffee Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid

7   principal and interest due on the Maturity Date.  Additionally, the non-default interest that accrued

8   on the My Coffee Loan between the Petition Date and the Effective Date shall be due and payable on

9   the Maturity Date.

10   4.7.9       Class 7.9 – Building B Loan.

11   Umpqua Bank will have an Allowed Class 7.9 Claim in the amount of all principal,

12   accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under

13   that certain loan made by Umpqua Bank to Debtor on or about August 10, 2006 in the original

14   principal amount of $8,265,000 (as subsequently increased to $10,150,000) (the "Building B Loan"),

15   which loan is secured by, among other things, Debtor's real property and improvements in Eugene,

16   Oregon commonly referred to as Lot 6 Crescent Village, Phase I, Lane County ("Building B").

17   Umpqua Bank's Class 7.9 Claim shall be satisfied as follows.

18   Interest will accrue on the principal amount owing on the Building B Loan at a fixed

19   rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month

20   following the Effective Date and continuing on the first (but no later than the tenth) day of each

21   month thereafter through and including the Maturity Date, Reorganized Debtor will make equal

22   monthly amortizing payments of principal and interest on the outstanding principal amount of the

23   Building B Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid

24   principal and interest due on the Maturity Date.  Additionally, the non-default interest that accrued

25   on the Building B Loan between the Petition Date and the Effective Date shall be due and payable

26   on the Maturity Date.

27

28

4.7.10    Class 7.10 – Grumman Hangar Loan.

Umpqua Bank will have an Allowed Class 7.10 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about March 27, 2007 in the original principal amount of $245,000 (the "Grumman Hangar Loan "), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 28737 Grumman Drive (the "Grumman Hangar Property"). Umpqua Bank's Class 7.10 Claim shall be satisfied as follows.

As of the Effective Date, interest on the Grumman Hangar Loan will accrue at a fixed rate of 4.5% per annum and will be paid as follows. Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the Grumman Hangar Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Additionally, the non-default interest that accrued on the Grumman Hangar Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

4.7.11    Class 7.11 – 3032 Kinney Loop Loan.

Umpqua Bank will have an Allowed Class 7.11 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about December 23, 2008 in the original principal amount of $184,000 (the "3032 Kinney Loop Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3032 Kinney Loop ("3032 Kinney Loop"). Umpqua Bank's Class 7.11 Claim shall be satisfied as follows.

As of the Effective Date, the 3032 Kinney Loop Loan will bear simple interest at the rate of 4.5% per annum and will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the 3032 Kinney Loop Loan within three years of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes (less any previously paid real estate taxes included therein) (the "Kinney Loop Pay Down").

### 4.7.12    Class 7.12 - Crescent Village Land Loan.

Umpqua Bank will have an Allowed Class 7.12 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) under that certain loan made by Umpqua Bank to Debtor on or about March 15, 2002 in the original principal amount of $5,286,000 (the "Crescent Village Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as Lots 1 and 2 Cone Plat, Lane County (the "Crescent Village Land Property"). Umpqua Bank's Class 7.12 Claim shall be satisfied as follows.

As of the Effective Date, the Crescent Village Land Loan will bear simple interest at the rate of 4.5% per annum and will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the Crescent Village Land Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes (less any previously paid real estate taxes included therein) (the "Crescent Village Pay Down").

### 4.7.13    Refinance of Properties Encumbered by Umpqua Bank's Liens.

Reorganized Debtor may refinance any of the property of the Debtor that is the Collateral of Umpqua Bank at any time after the Reorganized Debtor has made the Kinney Loop Pay Down, the Crescent Village Pay Down and the College Park Pay Down, provided that Umpqua Bank receives the Arlie Debt Amount associated with such property plus the applicable Umpqua Proceeds Share (as defined below).

### 4.7.14    Sale of Collateral Free and Clear of Umpqua Bank's Liens and Application of Excess Proceeds.

Notwithstanding that each property of Debtor that is Collateral of Umpqua Bank serves as Collateral for all of Umpqua Bank's Class 7 Claims, Reorganized Debtor may from time to time sell a property free and clear of any liens, claims and encumbrances of Umpqua Bank provided

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

that the Arlie Debt Amount associated with such property has been paid or will be paid upon such sale. In addition to the Arlie Debt Amount, a share of any sale proceeds in excess of the Arlie Debt Amount (the "Umpqua Proceeds Share") will be retained for Umpqua Bank's account as follows. For any sale by Reorganized Debtor that occurs within one year of the Effective Date, or within 2 months of a letter of intent obtained within such one year period, two-thirds (2/3/) of any sale proceeds in excess of the Arlie Debt Amount will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). For any sale by Reorganized Debtor that occurs after such date, one -third (1/3) of any sale proceeds in excess of the Arlie Debt Amount will be retained by Reorganized Debtor for its own account, and two-thirds (2/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). Notwithstanding the foregoing, upon tender of the Arlie Debt Amount associated with the 3032 Kinney Loop Property, Umpqua Bank will consent to the release of its liens and security interests against the 3032 Kinney Loop Property.

Umpqua Bank shall provide partial releases of liens, claims and encumbrances related to specific pieces of property of Debtor that serves as Collateral for all of Umpqua Bank's Class 7 Claims, provided that 110% of the Arlie Debt Amount associated with such specific piece of property (on a pro rata basis determined in light of the comparative value of the property to be sold with the value of the remaining portion of the parcel not being sold) has been paid or will be paid to Umpqua Bank upon such sale.

4.7.15    <u>Payment of Umpqua Bank Fees</u>.

Upon the sale or refinance of any property of the Debtor that is Collateral of Umpqua Bank, Reorganized Debtor shall pay a proportion share of the Umpqua Bank Fees on a pro rata basis so that the ratio of (a) the Umpqua Bank Fees being paid, to (b) the aggregate Umpqua Bank Fees, is the same ratio as (x) the Arlie Debt Amount for the property being sold or refinanced, to (y) the aggregate Arlie Debt Amount.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.7.16    Property Taxes.

Other than Property Taxes relating to the Roseburg Property and the Oil Can Henry's Property (which taxes shall remain current under the Plan), Property Taxes on any property owned by the Debtor that is Collateral of Umpqua Bank shall at no time be no more than two years past due.

4.7.17    Waiver of Claims by Debtor and Reorganized Debtor.

The Arlie Debt Amount and the Umpqua Bank Fees shall not be subject to reduction by defense, counterclaim, or claim of recoupment by Debtor or Reorganized Debtor.  On the Effective Date, Debtor and Reorganized Debtor will be deemed to have waived any and all claims against Umpqua Bank and its present directors, officers, and managers for actions (or in-actions) that occurred before the Effective Date.

4.7.18    Treatment of Umpqua Bank's Cash Collateral Account.

Provided the College Park Sale is consummated prior to the Effective Date, the balance of funds in the Umpqua Cash Collateral Account shall be allocated as follows (and in the following order):  (a) payment of past due Property Taxes on the Oil Can Henry's Property and the Roseburg Property, (b) payments of all regularly scheduled but then unpaid payments of non-default interest on Roseburg Loan #1 and #2 and on the Oil Can Henry's Loan, (c) $457,000 to be used for tenant improvements for Roseburg as such improvements are made, (d) $211,374 to be reserved by Reorganized Debtor for payment of Debtor's income taxes associated with the College Park Sale, (e) $315,000 to be paid to Umpqua Bank to be applied to the principle balance of the obligation associated with the College Park Property, (f) $150,000 to be used by Reorganized Debtor for any purpose without restriction, and (g) the remainder to be held in an account at Umpqua Bank to be used at Reorganized Debtor's discretion solely for debt service or taxes on property held by Reorganized Debtor that is the Collateral of Umpqua Bank and not subject to a sale or refinance agreement.

4.7.19    Use of Rents Generated From Umpqua Properties.

Commencing on the Effective Date, Reorganized Debtor may utilize all rents generated from the properties securing the Umpqua Bank loans for any purpose without restriction

including, without limitation, for general overhead and general administrative expenses.

### 4.7.20    Guarantees.

All guarantees that guaranty the obligations of Debtor to Umpqua Bank shall continue to guaranty the obligations of Reorganized Debtor to Umpqua Bank, as such obligations have been modified by this Plan.

### 4.7.21    Additional Documents.

On the Effective Date, Reorganized Debtor will execute and deliver to Umpqua Bank such documents as Umpqua Bank reasonably requires to effectuate the terms of the Plan.

4.8    Class 8 (Washington Federal Savings).  Class 8 is impaired.  The Class 8 Claim of Washington Federal Savings includes Claims for amounts owing under five separate loans, each of which will be separately classified and treated as hereinafter described.

### 4.8.1    Class 8.1 –Lord Byron Loan..

On or about November 14, 2008, Washington Federal made a loan to Debtor in the original principal amount of  $2,000,000 (the "Lord Byron Loan").  The Lord Byron Loan is secured by deeds of trust on the Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2909 Lord Byron Place, 2915 Lord Byron Place, 2931 Lord Byron Place, 2977 Lord Byron Place and 2993 Lord Byron Place (collectively, the "Lord Byron Collateral").  The Lord Byron Collateral Value is less than the amounts owing under the Lord Byron Loan.

Washington Federal will have Allowed Claims in the aggregate amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Washington Federal as of the Effective Date (the "Washington Claim Amount").  Washington Federal shall have Secured Class 8 Claims in the amount of the Lord Byron Collateral Value, and an Unsecured Claim in an amount representing the difference between Lord Byron Collateral Value and the Washington Claim Amount (the "Washington Federal Unsecured Claim").

Washington Federal's Class 8 Claim shall be satisfied by the delivery of five promissory notes to Washington Federal, each in the amount of $300,000:  the 2909 Lord Byron Note, the 2915 Lord Byron Note, the 2931 Lord Byron Note, the 2977 Lord Byron Note and the 2993 Lord Byron Note (individually, a "Lord Byron Note" and collectively, the "Lord Byron

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Notes"). Each Lord Byron Note will bear interest at a fixed rate of 4.5% per annum. Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Lord Byron Notes. Commencing on the first (but no later than the tenth) day of the 37th month after the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter until the Lord Byron Notes have been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Lord Byron Notes based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

Each Lord Byron Note will be secured by a security interest in and lien upon its separate Lord Byron Property, pursuant to deeds of trust to be delivered to Washington Federal on the Effective Date. Each such deed of trust will have the same priority that Washington Federal had in such Collateral as of the Petition Date. Reorganized Debtor will maintain the Lord Byron Collateral in good repair and insure the Lord Byron Collateral to its full usable value.

Washington Federal will release its liens, claims and security interests in any Lord Byron Property upon payment of all principal and accrued interest then owing on the Lord Byron Note applicable to such property. Each Lord Byron Note shall be assumable by a purchaser of the applicable Lore Byron Property, subject to reasonable approval by Washington Federal.

        4.8.2        <u>Treatment of Washington Federal's Cash Collateral Account</u>.

On the Effective Date, amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Washington Federal pursuant to the Cash Collateral Order may be utilized by the Reorganized Debtor to pay any past due Property Taxes on the Collateral securing the Class 8 Claims. Any amounts remaining in the account after the payment of such taxes may be used by Reorganized Debtor for any purpose without restriction including, without limitation, for general overhead and general administrative expenses.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.8.3     <u>Treatment of the Washington Federal Unsecured Claim</u>.

The Washington Federal Unsecured Claim shall bear interest at the fixed rate of 3.5% per annum and shall be payable in full on the Maturity Date.

4.9     <u>Class 9 (BLM Secured Creditors)</u>.  Class 9 is impaired. Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors.  The Class 9 Claims are secured by a deed of trust on Debtor's real property and improvements commonly referred to as 2890 Chad Drive, Eugene, Oregon (the "BLM Office Building").

Class 9.1 – Francis Cline.

Francis Cline will have an Allowed Class 9.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Cline as of the Effective Date under that certain loan made by Ms. Cline to Debtor on or about on or about November 4, 2008 in the original principal amount of $347,065 (the "Cline Loan"), which loan is secured by a deed of trust on BLM Office Building.  The Class 9.1 Claim shall be treated as follows.

On the Effective Date, Reorganized Debtor shall pay all outstanding property  taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000.  Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of all obligations owing under the Cline Loan.  Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested. In such event, Ms. Cline will retain her security interest in and lien upon the BLM Office Building with the same priority and to the same extent such security had as of the Petition Date, and the Reorganized Debtor shall maintain the BLM office Building in good repair and insure the BLM Office Building to its full usable value pending a sale.

Class 9.2 – William Greenhoot.

William Greenhoot will have an Allowed Class 9.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Mr. Greenhoot as of

the Effective Date under that certain loan made by Mr. Greenhoot to Debtor on or about on or about November 4, 2008 in the original principal amount of $347,065 (the "Greenhoot Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Greenhoot Loan and the Class 9.2 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

<u>Class 9.3 – McKillop II Limited Partnership</u>.

The McKillop II Limited Partnership ("McKillop") will have an Allowed Class 9.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to the Partnership as of the Effective Date under those certain loans made by Herbert McKillop to Debtor on or about on or about November 4, 2008 in the original principal amounts of $120,000 and $1,453,482 (collectively, the "McKillop Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the McKillop Loan and the Class 9.3 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

.Class 9.4 – Karen Merwin.

Karen Merwin will have an Allowed Class 9.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Merwin as of the Effective Date under that certain loan made by Ms. Merwin to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Merwin Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Merwin Loan and the Class 9.4 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

Class 9.5 – Alice Smith.

Alice Smith will have an Allowed Class 9.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Smith as of the Effective Date under that certain loan made by Ms. Smith to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Smith Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Smith Loan and the Class 9.5 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

Class 9.6 – Linda Trickey.

Linda Trickey will have an Allowed Class 9.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Trickey as of the Effective Date under that certain loan made by Ms. Trickey to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Trickey Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured Creditors of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Trickey Loan and the Class 9.6 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

4.10    Class 10 (Property Tax Lien Claims). Class 10 is impaired. Class 10 Claimants will retain their security interest with the same priority to which it is entitled by law. Each Class 10 Claimant shall be paid the full amount of its Allowed Class 10 Claim in full in accordance with 11 U.S.C. §1129(a)(9)(d), but no later than the earlier of (i) 5 years after the Petition Date, or (ii) upon a sale of the property securing the Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.11    Class 11 (Small Unsecured Claims).  Class 11 is impaired.  Each holder of an Allowed Small Unsecured Claim will be paid in Cash the full amount of their Small Unsecured Claim in Cash, without interest, within 60 days following the Effective Date.

4.12    Class 12 (General Unsecured Claims).  Class 12 is impaired.  Class 12 General Unsecured Claims shall accrue interest from the Petition Date until such Claims are paid in full at a uniform annual interest rate of 3.5% per annum.  No pre-petition or post-petition default interest or post-petition contract rate of interest shall be paid on any General Unsecured Claim.  Reorganized Debtor shall make periodic payments to holders of Class 12 Claims as and when funds are available.  At the time Reorganized Debtor makes any principal payment on a General Unsecured Claim, Reorganized Debtor shall also pay all accrued but unpaid interest then owing on such General Unsecured Claim.  Within 3 years after the Effective Date, Reorganized Debtor shall have paid at least 50% of the principal amount of each General Unsecured Claim plus accrued interest.  All Class 12 Claims shall be paid, in full with interest, no later than the Maturity Date.

4.13    Class 13 (Interests).  Class 13 is unimpaired.  Existing Interests in Debtor will be preserved.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

5.1    Distributions by Debtor.  The Reorganized Debtor shall administer Claims and make distributions in respect of Allowed Claims.  Distributions to be made by the Reorganized Debtor may be made by any person designated or retained by the Reorganized Debtor to serve as disbursing agent without the need for any further order of the Bankruptcy Court.

5.2    Disputed Claims; Objections to Claims  Only Claims that are Allowed shall be entitled to distributions under the Plan.  No Cash or other property shall be distributed under the Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such Disputed Claim becomes an Allowed Claim.  Debtor reserves the right to contest and object to any Claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtor

currently believes is validly due and owing.  All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

5.3    Subsequent Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes Allowed in full or in part subsequent to the Effective Date shall receive Cash distributions (including any make-up distributions) on the next applicable distribution date following the allowance of such Disputed Claim.

5.4    Unclaimed Distributions.  Any entity which fails to claim any Cash distribution within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the Reorganized Debtor shall be authorized to cancel any distribution that is not timely claimed.  Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Reorganized Debtor, free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditors shall have no claim whatsoever against the Reorganized Debtor or any holder of an Allowed Claim to whom distributions are made by the Reorganized Debtor.

## ARTICLE VI

## MEANS FOR EXECUTION OF PLAN

6.1    Continued Business Operations  From and after the Effective Date, the Reorganized Debtor shall continue to engage in business with the goal of maximizing the value of its assets and, subject to the provisions of the Plan governing distributions and the retention of jurisdiction provisions hereof, the Reorganized Debtor shall continue such business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  The Reorganized Debtor shall be authorized, without limitation, to use and dispose of its assets, to insure its assets, to borrow money, to employ and compensate agents, to reconcile and object to Claims, and to make distributions to Creditors in accordance with the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

6.2     <u>Siuslaw Loan</u>  On the Effective Date Siuslaw Bank will loan the Reorganized Debtor the amount of $615,000 (the "New Siuslaw Loan").  The New Siuslaw Loan shall bear interest at a fixed per annum rate of 5.5% and shall be secured by security interests and liens upon the Florence Medical Building with the same priority as the liens and security interests securing the Florence Medical Building Note.  On the Funding Date, Reorganized Debtor shall establish a separate cash reserve account at Siuslaw Bank into which will be deposited funds sufficient to satisfy the first six (6) months of payments on account of Class 5 Claims under the Plan. Reorganized Debtor shall make interest only payments on the New Siuslaw Loan commencing on the first (but no later than the tenth) day of the first month following the date Reorganized Debtor obtains the New Siuslaw Loan (the "Funding Date") and continuing on the first (but no later than the tenth) day of each month thereafter through and including the 36th month following the Funding Date.  Commencing on the first (but no later than the tenth) day of the 37th month after the Funding Date and continuing on the first (but no later than the tenth) day of each month thereafter until the New Siuslaw Loan has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the New Siuslaw Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

6.3     <u>Operating Revenues.</u>  Reorganized Debtor will fund payments to its Creditors from proceeds of asset sales implemented during the Bankruptcy Cases, the net operating income generated from Reorganized Debtor's continued business operations, and from the future sale or refinancing of assets of Reorganized Debtor from time to time.  A core aspect of Debtor's business is marketing and selling real property acquired by Debtor from time to time.  Reorganized Debtor will continue to market and sell real its real property assets in the ordinary course of business to fund continued business operations and to fund payments required under this Plan.  Such sales may occur without further order of the Bankruptcy Court.

6.4     <u>Sales or Refinancing of Real Property Collateral</u>.  Without limiting Article 6.2 above, and except as set forth with respect to a particular Creditor under the Plan, Reorganized Debtor may at any time sell or refinance Collateral that secures a Secured Claim free and clear of any lien of the Creditor in such Collateral provided that on or before the closing of the sale of such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Collateral Reorganized Debtor pays in full the Allowed Secured Claim of such Creditor that is secured by the Collateral.  Any excess net proceeds from the sale or refinancing of such Collateral shall be paid to Reorganized Debtor (or as otherwise directed by Reorganized Debtor) and may be used by Reorganized Debtor to fund Reorganized Debtor's continued business operations and to fund payments required under this Plan.  Such sales or refinancing may occur without further order of the Bankruptcy Court.

6.5    <u>Marketing and Sales of Non-Core Assets</u>.  In addition to marketing and selling its real property assets in the ordinary course of its business, Reorganized Debtor may market and sell its non-core assets on an accelerated basis as is necessary or appropriate to ensure that Reorganized Debtor will have sufficient funds to make all payments required of Debtor under this Plan.  Without limiting the preceding, if at any time Reorganized Debtor determines in its discretion that it may not have sufficient funds to make any upcoming payment required under this Plan, Reorganized Debtor will before such payment is due sell at public auction one or more of Reorganized Debtor's Non-core assets to raise the funds necessary to make the required Plan payment.  Such auctions and sales may occur without further order of the Bankruptcy Court.

6.6    <u>Setoffs</u>.  Reorganized Debtor may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever which Debtor or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim Debtor or Reorganized Debtor may have against such holder.

6.7    <u>Corporate Action</u>.  Upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the execution, delivery, and performance of all documents and agreements relating to the Plan, and any of the foregoing.  On the Effective Date, the appropriate officers of Reorganized Debtor are authorized and directed to execute and deliver any and all agreements, documents, and instruments contemplated by the Plan and/or the Disclosure Statement in the name of and on behalf of Reorganized Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

6.8    <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.9    <u>Deposits</u>.  All utilities holding a utility deposit obtained as a result of this Bankruptcy Case shall immediately after the Effective Date return or refund such utility deposit to Reorganized Debtor.  At the sole option of Reorganized Debtor, Reorganized Debtor may apply any such utility deposit that has not been refunded to Reorganized Debtor in satisfaction of any payments due or to become due from Reorganized Debtor to a utility holding such a utility deposit.  All escrow deposits made by prospective purchasers of property of the Debtor that were forfeited pursuant to contract or applicable law (the "Forfeited Escrow Deposits") and not yet returned to Debtor, shall be turned over to Reorganized Debtor immediately after the Effective Date for its own account.

6.10    <u>Event of Default; Remedy</u>.  Any material failure by Reorganized Debtor to perform any term of this Plan, which failure continues for a period of ten Business Days following receipt by Reorganized Debtor of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, this Plan or any agreement between the holder of such Claim and Debtor or Reorganized Debtor.  An Event of Default with respect to one Creditor shall not be an Event of Default with respect to any other Creditor.

6.11    <u>Continuation of Unsecured Creditors' Committee</u>.  To the extent that one or more members of the Unsecured Creditors' Committee agrees to continue to serve on the Unsecured Creditors' Committee following the Effective Date, the Unsecured Creditors' Committee will continue in existence following the Effective Date for so long as any such members continue to agree to serve on such Unsecured Creditors' Committee.  For so long as such Unsecured Creditors' Committee remains in existence, Reorganized Debtor will provide to the Unsecured Creditors' Committee a quarterly compliance certificate executed by the Chief Financial Officer of Reorganized Debtor that certifies that either (i) the Reorganized Debtor is in full compliance with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Plan, or (ii) the Reorganized Debtor is not in full compliance with the Plan.  If the Reorganized Debtor is not in full compliance with the Plan, the Reorganized Debtor shall state what steps are being taken to remedy or cure any non-compliance with the Plan.  In addition, provided that the members of the continuing Unsecured Creditors' Committee have executed in favor of Reorganized Debtor a confidentiality and non-disclosure agreement in form and substance satisfactory to Reorganized Debtor in its reasonable discretion, Reorganized Debtor shall provide annual reviewed financial statements to the Unsecured Creditors' Committee.  Upon payment in full of all Allowed General Unsecured Claims, the Unsecured Creditors' Committee shall automatically cease to exist.  During the existence of the Unsecured Creditors' Committee, the Unsecured Creditors' Committee may retain legal or other advisors to assist the Unsecured Creditors' Committee, and Reorganized Debtor will pay the fees and expenses of such advisors, not to exceed $10,000 in the aggregate in any 12 month period.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     <u>Assumption and Rejection</u>.  Except as may otherwise be provided, all executory contracts and unexpired leases of Debtor which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by Reorganized Debtor on the Effective Date.  The Confirmation Order shall constitute an order authorizing assumption of all executory contracts and unexpired leases except for those otherwise specifically rejected or otherwise provided for or subject to other Court Order or pending motion.  Reorganized Debtor shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any monetary defaults for executory contracts and unexpired leases being assumed and shall perform its obligations under such assumed executory contracts and unexpired leases from and after the Effective Date in the ordinary course of business.

7.2     <u>Assignment</u>.  To the extent necessary, all assumed executory contracts and unexpired leases shall be deemed assigned to Reorganized Debtor as of the Effective Date.  The Confirmation Order shall constitute an order authorizing such assignment of assumed executory contracts and unexpired leases, and no further assignment documentation shall be necessary to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

effectuate such assignment.

7.3    <u>Rejection Claims</u>.  Rejection Claims must be Filed no later than 30 days after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the entry of the Confirmation Order, whichever is sooner.  Any such Rejection Claim not Filed within such time shall be forever barred from asserting such Claim against Debtor, Reorganized Debtor, its property, estates, and any guarantors of such obligations.  Each Rejection Claim resulting from such rejection shall constitute a General Unsecured Claim or a Small Unsecured Claim, as applicable.

7.4    <u>Compensation and Benefit Programs</u>.  Except to the extent restricted by the Plan, all employee compensation and benefit plans, policies and programs of Debtor applicable generally to its employees as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, stock incentive plans, and life, accidental death and dismemberment insurance plans, shall continue in full force and effect, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate any of the foregoing arrangements.

## ARTICLE VIII

## EFFECT OF CONFIRMATION

8.1    <u>Binding Effect</u>.  The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in the Debtor and the estate assets, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the commencement of the Bankruptcy Case.  The distributions made pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of the Allowed Claims on account of which such distributions are made.  Confirmation of the Plan shall bind and govern the acts of the Reorganized Debtor whether or not: (i) a proof of Claim or proof of Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or Interest has accepted the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.2     <u>Discharge and Permanent Injunction</u>  Except as otherwise set forth in the Plan, confirmation of the Plan shall discharge the Debtor from all Claims or other debts that arose at any time before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim has accepted the Plan.  As of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined, to the full extent provided under Sections 524(a) and 1141 of the Bankruptcy Code, from "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability" of the Debtor or the Reorganized Debtor, except as otherwise set forth in this Plan.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Debtor that was or could have been commenced before the entry of the Confirmation Order, (b) the enforcement against Reorganized Debtor or its assets of a judgment obtained before the Petition Date, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon all or any part of the assets.  Nothing contained in the foregoing discharge shall, to the full extent provided under Section 524(e) of the Bankruptcy Code, affect the liability of any other entity on, or the property of any other entity for, any debt of the Debtor that is discharged under the Plan.

8.3     <u>Limitation of Liability</u>.  The Debtor and the Reorganized Debtor and each of their respective Agents shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

8.4     <u>Exculpation</u>.  The Debtor, the Reorganized Debtor and each of their respective Agents, shall not be liable to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Petition Date in connection with the Bankruptcy Case or the negotiation, formulation,

development, proposal, disclosure, confirmation or implementation of the Plan and in all respects

shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and

responsibilities under the Plan, provided, however, that the foregoing provisions shall have no affect

on the Tonkon Claims or the liabilities of any person that resulted from any such act or omission that

is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to

have constituted negligence, breach of fiduciary duty or willful misconduct.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1    Jurisdiction of the Bankruptcy Court.  Notwithstanding the entry of the

Confirmation Order, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant

to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code:

(a)    to resolve controversies and disputes regarding any Avoidance Action,

(b)    to classify the Claim or Interest of any Creditor or stockholder,

reexamine Claims or Interests which have been owed for voting purposes and determine any

objections that may be Filed to Claims or Interests,

(c)    to determine requests for payment of Claims entitled to priority under

Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses in

favor of professionals employed in this Bankruptcy Case,

(d)    to avoid transfers or obligations to subordinate Claims under Chapter 5

of the Bankruptcy Code,

(e)    to approve the assumption, assignment or rejection of an executory

contract or an unexpired lease pursuant to this Plan,

(f)    to resolve controversies and disputes regarding the interpretation of

this Plan,

(g)    to implement the provisions of this Plan and enter orders in aid of

confirmation,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(h)    to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Bankruptcy Case, and

(i)    to enter a final decree closing this Bankruptcy Case.

9.2    Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in, or related to this Bankruptcy Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE X

## ADMINISTRATIVE PROVISIONS

10.1    Modification or Withdrawal of the Plan. Debtor may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time that the Bankruptcy Court has signed the Confirmation Order. After such time, and prior to the substantial consummation of the Plan, Debtor may, so long as the treatment of holders of Claims and Interests under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

10.2    Revocation or Withdrawal of Plan. Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtor or any other Entity or to prejudice in any manner the rights of Debtor or any Entity in any further proceeding involving Debtor.

10.3    Modification of Payment Terms. The Debtor may modify the treatment of any Allowed Claim or Interest in any manner adverse only to the holder of such Claim or Interest at any time after the Effective Date upon the prior written consent of the person whose Allowed Claim or Interest treatment is being adversely affected.

10.4    <u>Nonconsensual Confirmation</u>.  Debtor shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are met.

10.5    <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of Debtor.

10.6    <u>Final Decree</u>.  At any time following the Effective Date, the Reorganized Debtor shall be authorized to file a motion for the entry of a final decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code.

**ARTICLE XI**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

11.1    <u>Conditions to Confirmation</u>.  The following are conditions precedent to the confirmation of this Plan:

11.1.1    The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtor; and

11.1.2    The Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor.

11.2    <u>Conditions to Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date:

11.2.1    The Confirmation Date shall have occurred;

11.2.2    The Confirmation Order shall have become a Final Order;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

11.2.3    No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, of made, remains pending;

11.2.4    The Debtor shall have determined that it has sufficient Cash reserves necessary to make all payments required to be made on the Effective Date.

11.3    <u>Waiver of Conditions</u>.  Conditions to Confirmation and the Effective Date may be waived, in whole or in part, by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

12.1    <u>Revesting</u>.  Except as otherwise expressly provided herein, on the Effective Date, all property and assets of the estate of Debtor including, without limitation, all forfeited escrow deposits not yet returned to Debtor, shall revest in Reorganized Debtor, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors arising on or before the Effective Date, and Reorganized Debtor may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

12.2    <u>Rights of Action</u>.  Except as otherwise expressly provided herein, any claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination including, without limitation, the Tonkon Claims, claims under Section 550(a) of the bankruptcy Code or any of the sections referenced therein (including, without limitation, any and all Avoidance Actions) accruing to Debtor shall remain assets of Reorganized Debtor.  Reorganized Debtor may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for its benefit.

12.3    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

12.4    <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtor and Reorganized

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Reorganized Debtor may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable Reorganized Debtor to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  Pursuant to Section 346(f) of the Bankruptcy Code, the Reorganized shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.

12.5   Time.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

12.6   Section 1146(c) Exemption.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real property of Debtor or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, including without limitation the sale of any real property by Debtor or Reorganization Debtor (in Hawaii, Oregon or otherwise) pursuant to and in performance of Reorganized Debtors obligations under this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

which any instrument, including any deed conveying any of Reorganized Debtor's interest in any of its real property, hereunder is to be recorded shall, be ordered and directed to accept such instrument without requiring the payment of any conveyance fee, documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax or fee.

12.7    Severability.  In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.  To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Debtor, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

12.8    Successors and Assigns.  The provisions of the Plan shall bind Debtor, Reorganized Debtor and all holders of Claims and Interests, and their respective successors, heirs and assigns.

12.9    Notices to Claim and Interest Holders.  Notices to Persons holding a Claim or Interest will be sent to the addresses set forth in such Person's proof of Claim or Interest or, if none was filed, at the address set forth in the Schedules.

12.10    Post Effective-Date Notices.  Following the Effective Date, notices will only be served on the Reorganized Debtor, the Office of the United States Trustee and those persons who file with the Court and serve upon the Reorganized Debtor a request, which includes such person's name, contact person, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters.  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request with the Bankruptcy Court.

12.11    Retiree Benefits.  On or after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code, maintained or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

established by Debtor prior to the Effective Date, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate the foregoing arrangements.

12.12    Provisions Enforceable.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan is valid and enforceable in accordance with its terms.

12.13    Recordable Order.  The Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

12.14    Plan Controls.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

12.15    Delivery of Promissory Notes.  To the extent that this Plan provides for Reorganized Debtor to deliver a promissory note to a Secured Creditor in connection with an Allowed Secured Claim, except as otherwise specifically provided in this Plan or in any note or document delivered in connection with this Plan, this Plan and any note or other document delivered in connection herewith shall replace and supersede all pre-petition notes, loan agreements, trust deeds, security documents or other documents executed by Debtor in connection with the obligations giving rise to the Allowed Claim.  Unless otherwise provided in this Plan, each Creditor will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date.  Accordingly, unless otherwise provided in this Plan, the validity and priority of any trust deed or other security document executed in connection with the obligations giving rise to the Creditor's Allowed Claim will not be impaired by this Plan.  However, except as otherwise specifically provided in this Plan, to the extent that any such trust deed or other security document contains any provisions that impose any covenants, requirements or obligations on Debtor or Reorganized Debtor that are not specifically provided for or contained in, or are otherwise inconsistent with, this Plan, then such provisions shall be of no force and effect.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

12.16  <u>Effectuating Documents and Further Transactions</u>.  Debtor and Reorganized Debtor shall execute, deliver, file or record such contracts, instruments, assignments, and other agreements or documents, and take or direct such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

DATED this 10th day of January  2011.

Respectfully submitted,

ARLIE & COMPANY

By _____
Scott Diehl, Chief Financial Officer

PACHULSKI STANG ZIEHL & JONES LLP

By /s/ John D. Fiero
John D. Fiero, (CA Bar No. 136557)
Linda F. Cantor, (CA Bar No. 153762)
Attorneys for Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**CERTIFICATE OF SERVICE**

I, Diane H. Hinojosa, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and am not a party to this action. My business address is 10100 Santa Monica Boulevard, Suite 1100, Los Angeles, California.

I certify that on January 10, 2011, I caused to be served the **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION (JANUARY 10, 2011)** by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on January 10, 2011, at Los Angeles, California.

　　　 /s/ *Diane H. Hinojosa* 　　　
　　　　　 Diane H. Hinojosa