John D. Fiero (CA Bar No. 136557)
Linda F. Cantor (CA Bar No. 153762)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: jfiero@pszjlaw.com
        lcantor@pszjlaw.com
        tkapur@pszjlaw.com

and

Brad T. Summers (OSB No. 911116)
David W. Criswell (OSB No. 925930)
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone: 503/228-2525
Facsimile: 503/295-1058
Email: tsummers@balljanik.com
        dcriswell@balljanik.com

Attorneys for Debtor Arlie & Company

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| In re | Case No. 10-60244-aer11 |
| **ARLIE & COMPANY,** | Chapter 11 |
| Debtor. | **DEBTOR'S ~~FIRST~~SECOND AMENDED PLAN OF REORGANIZATION (~~JANUARY 10,~~FEBRUARY 14, 2011)** |
| | **Hearing** |
| | Date: ~~TBD~~April 4, 2011 |
| | Time: ~~TBD~~10:00 a.m. |
| | Place: United States Bankruptcy Court 405 E. 8th Avenue~~,~~ Courtroom #~~2600~~6 Eugene, Oregon 97401 |
| | Judge: Honorable ~~Albert E~~Frank R. ~~Radcliffe~~Alley |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINITIONS** ...................................................................................................... 1

1.1 "Administrative Expense Claim" ...................................................................... 1

1.2 "Agent" ................................................................................................................ 1

1.3 "Allowed" ............................................................................................................ 1

1.4 "Avoidance Actions" ......................................................................................... 2

1.5 "Bankruptcy Case" ............................................................................................ 2

1.6 "Bankruptcy Code" ............................................................................................ 2

1.7 "Bankruptcy Court" ........................................................................................... 2

1.8 "Bankruptcy Rules" ........................................................................................... 2

1.9 "BLM Secured Creditors" ................................................................................. 2

1.10 "Building D Value" ............................................................................................. 2

1.11 "Business Day" .................................................................................................. 3

1.12 "Cash" .................................................................................................................. 3

1.13 "Claim" ................................................................................................................ 3

1.14 "Class" ................................................................................................................. 3

1.15 "Collateral" ......................................................................................................... 3

1.16 "Confirmation Date" .......................................................................................... 3

1.17 "Confirmation Hearing" ................................................................................... 3

1.18 "Confirmation Order" ........................................................................................ 3

1.19 "Creditor" ............................................................................................................ 3

1.20 "Debtor" ............................................................................................................... 3

1.21 "Deficiency Claim" ............................................................................................ 3

1.22 "Disclosure Statement" .................................................................................... 4

1.23 "Disputed Claim" ............................................................................................... 4

1.24 "Effective Date" .................................................................................................. 4

1.25 "Entity" ................................................................................................................ 4

1.26 "Excess Sale Proceeds" .................................................................................. 4

1.27 "Filed" .................................................................................................................. 4

1.28 "Final Order" ....................................................................................................... 4

1.29 "General Unsecured Claim" ............................................................................ 4

1.30 "Interests" ........................................................................................................... 5

1.31 "Lord Byron Collateral Value" ........................................................................ 5

1.32 "Maturity Date" .................................................................................................. 5

1.33 "Non-core assets" ............................................................................................. 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.34 &ldquo;Other Priority Claim&rdquo;. ... 5

1.35 &ldquo;Petition Date&rdquo;. ... 5

1.36 &ldquo;Plan&rdquo;. ... 5

1.37 &ldquo;~~Priority Tax Claim~~Plan Supplement&rdquo;. ... 5

1.38 &ldquo;Priority Tax Claim&rdquo;. ... 5

1.39 &ldquo;Pro Rata&rdquo;. ... 5

~~1.39~~ &ldquo;~~Property Tax~~&rdquo;. ... 5

1.40 &ldquo;Property Tax&rdquo;. ... 5

1.41 &ldquo;Property Tax Lien Claim&rdquo;. ... 56

~~1.41~~1.42 &ldquo;Rejection Claim&rdquo;. ... 5

~~1.42~~ &ldquo;~~Reorganized Debtor~~&rdquo;. ... 6

1.43 &ldquo;~~Roberts Distributions~~&rdquo;. ... ~~6~~Reorganized Debtor&rdquo;. ... 6

1.44 &ldquo;Roberts Distributions&rdquo;. ... 6

1.45 &ldquo;Schedules&rdquo; ... 6

~~1.45~~1.46 &ldquo;Scheduled Amounts&rdquo;. ... 6

~~1.46~~ &ldquo;~~Secured Claim~~&rdquo;. ... 6

1.47 &ldquo;Secured Claim&rdquo;. ... 6

1.48 &ldquo;Small Unsecured Claim&rdquo;. ... 6

~~1.48~~1.49 &ldquo;Tonkon Claims&rdquo;. ... 6

~~1.49~~1.50 &ldquo;Unsecured Claim&rdquo;. ... 6

**ARTICLE II UNCLASSIFIED CLAIMS** ... ~~1~~7

2.1 Administrative Expense Claims. ... ~~1~~7

2.2 Priority Tax Claims. ... ~~1~~7

2.3 Bankruptcy Fees. ... ~~1~~7

**ARTICLE III CLASSIFICATION** ... ~~1~~8

3.1 Class 1 (Other Priority Claims). ... ~~2~~8

3.2 Class 2 (BofA). ... ~~2~~8

3.3 Class 3 (Century Bank). ... ~~2~~8

3.4 Class 4 (Pioneer). ... ~~2~~8

3.5 Class 5 (Siuslaw Bank). ... ~~2~~8

3.6 Class 6 (Summit Bank). ... ~~2~~8

3.7 Class 7 (Umpqua Bank). ... ~~2~~8

3.8 Class 8 (Washington Federal Savings). ... ~~2~~8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3.9     Class 9 (BLM Secured Creditors)................................................28

3.10    Class 10 (Property Tax Lien Claims)..........................................28

3.11    Class 11 (Small Unsecured Claims).............................................28

3.12    Class 12 (General Unsecured Claims)..........................................29

3.13    Class 13 (Interests)......................................................................29

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ...........3~~9~~

4.1     Class 1 (Other Priority Claims)..................................................3~~9~~

4.2     Class 2 (Allowed Secured Claims of BofA)................................3~~9~~

4.3     Class 3 (Allowed Secured Claim of Century Bank).................~~5~~12

4.4     Class 4 (Allowed Secured Claim of Pioneer)...........................~~6~~12

4.5     Class 5 (Allowed Secured Claims of Siuslaw Bank).................~~7~~13

4.6     Class 6 (Summit Bank).............................................................~~15~~20

4.7     Class 7 (Umpqua Bank).............................................................~~17~~23

4.8     Class 8 (Washington Federal Savings)......................................~~30~~30

4.9     Class 9 (BLM Secured Creditors).............................................~~32~~39

4.10    Class 10 (Property Tax Lien Claims)........................................~~35~~42

4.11    Class 11 (Small Unsecured Claims)...........................................~~36~~42

4.12    Class 12 (General Unsecured Claims)........................................~~36~~43

4.13    Class 13 (Interests)..................................................................~~36~~43

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** .............................~~36~~43

5.1     Distributions by Debtor...........................................................~~36~~43

5.2     Disputed Claims; Objections to Claims ..................................~~36~~43

5.3     Subsequent Allowance of Disputed Claims. ..........................~~37~~44

5.4     Unclaimed Distributions...........................................................~~37~~44

**ARTICLE VI MEANS FOR EXECUTION OF PLAN** ..........................................~~37~~44

6.1     Continued Business Operations...............................................~~37~~44

6.2     Siuslaw Loan.............................................................................~~38~~44

6.3     Operating Revenues.................................................................~~38~~45

6.4     Sales or Refinancing of Real Property Collateral....................~~38~~45

6.5     Marketing and Sales of Non-Core Assets................................~~39~~46

6.6     Setoffs.......................................................................................~~39~~46

6.7     Corporate Action.......................................................................~~39~~46

6.8     Saturday, Sunday, or Legal Holiday.........................................~~40~~46

6.9     Deposits.....................................................................................~~40~~47

6.10    Event of Default; Remedy.........................................................~~40~~47

6.11    Continuation of Unsecured Creditors' Committee....................~~40~~47

**ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .........~~41~~48

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

7.1 Assumption and Rejection. ~~41~~48

7.2 Assignment. ~~41~~49

7.3 Rejection Claims. ~~42~~49

7.4 Compensation and Benefit Programs. ~~42~~49

**ARTICLE VIII EFFECT OF CONFIRMATION** ~~42~~49

8.1 Binding Effect. ~~42~~49

8.2 Discharge and Permanent Injunction ~~43~~50

8.3 Limitation of Liability. ~~43~~51

8.4 Exculpation. ~~43~~51

**ARTICLE IX RETENTION OF JURISDICTION** ~~44~~51

9.1 Jurisdiction of the Bankruptcy Court. ~~44~~51

9.2 Failure of Bankruptcy Court to Exercise Jurisdiction. ~~45~~52

**ARTICLE X ADMINISTRATIVE PROVISIONS** ~~45~~52

10.1 Modification or Withdrawal of the Plan. ~~45~~52

10.2 Revocation or Withdrawal of Plan. ~~45~~52

10.3 Modification of Payment Terms. ~~45~~53

10.4 Nonconsensual Confirmation. ~~46~~53

10.5 Compromise of Controversies. ~~46~~53

10.6 Final Decree. ~~46~~53

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION** ~~46~~53

**AND CONSUMMATION OF THE PLAN** ~~46~~53

11.1 Conditions to Confirmation. ~~46~~53

11.2 Conditions to Effective Date ~~46~~54

11.3 Waiver of Conditions. ~~47~~54

**ARTICLE XII MISCELLANEOUS PROVISIONS** ~~47~~54

12.1 Revesting. ~~47~~54

12.2 Rights of Action. ~~47~~55

12.3 Governing Law. ~~47~~55

12.4 Withholding and Reporting Requirements. ~~47~~55

12.5 Time. ~~48~~56

12.6 Section 1146(c) Exemption. ~~48~~56

12.7 Severability. ~~49~~56

12.8 Successors and Assigns. ~~49~~56

12.9 Notices to Claim and Interest Holders.~~s~~ ~~49~~57

12.10 Post Effective-Date Notices. ~~49~~57

12.11 Retiree Benefits. ~~49~~57

12.12 Provisions Enforceable. ~~50~~57

05437-001\DOCS_LA:~~230606.7~~231180.2

~~FIRST~~SECOND AMENDED PLAN OF REORGANIZATION
(~~JANUARY 10,~~FEBRUARY 14, 2011)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

12.13   Recordable Order...............................................................................~~50~~57

12.14   Plan Controls...................................................................................~~50~~57

12.15   Delivery of Promissory Notes...........................................................~~50~~58

12.16   Effectuating Documents and Further Transactions.............................~~51~~58

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Arlie & Company, as debtor and debtor-in-possession ("Debtor"), proposes the following Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code.

The Plan provides for the repayment in full of Debtor's obligations to its Creditors. A Disclosure Statement is enclosed herewith to assist you in understanding the Plan and making an informed judgment concerning its terms.

# ARTICLE I

## DEFINITIONS

Definitions of certain terms used in the Plan are set forth below. Other terms are defined in the text of the Plan or in the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in the Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1     "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2     "Agent" means any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

1.3     "Allowed" means, when used to modify the term Claim or Administrative Expense Claim, either a proof of which has been properly Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

contingent or an Administrative Expense Claim that the Debtor has received by the applicable bar date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent (a) such objection is resolved between such claimant and either the Debtor or the Reorganized Debtor or (b) such Claim is allowed by a Final Order.

1.4     "Avoidance Actions" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law (including, without limitation, Sections 506(c), 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

1.5     "Bankruptcy Case" means the case under Chapter 11 of the Bankruptcy Code with respect to Debtor, pending in the District of Oregon, administered as *In Arlie & Company,* Case No. 10-60244-aer11.

1.6     "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

1.7     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or any proceeding therein, including the United States District Court for the District of Oregon, to the extent that the reference to the Bankruptcy Case or any proceeding therein is withdrawn.

1.8     "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

1.9      "BLM Secured Creditors" means each of Francis Cline, William Greenhoot, McKillop II Limited Partnership, Karen Merwin, Alice Smith and Linda Trickey.

1.10     "Building D Value" means $4,200,000.4,000,000.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.11    "Business Day" means a day other than a Saturday, Sunday, any legal holiday as defined in Bankruptcy Rule 9006(a), or other day on which banks in Portland, Oregon are authorized or required by law to be closed.

1.12    "Cash" means lawful currency of the United States of America and equivalents, including, without limitation, checks, wire transfers and drafts.

1.13    "Claim" means (a) any right to payment from Debtor arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.14    "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.15    "Collateral" means any property in which Debtor has an interest that is subject to a lien or security interest securing the payment of an Allowed Secured Claim.

1.16    "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

1.17    "Confirmation Hearing" means the hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

1.18    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.19    "Creditor" means any entity holding a Claim against Debtor.

1.20    "Debtor" means Arlie & Company, as Debtor and Debtor-in-Possession in the Bankruptcy Case.

1.21    "Deficiency Claim" has the meaning set forth in the sentence following the definition of "Secured Claim."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.22    "Disclosure Statement" means Debtor's Disclosure Statement as amended, modified, restated or supplemented from time to time, pertaining to the Plan.

1.23    "Disputed Claim" means a Claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of such Claim.  If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only to the extent of the objection.

1.24    "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all conditions to the occurrence of the Effective Date set forth in Article 11.2 of this Plan have been either satisfied or waived but in no event later than April 25, 2010.

1.25    "Entity" shall have the meaning ascribed to it by Section 101(15) of the Bankruptcy Code.

1.26    "Excess Sale Proceeds" means proceeds from the sale of property of the Debtor after payment of all debt secured by such property, Property Taxes, commissions, closing and transaction costs including, without limitation, legal and marketing expenses.

1.27    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

1.28    "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

1.29    "General Unsecured Claim" means any Unsecured Claim that is not otherwise classified under the Plan.

1.30     "Interests" means an equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code.

1.31     "Lord Byron Collateral Value" means $1,500,000.

1.32     "Maturity Date" means the fifth anniversary of the Effective Date.

1.33     "Non-core assets" means those real property assets of Reorganized Debtor identified by Reorganized Debtor ~~from time to time in its sole discretion~~ on Exhibit B to the Disclosure Statement as assets that are not core to Reorganized Debtor's long-term business success.

1.34     "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Section 507(a)(3), (4), (5) (6) or (7) of the Bankruptcy Code.

1.35     "Petition Date" means January 20, 2010, the date on which the petition commencing this Bankruptcy Case was Filed.

1.36     "Plan" means this Plan of Reorganization, as amended, modified, restated or supplemented from time to time.

1.37     "Plan Supplement" means such documents, schedules and exhibits to the Plan that are not filed contemporaneously with the filing of the Plan, and any amendments to exhibits filed contemporaneously with the filing of the Plan (or any amendments or supplements to any previously filed Plan Supplement).  The Debtor shall file and serve the Plan Supplement no later than ten days prior to the Plan voting deadline.

1.38     ~~1.37~~ "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.39     ~~1.38~~ "Pro Rata" means a proportionate share, so that the ratio of (a) the amount of property distributed on account of any Allowed Claim, or retained on account of a Disputed Claim, in a Class, to (b) the amount distributed on account of all Allowed Claims, or allocated to on account of all disputed claims, in such Class, is the same as the ratio (x) such Claim bears to (y) the total amount of all Claims (including Disputed Claims in their respective Disputed Claim Amounts) in such Class.

1.40     ~~1.39~~ "Property Tax" means *ad valorem* property taxes or similar impositions by a governmental unit on property of the Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.41    1.40 "Property Tax Lien Claim" means the Secured Claim of any governmental unit for Property Taxes that are secured by statutory liens on any of Debtor's property (real or personal).

1.42    1.41 "Rejection Claim" means a Claim arising from the rejection of an unexpired lease or executory contract.

1.43    1.42 "Reorganized Debtor" means Debtor from and after the Effective Date.

1.44    1.43 "Roberts Distributions" means any and all distributions made to Debtor or Reorganized Debtor from the Bankruptcy estate of In re: Roberts Prof. Const. Svcs., Inc. (Case No. 08-60615-fra7).

1.45    1.44 "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

1.46    1.45 "Scheduled Amounts" means the Claim amounts as set forth in Debtor's Schedules.

1.47    1.46 "Secured Claim" means any Claim against Debtor held by any entity, including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.  Unless otherwise provided in the Plan, the unsecured portion, if any, of such Claim shall be treated as a General Unsecured Claim and shall be referred to herein as "Deficiency Claim."

1.48    1.47 "Small Unsecured Claim" means any Unsecured Claim that is equal to or less than $2,000, or that has been reduced by election in writing to $2,000, provided that such written election shall be served on Debtor not later than the first date fixed by the Bankruptcy Court for the filing of acceptances or rejections of the Plan.

1.49    1.48 "Tonkon Claims" means all of the Debtor's claims for relief and causes of action, whether legal or equitable, against Tonkon Torp LLP, whether sounding in contract or tort specifically including but not limited to professional negligence related to Tonkon Torp LLP's representation of the Debtor at any time.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.50 ~~1.49~~ "Unsecured Claim" means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Property Tax Lien Claim, or a Secured Claim.

## UNCLASSIFIED CLAIMS ~~ARTICLE IIIARTICLE IV~~

### ~~unclassified claims~~

1.51 ~~4.1~~ <u>Administrative Expense Claims</u>. Each holder of an Allowed Administrative Expense Claim shall be paid by Reorganized Debtor in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute or regulation governing such Claim); provided, however, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtor during the Bankruptcy Case shall be paid by Debtor or Reorganized Debtor in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

1.52 ~~4.2~~ <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtor the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D), together with interest as provided in 11 U.S.C. § 511, over a period ending not later than five years after the date on which such claim was assessed.

1.53 ~~4.3~~ <u>Bankruptcy Fees</u>. Any then outstanding fees payable by Debtor under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date. After confirmation, Reorganized Debtor shall continue to pay quarterly fees of the Office of the United States Trustee and will continue to file quarterly reports with the Office of the United States Trustee until this case is closed by the Bankruptcy Court, dismissed or converted except as otherwise ordered by the Bankruptcy Court. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARTICLE II~~ARTICLE V~~

## CLASSIFICATION

For purposes of this Plan, Claims (except those treated under Article II) are classified as provided below.  A Claim is classified in a particular Class only to the extent that such Claim qualifies within the description of such Class, and is classified in a different Class to the extent that such Claim qualifies within the description of such different Class.

2.1   ~~5.1~~ Class 1 (Other Priority Claims).  Class 1 consists of all Allowed Other Priority Claims.

2.2   ~~5.2~~ Class 2 (BofA).  Class 2 consists of the Allowed Secured Claims of Bank of American, N.A. ("BofA").

2.3   ~~5.3~~ Class 3 (Century Bank).  Class 3 consists of the Allowed Secured Claims of Century Bank.

2.4   ~~5.4~~ Class 4 (Pioneer).  Class 4 consists of the Allowed Secured Claim of Pioneer Asset Investment Ltd. ("Pioneer").

2.5   ~~5.5~~ Class 5 (Siuslaw Bank).  Class 5 consists of the Allowed Secured Claims of Siuslaw Bank.

2.6   ~~5.6~~ Class 6 (Summit Bank).  Class 6 consists of the Allowed Secured Claims of Summit Bank.

2.7   ~~5.7~~ Class 7 (Umpqua Bank).  Class 7 consists of the Allowed Secured Claims of Umpqua Bank.

2.8   ~~5.8~~ Class 8 (Washington Federal Savings).  Class 8 consists of the Allowed Secured Claims of Washington Federal Savings ("Washington Federal").

2.9   ~~5.9~~ Class 9 (BLM Secured Creditors).  Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors.

2.10   ~~5.10~~ Class 10 (Property Tax Lien Claims).  Class 10 consists of all Allowed Property Tax Lien Claims.

2.11   ~~5.11~~ Class 11 (Small Unsecured Claims).  Class 11 consists of all Allowed Small Unsecured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2.12 5.12 Class 12 (General Unsecured Claims). Class 12 consists of all Allowed General Unsecured Claims.

2.13 5.13 Class 13 (Interests). Class 13 consists of all Interests.

### ARTICLE IIIARTICLE VI

### TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1 6.1 Class 1 (Other Priority Claims). Class 1 is impaired. Each Class 1 Claimant will be paid in full in Cash the amount of its Class 1 Claim on the latter of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such Class 1 Claimant shall agree or has agreed to a different treatment of its Class 1 Claim (including any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim).

3.2 6.2 Class 2 (Allowed Secured Claims of BofA). Class 2 is impaired. The Class 2 Claim of BofA includes Claims for amounts owing under two separate loans, each of which will be separately classified and treated as hereinafter described. Each property of Debtor that is Collateral of BofA shall serve as Collateral for each of BofA's Class 2 Claims. As security for BofA's Class 2 Claims, BofA will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

3.2.1 6.2.1 Class 2.1 – Building A Loan.

BofA will have an Allowed Class 2.1 Claim in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the Effective Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about February 27, 2007 in the original principal amount of $9,000,000 (the "Building A Loan"), which loan is secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building A ("Building A").

BofA's Class 2.1 Claim shall be satisfied by delivery of a promissory note to BofA (the "Building A Note") in the amount of the present value of the amount of the Allowed Class 2.1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Claim.  The Building A Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building A Note.  Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the Building A Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Building A Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

3.2.2    ~~6.2.2~~ Class 2.2 – Building D Loan.

BofA will have an Allowed Class 2.2 Claim ~~(the "BofA Claim")~~ in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the ~~Effective~~Petition Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about November 2, 2007 in the original principal amount of $5,376,088.93 (the "Building D Loan"), which loan is ~~partially~~ secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building D ("Building D").

BofA~~ shall have an Allowed~~'s Class 2.2 Claim shall be satisfied by the delivery of two promissory notes – one in the amount of the Building D Value~~; the remainder of the BofA Claim shall be a Class 12 Claim~~ ("Building D Note 1") and one for the difference between the amount of the Allowed Class 2.2 Claim and the Building D Value ("Building D Note 2").

~~BofA's Class 2.2 Claim shall be satisfied by delivery of a promissory note to BofA (the "Building D Note") in the amount of the present value of the Allowed Class 2.2 Claim.  The Building D Note~~Building D Note 1 shall have the following attributes: (a) it will bear interest at a fixed rate of 4.5% per annum ~~and will be payable by Reorganized Debtor as follows.~~Commencing; (b) commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the first month following the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the ~~36~~24th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building D Note~~. Commencing~~ 1; (c) commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the ~~37~~25th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until ~~the~~ Building D Note 1 has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on ~~the~~ Building ~~A~~D Note 1 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date~~.~~; (d) to the extent that the loan to value ratio of the loan represented by the Building D Note 1 exceeds 75% of the value of Building D (which, for these purposes shall be valued as of the 24th month following the Effective Date after applying an 8% cap rate to the net operating income of Building D), the Reorganized Debtor shall make a cash paydown of the Building D Note 1 in the amount necessary to reduce such loan to value ratio to 75%; (e) the Reorganized Debtor shall establish on the Effective Date a $405,000 reserve account for tenant improvements associated with future leasing activities related to Building D ("the Building D Reserve") which shall be funded with $205,000 cash derived from the BofA cash collateral account and $200,000 from the Roberts Distributions. BofA shall retain its liens and security interests in Building D, which shall serve as security for amounts due under the Building D Note 1 only. Aside from the $200,000 contribution to the Building D Reserve, BofA shall have no claim to any other Roberts Distributions.

The Building D Note 2 shall have the following attributes: (a) it will bear interest at a fixed rate of 3.5% per annum; (b) it will be payable in two installments with the first installment of one half of the principal plus all then accrued interest being due on the tenth day of the 37th month after the Effective Date, and the second installment of all remaining amounts owed thereunder being due on the Maturity Date. There shall be no security for the Building D Note 2, but it shall be cross-defaulted with the Building D Note 1.

<p style="text-align:center">3.2.3     ~~6.2.3~~ Treatment of Bank of America's Cash Collateral</p>

Accounts.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building A (the "Building A Cash Collateral") for payment of any past due Property Taxes on Building A.  The remainder of the Building A Cash Collateral will be either contributed to the Building D Reserve as described in Article 4.2.2 or retained and used by Reorganized Debtor for its general operating purposes.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building D (the "Building D Cash Collateral") for payment of any past due Property Taxes on Building D.  The remainder of the Building D Cash Collateral shall be retained in a segregated BofA account to be used for Property Taxes, capital expenses, tenant improvements, maintenance, improvements, or other expenses directly pertaining to the improvement of Building D or the sale, lease or marketing of Building D. will be either contributed to the Building D Reserve as described in Article 4.2.2 or retained and used by Reorganized Debtor for its general operating purposes.

6.3          Class 3 (Allowed Secured Claim of Century Bank)

3.3          Class 3 (Allowed Secured Claim of Century Bank)  Class 3 is impaired.  Century Bank will have an Allowed Class 3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Century Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Century Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Century Bank to Debtor on or about April 10, 2009 in the original principal amount of $236,000 (the "3058 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3058 Kinney Loop.

As Collateral for the Class 3 Claim, Century Bank will retain its security interests in and liens upon its Collateral that secures the 3058 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Century Bank's Class 3 Claim shall be satisfied by delivery of a promissory note to Century Bank in the amount of the present value of the Allowed Class 3 Claim (the "3058 Kinney

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Loop Note"). The 3058 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum ~~(or such other rate as determined by the Court)~~ and will be payable by Reorganized Debtor as follows.

Commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3058 Kinney Loop Note. Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the 3058 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3058 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

3.4 ~~6.4~~ Class 4 (Allowed Secured Claim of Pioneer). The Class 4 Secured Claim of Pioneer is disputed. If and to the extent Pioneer is determined by Final Order ~~of the Bankruptcy Court~~ to have a valid, perfected security interest in or lien upon property of the Debtor, Pioneer will have an Allowed Class 4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Pioneer as of the Effective Date (in such amounts as are determined by agreement of Debtor and Pioneer or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Pioneer to Debtor ~~on or about~~ on or about September 12, 2008 in the original principal amount of $1,500,000 (the "Pioneer Loan').

As Collateral for the Pioneer Allowed Class 4 Claim, Pioneer will retain its security interest and liens upon its Collateral that secures the Pioneer Loan with the same priority and to the same extent such security had as of the Petition Date and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Pioneer's Allowed Class 4 Claim shall be satisfied by delivery of a promissory note to Pioneer (the "Pioneer Note") in the amount ~~of the present value~~ of the Pioneer Class 4 Claim. The Pioneer Note will bear interest at a fixed rate of 4.5% per annum. The Pioneer Note will be payable by Reorganized Debtor as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The Pioneer Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date.  In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Pioneer Note.  At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Pioneer Note

If and to the extent the Pioneer Secured Claim is avoided or otherwise determined to be unsecured by Final Order ~~of the Bankruptcy Court~~, the Pioneer Claim will be treated as a Class 12 Claim.

**3.5** ~~6.5~~ Class 5 (Allowed Secured Claims of Siuslaw Bank).  Class 5 is impaired. The Class 5 Claims of Siuslaw Bank includes Claims for amounts owing under eight separate loans. Each loan is separately classified and treated as hereinafter described.

**3.5.1** ~~6.5.1~~ Class 5.1 – Crescent Village Lots Loan.

Siuslaw Bank will have an Allowed Class 5.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about August 17, 2006 in the original principal amount of $4,000,000 (the "Crescent Village Lots Loan"), which loan is secured by real property and improvements owned by Debtor located in Eugene, Oregon commonly referred to as Crescent Village Lots 10, 11, 12 and 13 (the "Crescent Village Lots").

As Collateral for the Class 5.1 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Crescent Village Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.1 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Crescent Village Lots Note") in the amount ~~of the present value~~ of the Allowed Class 5.1 Claim, payable by Reorganized Debtor as follows.

The Crescent Village Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Crescent Village Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Crescent Village Lots Note.

Notwithstanding the foregoing, in the event Reorganized Debtor consummates a sale of the Crescent Village Lots to the U.S. Department of Veterans Affairs (the "VA Sale") prior to the Maturity Date, the Reorganized Debtor shall pay off the Crescent Village Lots Note, including all accrued and unpaid interest then owing under the Crescent Village Lots Note, and shall utilize twenty percent (20%) of the Excess Sale Proceeds (the "Siuslaw Payoff Proceeds") to pre-pay such other Allowed Class 5 Secured Claim(s) of Siuslaw Bank (other than the Florence Medical Building Note, as hereinafter defined) as shall be determined by agreement of Reorganized Debtor and Siuslaw Bank.

3.5.2 6.5.2 Class 5.2 – 2850 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about July 10, 2008 in the original principal amount of $88,318 (the "2850 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2850 Kinney Loop.

As Collateral for the Class 5.2 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2850 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.2 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2850 Kinney Loop Note") in the amount of the present value of the Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 5.2 Claim. The 2850 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2850 Kinney Loop Note. Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the 2850 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2850 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 2850 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

3.5.3      ~~6.5.3~~ Class 5.3 – 2960 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about August 20, 2008 in the original principal amount of $245,000 (the "2960 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2960 & 3100 Kinney Loop.

As Collateral for the Class 5.3 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2960 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.3 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2960 Kinney Loop Note") in the amount ~~of the present value~~ of the Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 5.3 Claim.  The 2960 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2960 Kinney Loop Note.  Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the 2960 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2960 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.  Notwithstanding the foregoing, the 2960 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 3.5.4 ~~6.5.4~~ Class 5.4 – 3082 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about October 15, 2007 in the original principal amount of $219,910 (the "3082 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3082 Kinney Loop.

As Collateral for the Class 5.4 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3082 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.4 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3082 Kinney Loop Note") in the amount ~~of the present value~~ of the Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 5.4 Claim.  The 3082 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3082 Kinney Loop Note.  Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the 3082 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3082 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.  Notwithstanding the foregoing, the 3082 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 3.5.5    ~~6.5.5~~ Class 5.5 – 3108 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about October 15, 2007 in the original principal amount of $180,000 (the "3108 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3108 Kinney Loop.

As Collateral for the Class 5.5 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3108 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.5 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3108 Kinney Loop Note") in the amount ~~of the present value~~ of the Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 5.5 Claim.  The 3108 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3108 Kinney Loop Note.  Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the 3108 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3108 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.  Notwithstanding the foregoing, the 3108 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

### 3.5.6 ~~6.5.6~~ Class 5.6 – Florence Medical Building Loan.

Siuslaw Bank will have an Allowed Class 5.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about March 27, 2009 in the original principal amount of $611,250 (the "Florence Medical Building Loan"), which loan is secured by Debtor's real property and improvements in Florence, Oregon commonly referred to as 4480 Hwy. 101 N., Florence (the "Florence Medical Building").

As Collateral for the Class 5.6 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Florence Medical Building Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.6 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Florence Note") in the amount ~~of the present value~~ of the Allowed Class 5.6

Claim. The Florence Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

On the Effective Date, Reorganized Debtor shall pay down the Florence Note to the original principal amount of the Florence Medical Building Loan. Thereafter, commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Florence Note. Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the Florence Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Florence Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

3.5.7        ~~6.5.7~~ Class 5.7 – Kinney Loop Lots Loan.

Siuslaw Bank will have an Allowed Class 5.7 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor ~~on or about~~ on or about March 20, 2007 in the original principal amount of $1,087,500 (the "Kinney Loop Lots Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2802/2804 & 2834 Kinney Loop and 2729 & 2743 Coburg Road.

As Collateral for the Class 5.7 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Kinney Loop Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.7 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Kinney Loop Lots Note") in the amount ~~of the present value~~ of the Allowed Class 5.7 Claim, payable by Reorganized Debtor as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The Kinney Loop Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Kinney Loop Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Kinney Loop Lots Note.

6.5.8        Class 5.8 – Natron Land Loan.

Siuslaw Bank will have an Allowed Class 5.8 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about on or about February 21, 2008 in the original principal amount of $945,000 (the "Natron Land Loan"), which loan is secured by Debtor's real property and improvements in Springfield, Oregon known as South 60th Street and commonly referred to by Debtor as the Natron Vacant Land. In the event a sale of the Natron Vacant Land has not been consummated prior to the Effective Date, the Class 5.8 Claim shall be addressed as follows.

As Collateral for the Class 5.8 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Natron Land Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.8 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Natron Note") in the amount of the present value of the Allowed Class 5.8 Claim, payable by Reorganized Debtor as follows.

The Natron Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Natron Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Natron Note. Notwithstanding the foregoing, the Natron Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**3.5.8** ~~6.5.9~~ Treatment of Siuslaw Bank's Cash Collateral Account.

On the Effective Date, all amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Siuslaw Bank pursuant to the Cash Collateral Order shall be utilized to pay any past due Property Taxes on the Collateral securing the Class 5 Claims. Any amounts remaining in the account after the payment of such taxes shall be utilized by the Reorganized Debtor for its general operating purposes.

**3.6** ~~6.6~~ Class 6 (Summit Bank). Class 6 is impaired. The Class 6 Claim of Summit Bank includes two subclaims, each of which will be separately classified and treated as hereinafter described.

**3.6.1** ~~6.6.1~~ Class 6.1 – Road Radio Tower Loan.

Summit Bank will have an Allowed Class 6.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Summit Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Summit Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Summit Bank to Debtor on or about November 4, 2004 in the original principal amount of $331,946 (the "Radio Tower Loan "), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 650 Goodpasture Island Road.

As Collateral for the Class 6.1 Claim, Summit Bank will retain its security interests in and liens upon its Collateral that secures the Radio Tower Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Summit Bank's Class 6.1 Claim shall be satisfied by delivery of a promissory note to Summit Bank (the "Radio Tower Note") in the amount ~~of the present value~~ of the Allowed Class 6.1 Claim. The Radio Tower Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows:

Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Radio Tower Note. Commencing on ~~the first (but no later than~~ the ~~tenth)~~ tenth day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth ~~)~~ day of each month thereafter until the Radio Tower Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Radio Tower Note based on a 25 year amortization schedule, with a balloon payment due of all principal and interest due on the Maturity Date.

<h3 style="text-align:center">3.6.2      ~~6.6.2~~ Class 6.2 – Guaranty Claim.</h3>

Debtor executed in favor of Summit Bank a guaranty dated June 7, 2006 (the "Churchill Media Guaranty") pursuant to which Debtor guaranteed the obligations of Churchill Media, LLC (an affiliate of Debtor) to Summit Bank. In connection with such guaranty and such indebtedness, including a promissory note in the original principal amount of $3,000,000 dated May 8, 2007 from Churchill Media, LLC to Summit Bank, Debtor granted Summit Bank a security interest in Debtor's real property in Eugene, Oregon generally known as NNK Crescent Drive (Crescent Village Lot 4) and in Debtor's real property in Eugene, Oregon commonly known as NNK Willow Creek Road (W. 11th & Willow Creek, hereinafter referred to as the "Willow Creek Property").

Summit Bank will have an Allowed Class 6.2 claim in the amount ~~of the present value of the amount~~ owing by Debtor under the Churchill Media Guaranty. As security for the Class 6.2 Claim, Summit Bank will retain its security interest in and liens upon its Collateral securing the Churchill Media Guaranty with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value. Summit Bank's Class 6.2 Claim will be satisfied by the delivery of a promissory note to Summit Bank (the "Guaranty Note")~~,~~ payable ~~by Reorganized Debtor~~ as follows.

The Guaranty Note will accrue interest at the fixed rate of 4.5% per annum, and will be payable in full on the Maturity Date. In addition, ~~within 3 years~~ Reorganized Debtor shall pre-pay a portion of the Guaranty Note through the sale or turnover of the Willow Creek Property as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Reorganized Debtor shall have six (6) months after the Effective Date, ~~Reorganized Debtor or Churchill shall have pre-paid at least 50% of the principal of the Guaranty Note. At the time of any such pre-payment, Reorganized Debtor or Churchill shall also pay all accrued but unpaid interest then owing under the Guaranty Note.~~ to enter into a letter of intent for the sale of the Willow Creek Property, provided that any such sale must close within two (2) months after the execution of the letter of intent. The Willow Creek Property net sale proceeds (after payment of Property Taxes, commissions, closing and transaction costs including, without limitation, legal and marketing expenses) will be applied to pay down the Guaranty Note. In the event a sale is not effectuated as set forth above, Reorganized Debtor shall transfer title to the Willow Creek Property to Summit Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Summit Bank, and the amount outstanding under the Guaranty Note shall be reduced by the assessed value of the Willow Creek Property. For purposes of this Article 4.6.2, "assessed value" shall mean the value ascribed to the Willow Creek Property as agreed to by the Reorganized Debtor and Summit Bank and, if no such agreement is reached, such value as determined by the Bankruptcy Court.

All payments received by Summit Bank from Churchill or any successor to or trustee or receiver for Churchill will be applied by Summit Bank in reduction of the principal owing on the Guaranty Note. In the event that Reorganized Debtor pays or satisfies the Guaranty Note, then Reorganized Debtor will be subrogated to the position of Summit Bank with respect to the obligations of Churchill and Summit Bank will execute and deliver such documents as may be necessary or appropriate to evidence such payment and subrogation.

~~As security for the Class 6.2 Claim, Summit Bank will retain its security interest in and liens upon its Collateral securing the Churchill Media Guaranty with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.~~

3.6.3     ~~6.6.3~~ Treatment of Summit Bank's Cash Collateral Account.

05437-001\DOCS_LA:~~230606.7~~231180.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On the Effective Date, Reorganized Debtor shall utilize the amounts maintained in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Summit Bank pursuant to the Cash Collateral Order towards payment by Reorganized Debtor of any past due Property Taxes on the Collateral securing the Class 6 Claims. Any amounts remaining in the account after payment of such taxes shall be retained by Reorganized Debtor to be used for general operating purposes.

3.7   6.7 Class 7 (Umpqua Bank). Class 7 is impaired. The Class 7 Claim of Umpqua Bank includes Claims for amounts owing under twelve separate loans, each of which will be classified and treated as hereinafter described. The total amount of each Umpqua Bank Allowed Claim includes the principal balance owing under the Umpqua Bank loan, together with all accrued and unpaid non-default interest owing under the loan as of the Effective Date and such fees (excluding any late payment fees) and costs (the "Umpqua Bank Fees") as allowed by Umpqua Bank's existing loan documents with Debtor as of the Effective Date and allocated in accordance with Article 4.7.15 of the Plan (the "Umpqua Bank Fees"). Umpqua Bank shall have no Claims and shall make no demands on Debtor, Reorganized Debtor or any guarantor of a an Umpqua Bank Loan for events or defaults under or relating to the Umpqua Bank loans that occurred before the Effective Date and any such Claims events or defaults shall be deemed waived, released and extinguished, provided that such pre-Effective Date waiver shall not apply to defaults continuing after the Effective Date that materially harm or affect the value of Umpqua Bank's interest in the real property Collateral. Except to the extent specifically modified by this Plan, Umpqua Bank will retain its pre-Petition Date security interests in and liens upon its Collateral (including assets generated or purchased after the Effective Date but perfected before the Petition Date) with the same priority and to the same extent such security had as of the Petition Date, all of which liens and security interests are and will continue to be cross-defaulted and cross collateralized. Notwithstanding the foregoing, Umpqua Bank shall have no claim against, lien on or security interest in the Roberts Distributions.

Reorganized Debtor will conform to the requirements set forth in such loan and security documents provided by Debtor to Umpqua Bank as amended, other than any financial covenant requirements or financial reporting requirements which shall be of no force or effect.

Notwithstanding the foregoing, Debtor and/or Reorganized Debtor shall execute and deliver to Umpqua Bank such amendments to the existing loan documents as Umpqua Bank generally requires to conform the loan documents to the terms of this Plan, and Debtor and/or,  Without limiting the foregoing, such amendments will include having the following financial reports provided to Umpqua Bank (all in such form as reasonably required by Umpqua Bank):  45 days after the end of each calendar quarter, internally prepared financial statements (including balance sheet and cash flow statement); 120 days after each year end, internally prepared financial statements; annual financial statements 120 days after year end and copies of corporate tax returns with schedules when filed and copies of non-residential lease agreements after they are signed.  In addition, Reorganized Debtor shall provide such financial reports to Umpqua Bank as it reasonably requests in light of the treatment of Umpqua's Claims under the Plan and the nature of Umpqua Bank's Collateral.  Without limiting the preceding, in the event and to the extent that any provision of the Plan is inconsistent with the provisions set forth in any Umpqua Bank loan document, the provisions of the Plan shall control and take precedence.

As used below, the "Arlie Debt Amount" as to any property securing an Umpqua Bank loan is the amount of principal and the then accrued and outstanding non-default interest owing on the Umpqua loan associated with such property.

3.7.1    6.7.1 Class 7.1 – Westlane Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees)the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about on or about February 12, 2002 in the original principal amount of $5,910,000 (the "Westlane Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Veneta, Oregon commonly referred to as 88330 N. Territorial Road (the "Westlane Property").  Umpqua Bank's Class 7.1 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Westlane Property at a price in excess offor cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees

for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, ~~or (b~~(b) purchase the Westlane Property at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property or (c) transfer title to the Westlane Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property ~~including, without limitation, the~~and the applicable Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the Westlane Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3~~*~~) of any sale proceeds in excess of the ~~Arlie Debt Amount and~~sum of (a) reasonable commissions, closing and transaction costs including, without limitation, legal and marketing expenses (collectively, the "Closing Costs"), (b) the applicable Arlie Debt Amount, (c) Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7 Claim, other than a Class 7.1, 7.2, or 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). Any sale or purchase by Reorganized Debtor of the Westlane Property shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or purchase.

3.7.2 ~~6.7.2~~ Class 7.2 - West 11th Land Loan.

Umpqua Bank will have an Allowed Class 7.2 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees) under the unpaid principal balance~~the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about December 29, 2003 in the original principal amount of $1,404,650 (the "West 11th Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3802, 3810 and 3838 W. 11th. Avenue, Eugene, Oregon (the "West 11th Land Property"). Umpqua Bank's Class 7.2 Claim shall be satisfied as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the West 11th Land Property at a price ~~in excess of the~~for cash at closing in an amount that will pay Umpqua Bank the applicable Arlie Debt Amount and Umpqua Bank Fees for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, ~~or (b~~(b) purchase the West 11th Land Property at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, or (c) transfer title to the West 11th Land Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property ~~including, without limitation, the~~and the applicable Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven.  Provided that Reorganized Debtor effectuates a sale of the West 11th Land Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3~~s~~) of any sale proceeds in excess of the sum of (a) Closing Costs, (b) the Arlie Debt Amount ~~and~~, (c) Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).  Any sale or purchase by Reorganized Debtor of the West 11th Land Property shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or purchase.

3.7.3      ~~6.7.3~~ Class 7.3 – 2892 Crescent Ave. Loan.

Umpqua Bank will have an Allowed Class 7.3 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees)~~the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about October 27, 2008 in the original principal amount of $2,000,000 (the "2892 Crescent Ave. Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Oregon commonly referred to as 2892 Crescent Avenue ("2892 Crescent Avenue"). Umpqua Bank's Class 7.3 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of 2892 Crescent Avenue at a price ~~in excess of~~for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, ~~or (b)~~(b) purchase 2892 Crescent Avenue at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, or (c) transfer title to 2892 Crescent Avenue to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount  for such property ~~including, without limitation,~~and the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven.  Provided that Reorganized Debtor effectuates a sale of 2892 Crescent Avenue within the time limits set forth in the immediately preceding sentence, two-thirds (2/3~~s~~) of any sale proceeds in excess of the sum of (a) Closing Costs, (b) the Arlie Debt Amount ~~and~~, (c) Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).  Any sale or purchase by Reorganized Debtor of 2892 Crescent Avenue shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or purchase.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

05437-001\DOCS_LA:~~230606.7~~231180.2

29

~~FIRST~~SECOND AMENDED PLAN OF REORGANIZATION
(~~JANUARY 10,~~FEBRUARY 14, 2011)

3.7.4         ~~6.7.4~~ Class 7.4 Woodburn and College Park Loan.

Umpqua Bank will have an Allowed Class 7.4 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees)~~the applicable Umpqua Bank Fees under that certain line of credit loan made by Umpqua Bank to Debtor on or about July 29, 1999 in the original principal amount of $600,000 (with 1/20/2006 Change in Terms Agreement increasing principal amount to $4,000,000) (the "Woodburn and College Park Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 85701 Scharen Road, Lane County, Northside of Cemetery Road near Lorane Highway, Lane County (the "College Park Property"), and Debtor's real property and improvements in Woodburn, Oregon commonly referred to as 2450 Country Club Road, Marion County (the "Woodburn Property"). ~~The Woodburn Property secures $931,750 of the outstanding amounts owing under the Woodburn and College Park Loan. The College Park Property secures the remaining amounts owing under the Woodburn and College Park Loan.~~ Umpqua Bank's Class 7.4 Claim shall be satisfied as follows.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

The Arlie Debt Amount for the Woodburn Property shall be $845,000 together with 25% of accrued and unpaid interest on the Woodburn and College Park Loan. Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Woodburn Property at a price for cash at closing in an amount in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, or (b)(b) purchase the Woodburn Property at a price for cash at closing in an amount in excess of the Arlie Debt Amount for such property, or (c) transfer title to the Woodburn Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount relating to the Woodburn Property including, without limitation, theand the applicable Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the Woodburn Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3) of any sale proceeds in excess of the Arlie Debt Amount and, Property Taxes, Closing Costs and applicable Umpqua Bank Fees will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan)7.2 or a Class 7.3 Claim. Any sale or purchase by Reorganized Debtor of the Woodburn Property shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount has been or will be paid upon such sale or purchase.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

~~Subject to the reduction of debt owing against the College Park Property from the sale of approximately 315 acres of the College Park Property approved by the Bankruptcy Court in the Bankruptcy Case (the "College Park Sale") and the reduction of debt owing against the Woodburn Property from the disposition of the Woodburn Property described above, as~~As of the Effective Date, the remainder of the Woodburn and College Park Loan shall ~~bear~~have a non-default simple ~~interest at a~~fixed interest rate of 4.5% per annum and will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the Woodburn and College Park Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount for the College Park Property plus all past due real estate taxes (less any previously paid real estate taxes included therein) (the "College Park Pay Down").  The ~~accrued non-default interest and reasonable fees and costs owing as of the Effective Date on the College Park Loan will be due and payable upon a sale or refinancing of the College Park Land.~~College Park Pay Down will not include application from the sale of approximately 315 acres of the College Park Property approved by the Bankruptcy Court in the Bankruptcy Case or from the disposition of the Woodburn Property described above.  The Arlie Debt Amount for the College Park Property shall be the balance of the Woodburn and College Park Loan including accrued and unpaid interest (at the non-default rate).

3.7.5 ~~6.7.5~~ Class 7.5 – Roseburg Loan #1.

Umpqua Bank will have an Allowed Class 7.5 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees)~~the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about January 16, 2004 in the original principal amount of $2,630,000 (the "Roseburg Loan #1"), which loan is secured by, among other things, Debtor's real property and improvements in Roseburg, Oregon commonly referred to as 1156, 1176 and 1200 N.W. Garden Valley Boulevard (the "Roseburg Property").  Umpqua Bank's Class 7.5 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use good funds in the cash collateral bank account established and maintained by Debtor with respect to Umpqua Bank pursuant to the Bankruptcy Court's cash collateral order (the "Umpqua Cash Collateral Account") to bring current

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Roseburg Loan #1 by making all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) and any past due Property Taxes on the Roseburg #1 Property. Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to Roseburg Loan #1 before the Effective Date shall be deemed waived or released. Thereafter, the non-default interest will accrue on the Roseburg Loan #1 at a simple fixed rate of 4.5% per annum. Commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Roseburg Loan #1 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

In accordance with paragraph 4.7.18 of this Plan, Reorganized Debtor may use up to $457,000 of good funds in the Umpqua Cash Collateral Account ~~funds~~ for the reasonable and necessary costs of removing the fascia from the Hollywood Video building, erecting a demising wall and otherwise provide the tenant improvements required by the prospective tenants for such building, provided that (a) Umpqua Bank shall have a security interest in such improvements, (b) Debtor shall provide Umpqua Bank copies of invoices and documents pertaining to the work performed when the draw for such work is made, and (c) Debtor shall assure that no liens are asserted against the property on account of the work performed and, upon request by Umpqua Bank, will obtain lien releases as payments are made.

3.7.6 ~~6.7.6~~ Class 7.6 – Roseburg Loan #2

Umpqua Bank will have an Allowed Class 7.6 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees)~~ the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about April 1, 2008 in the original principal amount of $1,720,000 (the "Roseburg Loan #2"), which loan is secured by, among other things, the Roseburg Property. Umpqua Bank's Class 7.6 Claim shall be satisfied as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On the Effective Date, Reorganized Debtor will use good funds in the Umpqua Cash Collateral Account to make all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Roseburg Loan #2.  Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to Roseburg Loan #2 before the Effective Date shall be deemed waived or released.  Thereafter, interest will accrue on the Roseburg Loan #2 at a simple fixed rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on Roseburg Loan #2 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

3.7.7    6.7.7 Class 7.7 – Oil Can Henry's Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees)applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about July 31, 2008 in the original principal amount of $668,000 (the "Oil Can Henry's Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3804 W. 11th Avenue (the "Oil Can Henry's Property").  Umpqua Bank's Class 7.7 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use good funds in the Umpqua Cash Collateral Account to bring current the Oil Can Henry's Loan by making all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Oil Can Henry's Loan and any past due Property Taxes on the Oil Can Henry Property.  Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to the Oil Can Henry's Loan before the Effective Date shall be deemed waived or released.  Thereafter, interest will accrue on the Oil Can Henry's Loan at thea simple fixed rate of 4.5% per annum.  Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Oil Can Henry's Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

### 3.7.8  6.7.8 Class 7.8 – My Coffee Loan.

Umpqua Bank will have an Allowed Class 7.8 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) applicable Umpqua Bank Fess under that certain loan made by Umpqua Bank to Debtor on or about August 22, 2005 in the original principal amount of $661,600 (the "My Coffee Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3808 W. 11th Avenue (the "My Coffee Property"). Umpqua Bank's Class 7.8 Claim shall be satisfied as follows.

Interest will accrue on the principal amount owing As of the Effective Date, the non-default interest rate on the My Coffee Loan will accrue at a simple fixed rate of 4.5% per annum. Commencing on the first (but no later than the tenth) day of the first month following the Effective Date and continuing on the first (but no later than the tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the My Coffee Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date. Additionally, the non-default interest that accrued on the My Coffee Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

### 3.7.9  6.7.9 Class 7.9 – Building B Loan.

Umpqua Bank will have an Allowed Class 7.9 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about August 10, 2006 in the original principal amount of $8,265,000 (as subsequently increased to $10,150,000) (the "Building B Loan"), which loan is secured by, among other things, Debtor's real

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

property and improvements in Eugene, Oregon commonly referred to as Lot 6 Crescent Village, Phase I, Lane County ("Building B"). Umpqua Bank's Class 7.9 Claim shall be satisfied as follows.

~~Interest will accrue on the principal amount owing~~As of the Effective Date, the non-default interest rate on the Building B Loan will accrue at a simple fixed rate of 4.5% per annum. Commencing on the ~~first (but no later than the~~ tenth) day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the Building B Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date. Additionally, the non-default interest that accrued on the Building B Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

3.7.10    ~~6.7.10~~ Class 7.10 – Grumman Hangar Loan.

Umpqua Bank will have an Allowed Class 7.10 Claim in the amount of all principal, accrued non-default interest and ~~reasonable fees and costs (excluding any late payment fees)~~applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about March 27, 2007 in the original principal amount of $245,000 (the "Grumman Hangar Loan "), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 28737 Grumman Drive (the "Grumman Hangar Property"). Umpqua Bank's Class 7.10 Claim shall be satisfied as follows.

As of the Effective Date, the non-default interest on the Grumman Hangar Loan will accrue at a simple fixed rate of 4.5% per annum~~and will be paid as follows~~. Commencing on the ~~first (but no later than the~~ tenth) day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth) day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the Grumman Hangar Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date. Additionally, the non-default interest that accrued on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Grumman Hangar Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

3.7.11        6.7.11 Class 7.11 – 3032 Kinney Loop Loan.

Umpqua Bank will have an Allowed Class 7.11 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about December 23, 2008 in the original principal amount of $184,000 (the "3032 Kinney Loop Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3032 Kinney Loop ("3032 Kinney Loop").  Umpqua Bank's Class 7.11 Claim shall be satisfied as follows.

As of the Effective Date, the non-default rate of interest on the 3032 Kinney Loop Loan will bear be fixed at the simple interest at the rate of 4.5% per annum and.  The Allowed Class 7.11 Claim will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the 3032 Kinney Loop Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes for such property (less any previously paid real estate taxes included therein) (the "Kinney Loop Pay Down").

3.7.12        6.7.12 Class 7.12 - Crescent Village Land Loan.

Umpqua Bank will have an Allowed Class 7.12 Claim in the amount of all principal, accrued non-default interest and reasonable fees and costs (excluding any late payment fees) applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about March 15, 2002 in the original principal amount of $5,286,000 (the "Crescent Village Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as Lots 1 and 2 Cone Plat, Lane County (the "Crescent Village Land Property").  Umpqua Bank's Class 7.12 Claim shall be satisfied as follows.

As of the Effective Date, the non-default rate of interest on the Crescent Village Land Loan will bear be fixed at the simple interest at the rate of 4.5% per annum and.  The Allowed Class 7.12 Claim will be payable in full on the Maturity Date, provided that Reorganized Debtor shall

make a mandatory pay down of the Crescent Village Land Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes for such property (less any previously paid real estate taxes included therein) (the "Crescent Village Pay Down").

3.7.13     6.7.13 Refinance of Properties Encumbered by Umpqua Bank's Liens.

Provided that no Event of Default has occurred that is not timely cured, Reorganized Debtor may refinance any of the satisfy an Arlie Debt Amount through a refinancing of the applicable property of the Debtor that is the Collateral of Umpqua Bank at any time after the Reorganized Debtor has made the Kinney Loop Pay Down, the Crescent Village Pay Down and the College Park Pay Down, provided that Umpqua Bank receives the Arlie Debt Amount and Umpqua Bank Fees associated with such property plus the applicable Umpqua Proceeds Share (as defined below). To the extent that such refinancing is in excess of the sum of (a) the Arlie Debt Amount, (b) Property Taxes, (c) Closing Costs, and (d) applicable Umpqua Bank Fees, the net excess financing proceeds shall be distributed in accordance with paragraph 4.7.14 of this Plan.

3.7.14     6.7.14 Sale of Collateral Free and Clear of Umpqua Bank's Liens and Application of Excess Proceeds.

Notwithstanding that each property of Debtor that is Collateral of Umpqua Bank serves as Collateral for all of Umpqua Bank's Class 7 Claims, and provided no Event of Default has occurred that is not timely cured, Reorganized Debtor may from time to time sell a property for cash at closing free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and Umpqua Bank Fees associated with such property has been paid or will be paid upon such sale. In addition to To the extent that the sale proceeds exceed the sum of (a) the Arlie Debt Amount, a share of any sale proceeds in excess of the Arlie Debt Amount(b) Property Taxes, (c) Closing Costs, and (d) the applicable Umpqua Bank Fees, such excess proceeds (the "UmpquaArlie Excess Proceeds Share") will be retained for Umpqua Bank's accountdivided as follows. : For any sale by Reorganized Debtor that occurs within one year of the Effective Date, or within 2 months of a letter of intent obtained within such one year period, two-thirds (2/3⅓) of any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

~~sale proceeds in excess of~~ the Arlie ~~Debt Amount~~Excess Proceeds will be retained by Reorganized Debtor for its own account, and one-third (1/3) of ~~such excess sale proceeds~~the Arlie Excess Proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).  For any sale by Reorganized Debtor that occurs after such date, one-third (1/3) of any ~~sale proceeds in excess of the~~ Arlie ~~Debt Amount~~Excess Proceeds will be retained by Reorganized Debtor for its own account, and two-thirds (2/3) of ~~such excess sale proceeds~~any Arlie Excess Proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan).  Notwithstanding the foregoing, upon tender of the Arlie Debt Amount and the Umpqua Bank Fees associated with the 3032 Kinney Loop Property, Umpqua Bank will consent to the release of its liens and security interests against the 3032 Kinney Loop Property.

Umpqua Bank shall provide partial releases of its liens ~~, claims and encumbrances~~ related to ~~specific pieces of property of Debtor~~a portion of each parcel that serves as Collateral for ~~all of~~ Umpqua Bank's Class 7 Claims, provided that 110% of the Arlie Debt Amount and the Umpqua Bank Fees associated with such specific ~~piece~~portion of ~~property~~parcel (on a pro rata basis determined in light of the comparative value of the ~~property~~portion of parcel to be sold with the value of the remaining portion of the parcel not being sold) has been paid or will be paid to Umpqua Bank upon such sale.

3.7.15    ~~6.7.15~~ Payment of Umpqua Bank Fees.

~~Upon~~Unless otherwise provided by the Plan, upon the sale or refinance of any property of the Debtor that is Collateral of Umpqua Bank, Reorganized Debtor shall pay a ~~proportion~~proportionate share of the Umpqua Bank Fees on a pro rata basis so that the ratio of (a) the Umpqua Bank Fees being paid, to (b) the aggregate Umpqua Bank Fees, is the same ratio as (x) the Arlie Debt Amount for the property being sold or refinanced, to (y) the aggregate Arlie Debt Amount.

3.7.16    ~~6.7.16~~ Property Taxes.

Other than Property Taxes relating to the Roseburg Property and the Oil Can Henry's Property (which taxes shall remain current under the Plan), Property Taxes on any property owned by the Debtor that is Collateral of Umpqua Bank shall at no time be no more than two years past due.

3.7.17    6.7.17 ~~Waiver~~Settlement of Claims by and among Debtor ~~and~~, Reorganized Debtor and Umpqua Bank.

~~The~~Upon confirmation of this Plan and effective as of the Effective Date, (a) the Arlie Debt Amount and the Umpqua Bank Fees shall not be subject to reduction by defense, counterclaim, or claim of recoupment by Debtor or Reorganized Debtor. ~~On the Effective Date,~~, (b) Debtor and Reorganized Debtor will be deemed to have waived any and all claims against Umpqua Bank and its present directors, officers~~, and~~ ~~managers for actions (or in-actions)~~employees for any and all actions (or in-actions) that occurred before the Effective Date, (c) all guarantees that guaranty the obligations of Debtor to Umpqua Bank shall continue to guaranty the obligations of Reorganized Debtor to Umpqua Bank, as such obligations have been modified by this Plan, and (d) subject to the provisions of paragraph 4.7 hereof, Umpqua Bank will not make a demand on the Debtor and the guarantors for defaults that occurred before the Effective Date.

3.7.18    6.7.18 Treatment of Umpqua Bank's Cash Collateral Account.

~~Provided~~With respect to the College Park Sale ~~is consummated prior to the Effective Date~~, the balance of good funds in the Umpqua Cash Collateral Account shall be allocated as follows (and in the following order):  (a) payment of past due Property Taxes on the Oil Can Henry's Property and the Roseburg Property, (b) payments of all regularly scheduled but then unpaid payments of non-default interest on Roseburg Loan #1 and #2 and on the Oil Can Henry's Loan, (c) $457,000 to be used for tenant improvements for Roseburg as such improvements are made, provided that (i) Umpqua Bank shall have a security interest in such Roseburg improvements, (ii) Debtor shall provide Umpqua Bank copies of invoices and documents pertaining to the work performed when the draw for such work is made, and (iii) Debtor shall assure that no liens are asserted against the property on account of the work performed and, upon request by Umpqua Bank,

will obtain lien releases as payments are made, (d) $211,374 to be reserved by Reorganized Debtor for payment of Debtor's income taxes associated with the College Park Sale, (e) $315,000 to be paid to Umpqua Bank to be applied to the principle balance of the obligation associated with the College Park Property, (f) $150,000 to be used by Reorganized Debtor for any purpose without restriction, and (g) the remainder to be held in an account at Umpqua Bank, which will be subject to Umpqua Bank's security interest, to be used at Reorganized Debtor's discretion solely for debt service or taxes on property held by Reorganized Debtor that is the Collateral of Umpqua Bank and not subject to a sale or refinance agreement.

        3.7.19      6.7.19 Use of Rents Generated From Umpqua Properties.

Commencing on the Effective Date, Reorganized Debtor may utilize all rents generated from the properties securing the Umpqua Bank loans may be used by Reorganized Debtor for any purpose without restriction including, without limitation, for general overhead and general administrative expenses.

        6.7.20      Guarantees.

All guarantees that guaranty the obligations of Debtor to Umpqua Bank shall continue to guaranty the obligations of Reorganized Debtor to Umpqua Bank, as such obligations have been modified by this Plan.

        6.7.21      Additional Documents.

On the Effective Date, Reorganized Debtor will execute and deliver to Umpqua Bank such documents as Umpqua Bank reasonably requires to effectuate the terms of the Plan.

        3.8      6.8 Class 8 (Washington Federal Savings). Class 8 is impaired. The Class 8 Claim of Washington Federal Savings includes Claims for amounts owing under five separate loans, each of which will be separately classified and treated as hereinafter described.

        3.8.1      6.8.1 Class 8.1 –Lord Byron Loan.

On or about November 14, 2008, Washington Federal made a loan to Debtor in the original principal amount of $2,000,000 (the "Lord Byron Loan"). The Lord Byron Loan is secured by deeds of trust on the Debtor's real property and improvements in Eugene, Oregon commonly

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

referred to as 2909 Lord Byron Place, 2915 Lord Byron Place, 2931 Lord Byron Place, 2977 Lord Byron Place and 2993 Lord Byron Place (collectively, the "Lord Byron Collateral"). The Lord Byron Collateral Value is less than the amounts owing under the Lord Byron Loan.

Washington Federal will have Allowed Claims in the ~~aggregate~~ amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Washington Federal as of the Effective Date as allowed by the Lord Byron Loan documents (the "Washington Claim Amount"). Washington Federal shall have a Secured Class 8 ~~Claims~~Claim in the aggregate amount of the Lord Byron Collateral Value, and an Unsecured Claim in an amount representing the difference between Lord Byron Collateral Value and the Washington Claim Amount (the "Washington Federal Unsecured Claim").

The Washington Federal~~'s~~ Secured Class 8 Claim shall be satisfied by the delivery of five promissory notes to Washington Federal, ~~each in the amount of $300,000~~as follows: the 2909 Lord Byron Note in the principal amount of $279,600, the 2915 Lord Byron Note~~,~~ in the principal amount of $296,000, the 2931 Lord Byron Note~~,~~ in the principal amount of $327,950, the 2977 Lord Byron Note in the principal amount of $269,350, and the 2993 Lord Byron Note in the principal amount of $327,100 (individually, a "Lord Byron Note" and collectively, the "Lord Byron Notes"). Each Lord Byron Note will bear simple interest at a fixed rate of 4.5% per annum. Commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the first month following the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Lord Byron Notes. Commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the 37th month after the Effective Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the Lord Byron Notes have been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Lord Byron Notes based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

Each Lord Byron Note will be secured by a security interest in and lien upon its separate Lord Byron Property, pursuant to deeds of trust to be delivered to Washington Federal on

the Effective Date. Each such deed of trust will have the same priority that Washington Federal had in such Collateral as of the Petition Date. Reorganized Debtor will maintain the Lord Byron Collateral in good repair and insure the Lord Byron Collateral to its full usable value.

Washington Federal will release its liens, claims and security interests in any Lord Byron Property upon payment of all principal and accrued interest then owing on the Lord Byron Note applicable to such property. Each Lord Byron Note shall be assumable by a purchaser of the applicable Lore Byron Property, subject to reasonable approval by Washington Federal.

3.8.2    6.8.2 Treatment of Washington Federal's Cash Collateral Account.

On the Effective Date, amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Washington Federal pursuant to the Cash Collateral Order may be utilized by the Reorganized Debtor to pay any past due Property Taxes on the Collateral securing the Class 8 ~~Claims~~Claim. Any amounts remaining in the cash collateral bank account after the payment of such taxes may be used by Reorganized Debtor for any purpose without restriction including, without limitation, for general overhead and general administrative expenses.

3.8.3    6.8.3 Treatment of the Washington Federal Unsecured Claim.

The Washington Federal Unsecured Claim shall bear simple interest at the fixed rate of 3.5% per annum and shall be payable in full on the Maturity Date.

3.9    6.9 Class 9 (BLM Secured Creditors). Class 9 is impaired. Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors. The Class 9 Claims are secured by a deed of trust on Debtor's real property and improvements commonly referred to as 2890 Chad Drive, Eugene, Oregon (the "BLM Office Building").

Class 9.1 – Francis Cline.

Francis Cline will have an Allowed Class 9.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Cline as of the Effective Date under that certain loan made by Ms. Cline to Debtor on or about on or about November 4, 2008

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

in the original principal amount of $347,065 (the "Cline Loan"), which loan is secured by a deed of trust on BLM Office Building.  The Class 9.1 Claim shall be treated as follows.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the ~~BLM Secured Creditors~~Reorganized Debtor of not more than $10,000.  Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of all obligations owing under the Cline Loan. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested~~.  In such event, Ms. Cline will retain her security interest in and lien upon the BLM Office Building with the same priority and to the same extent such security had as of the Petition Date, and the Reorganized Debtor shall maintain the BLM office Building in good repair and insure the BLM Office Building to its full usable value pending a sale~~.

Class 9.2 – William Greenhoot.

William Greenhoot will have an Allowed Class 9.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Mr. Greenhoot as of the Effective Date under that certain loan made by Mr. Greenhoot to Debtor on or about on or about November 4, 2008 in the original principal amount of $347,065 (the "Greenhoot Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the ~~BLM Secured Creditors~~Reorganized Debtor of not more than $10,000.  Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Greenhoot Loan and the Class 9.2 Claim.  Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

### Class 9.3 – McKillop II Limited Partnership.

The McKillop II Limited Partnership ("McKillop") will have an Allowed Class 9.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to the Partnership as of the Effective Date under those certain loans made by Herbert McKillop to Debtor on or about on or about November 4, 2008 in the original principal amounts of $120,000 and $1,453,482 (collectively, the "McKillop Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured CreditorsReorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the McKillop Loan and the Class 9.3 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

### Class 9.4 – Karen Merwin.

Karen Merwin will have an Allowed Class 9.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Merwin as of the Effective Date under that certain loan made by Ms. Merwin to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Merwin Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured CreditorsReorganized Debtor of not more than $10,000. Thereafter, Reorganized

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Merwin Loan and the Class 9.4 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

Class 9.5 – Alice Smith.

Alice Smith will have an Allowed Class 9.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Smith as of the Effective Date under that certain loan made by Ms. Smith to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Smith Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured CreditorsReorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Smith Loan and the Class 9.5 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 9.6 – Linda Trickey.

Linda Trickey will have an Allowed Class 9.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Trickey as of the Effective Date under that certain loan made by Ms. Trickey to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Trickey Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the BLM Secured CreditorsReorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Trickey Loan and the Class 9.6 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

3.10 6.10 Class 10 (Property Tax Lien Claims). Class 10 is impaired. Class 10 Claimants will retain their security interest with the same priority to which it is entitled by law. Each Class 10 Claimant shall be paid the full amount of its Allowed Class 10 Claim in full in accordance with 11 U.S.C. §1129(a)(9)(d), but no later than the earlier of (i) 5 years after the Petition Date, or (ii) upon a sale of the property securing the Claim.

3.11 6.11 Class 11 (Small Unsecured Claims). Class 11 is impaired. Each holder of an Allowed Small Unsecured Claim will be paid in Cash the full amount of their Small Unsecured Claim in Cash, without interest, within 60 days following the Effective Date.

3.12 6.12 Class 12 (General Unsecured Claims). Class 12 is impaired. Class 12 General Unsecured Claims shall accrue interest from the Petition Date until such Claims are paid in full at a uniform annual interest rate of 3.5% per annum. No pre-petition or post-petition default interest or post-petition contract rate of interest shall be paid on any General Unsecured Claim.

Reorganized Debtor shall make periodic payments to holders of Class 12 Claims as and when funds are available. At the time Reorganized Debtor makes any principal payment on a General Unsecured Claim, Reorganized Debtor shall also pay all accrued but unpaid interest then owing on such General Unsecured Claim. Within 3 years after the Effective Date, Reorganized Debtor shall have paid at least 50% of the principal amount of each General Unsecured Claim plus accrued interest. All Class 12 Claims shall be paid, in full with interest, no later than the Maturity Date.

      3.13   6.13 Class 13 (Interests). Class 13 is unimpaired. Existing Interests in Debtor will be preserved.

## ARTICLE IV ~~ARTICLE VII~~

## PROVISIONS GOVERNING DISTRIBUTIONS

      4.1   7.1 Distributions by Debtor. The Reorganized Debtor shall administer Claims and make distributions in respect of Allowed Claims. Distributions to be made by the Reorganized Debtor may be made by any person designated or retained by the Reorganized Debtor to serve as disbursing agent without the need for any further order of the Bankruptcy Court.

      4.2   7.2 Disputed Claims; Objections to Claims. Only Claims that are Allowed shall be entitled to distributions under the Plan. No Cash or other property shall be distributed under the Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such Disputed Claim becomes an Allowed Claim. Debtor reserves the right to contest and object to any Claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtor currently believes is validly due and owing. All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

      4.3   7.3 Subsequent Allowance of Disputed Claims. The holder of a Disputed Claim that becomes Allowed in full or in part subsequent to the Effective Date shall receive Cash distributions (including any make-up distributions) on the next applicable distribution date following the allowance of such Disputed Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.4 ~~7.4~~ Unclaimed Distributions.  Any entity which fails to claim any Cash distribution within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the Reorganized Debtor shall be authorized to cancel any distribution that is not timely claimed.  Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Reorganized Debtor, free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditors shall have no claim whatsoever against the Reorganized Debtor or any holder of an Allowed Claim to whom distributions are made by the Reorganized Debtor.

## ARTICLE V~~ARTICLE VIII~~

## MEANS FOR EXECUTION OF PLAN

5.1 ~~8.1~~ Continued Business Operations  From and after the Effective Date, the Reorganized Debtor shall continue to engage in business with the goal of maximizing the value of its assets and, subject to the provisions of the Plan governing distributions and the retention of jurisdiction provisions hereof, the Reorganized Debtor shall continue such business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  The Reorganized Debtor shall be authorized, without limitation, to use and dispose of its assets, to insure its assets, to borrow money, to employ and compensate agents, to reconcile and object to Claims, and to make distributions to Creditors in accordance with the Plan.

5.2 ~~8.2~~ Siuslaw Loan  ~~On the Effective Date~~ Siuslaw Bank ~~will~~has agreed to make a loan to the Reorganized Debtor on the Effective Date in the amount of $615,000 (the "New Siuslaw Loan").  The New Siuslaw Loan shall bear simple interest at a fixed per annum rate of 5.5% and ~~shall be secured by~~, as collateral for the New Siuslaw Loan, Reorganized Debtor shall grant Siuslaw Bank liens upon and security interests ~~and liens upon~~in the Florence Medical Building (described in Article 4.5.6 hereof) with the same priority as the liens and security interests held by Siuslaw Bank securing the Florence Medical Building Note.  On the Funding Date, Reorganized Debtor shall establish a separate cash reserve account at Siuslaw Bank into which will be deposited

funds sufficient to satisfy the first six (6) months of payments on account of Class 5 Claims under the Plan. Reorganized Debtor shall make interest only payments on the New Siuslaw Loan commencing on ~~the first (but no later than~~ the tenth~~)~~ day of the first month following the date Reorganized Debtor obtains the New Siuslaw Loan (the "Funding Date") and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter through and including the 36th month following the Funding Date. Commencing on the ~~first (but no later than the~~ tenth~~)~~ day of the 37th month after the Funding Date and continuing on the ~~first (but no later than the~~ tenth~~)~~ day of each month thereafter until the New Siuslaw Loan has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the New Siuslaw Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Other than the establishment of the cash reserve account described above, the Reorganized Debtor may use the proceeds of the New Siuslaw Loan for any purpose without restriction.

       5.3      ~~8.3~~ Operating Revenues. Reorganized Debtor will fund payments to its Creditors from proceeds of asset sales implemented during the Bankruptcy Cases, the net operating income generated from Reorganized Debtor's continued business operations, and from the future sale or refinancing of assets of Reorganized Debtor from time to time. A core aspect of Debtor's business is marketing and selling real property acquired by Debtor from time to time. Reorganized Debtor will continue to market and sell real its real property assets in the ordinary course of business to fund continued business operations and to fund payments required under this Plan. Such sales may occur without further order of the Bankruptcy Court.

       5.4      ~~8.4~~ Sales or Refinancing of Real Property Collateral. Without limiting Article ~~6.2~~6.3 above, and except as set forth with respect to a particular Creditor under the Plan, Reorganized Debtor may at any time sell or refinance Collateral that secures a Secured Claim free and clear of any lien of the Creditor in such Collateral provided that on or before the closing of the sale of such Collateral Reorganized Debtor pays in full the Allowed Secured Claim of such Creditor that is secured by the Collateral. Any excess net proceeds from the sale or refinancing of such Collateral shall be paid to Reorganized Debtor (or as otherwise directed by Reorganized Debtor) and

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

may be used by Reorganized Debtor to fund Reorganized Debtor's continued business operations and to fund payments required under this Plan. Such sales or refinancing may occur without further order of the Bankruptcy Court.

5.5    8.5 Marketing and Sales of Non-Core Assets.  In addition to marketing and selling its real property assets in the ordinary course of its business, Reorganized Debtor may market and sell its non-core assets on an accelerated basis as is necessary or appropriate to ensure that Reorganized Debtor will have sufficient funds to make all payments required of Debtor under this Plan.  Without limiting the preceding, if at any time Reorganized Debtor determines in its discretion that it may not have sufficient funds to make any upcoming payment required under this Plan, Reorganized Debtor will before such payment is due sell at public auction one or more of Reorganized Debtor's Non-core assets to raise the funds necessary to make the required Plan payment.  Such auctions and sales may occur without further order of the Bankruptcy Court.

5.6    8.6 Setoffs.  Reorganized Debtor may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever which Debtor or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim Debtor or Reorganized Debtor may have against such holder.

5.7    8.7 Corporate Action.  Upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the execution, delivery, and performance of all documents and agreements relating to the Plan, and any of the foregoing.  On the Effective Date, the appropriate officers of Reorganized Debtor are authorized and directed to execute and deliver any and all agreements, documents, and instruments contemplated by the Plan and/or the Disclosure Statement in the name of and on behalf of Reorganized Debtor.

5.8    8.8 Saturday, Sunday, or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

5.9 ~~8.9~~ Deposits. All utilities holding a utility deposit obtained as a result of this Bankruptcy Case shall immediately after the Effective Date return or refund such utility deposit to Reorganized Debtor. At the sole option of Reorganized Debtor, Reorganized Debtor may apply any such utility deposit that has not been refunded to Reorganized Debtor in satisfaction of any payments due or to become due from Reorganized Debtor to a utility holding such a utility deposit. All escrow deposits made by the Debtor for prospective ~~purchasers of property of the Debtor that were forfeited pursuant to contract or applicable law (the "Forfeited~~ purchases of property which did not close prior to the Effective Date (the "Arlie Escrow Deposits") and which have not ~~yet~~ been returned to the Debtor as of the Effective Date, shall be turned over to Reorganized Debtor immediately after the Effective Date for its own account.

5.10 ~~8.10~~ Event of Default; Remedy. Any ~~material~~ failure by Reorganized Debtor to perform any term of this Plan, which failure continues for a period of ten Business Days following receipt by Reorganized Debtor of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default. Upon the occurrence of an Event of Default, both the holder of an Allowed Claim to whom performance is due and the Reorganized Debtor shall each have all rights and remedies granted by law, this Plan or any agreement between the holder of such Claim and Debtor or Reorganized Debtor. An Event of Default with respect to one Creditor shall not be an Event of Default with respect to any other Creditor. Notwithstanding the foregoing, in the event of a failure to perform any term of this Plan with respect to a Class 11 or Class 12 Claim, the Unsecured Creditors' Committee may provide the Reorganized Debtor with written notice of an Event of Default on behalf of the holder of such Unsecured Claim.

5.11 ~~8.11~~ Continuation of Unsecured Creditors' Committee. To the extent that one or more members of the Unsecured Creditors' Committee agrees to continue to serve on the Unsecured Creditors' Committee following the Effective Date, the Unsecured Creditors' Committee will continue in existence following the Effective Date for so long as any such members continue to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

agree to serve on such Unsecured Creditors' Committee.  For so long as such Unsecured Creditors' Committee remains in existence, Reorganized Debtor will provide to the Unsecured Creditors' Committee a quarterly compliance certificate executed by the Chief Financial Officer of Reorganized Debtor that certifies that either (i) the Reorganized Debtor is in full compliance with the Plan, or (ii) the Reorganized Debtor is not in full compliance with the Plan.  The first such compliance certificate shall be delivered to the Unsecured Creditors' Committee 45 days after the end of the third month following the Effective Date and each quarterly compliance certificate shall be delivered 45 days after the end of each subsequent three month period, unless another quarterly schedule is agreed to by and between the Reorganized Debtor and the Creditors' Committee.  If the Reorganized Debtor is not in full compliance with the Plan, the Reorganized Debtor shall state what steps are being taken to remedy or cure any non-compliance with the Plan.  In addition, provided that the members of the continuing Unsecured Creditors' Committee have executed in favor of Reorganized Debtor a confidentiality and non-disclosure agreement in form and substance satisfactory to Reorganized Debtor in its reasonable discretion, Reorganized Debtor shall provide annual reviewed financial statements to the Unsecured Creditors' Committee.  Upon payment in full of all Allowed General Unsecured Claims, the Unsecured Creditors' Committee shall automatically cease to exist.  During the existence of the Unsecured Creditors' Committee, the Unsecured Creditors' Committee may retain legal or other advisors to assist the Unsecured Creditors' Committee, and Reorganized Debtor will pay the fees and expenses of such advisors, not to exceed $10,000 in the aggregate in any 12 month period., in the ordinary course of business, provided that any dispute concerning such fees and expenses shall be resolved by the Bankruptcy Court or other court of competent jurisdiction.

## ARTICLE VIARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1      9.1 Assumption and Rejection.  Except as may otherwise be provided in the Plan Supplement, all executory contracts and unexpired leases of Debtor which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by Reorganized Debtor on the Effective Date.  The Confirmation Order shall constitute an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

order authorizing assumption of all executory contracts and unexpired leases except for those otherwise specifically rejected or otherwise provided for in the Plan Supplement or subject to other Court Order or pending motion.  Reorganized Debtor shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any monetary defaults for executory contracts and unexpired leases being assumed and shall perform its obligations under such assumed executory contracts and unexpired leases from and after the Effective Date in the ordinary course of business.

6.2        9.2 Assignment.  To the extent necessary, all assumed executory contracts and unexpired leases shall be deemed assigned to Reorganized Debtor as of the Effective Date.  The Confirmation Order shall constitute an order authorizing such assignment of assumed executory contracts and unexpired leases, and no further assignment documentation shall be necessary to effectuate such assignment.

6.3        9.3 Rejection Claims.  Rejection Claims must be Filed no later than 30 days after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the entry of the Confirmation Order, whichever is sooner.  Any such Rejection Claim not Filed within such time shall be forever barred from asserting such Claim against Debtor, Reorganized Debtor, its property, estates, and any guarantors of such obligations.  Each Rejection Claim resulting from such rejection shall constitute a General Unsecured Claim or a Small Unsecured Claim, as applicable. Reorganized Debtor, its property, estates, and any guarantors of such obligations.  Each Rejection Claim resulting from such rejection shall constitute a General Unsecured Claim or a Small Unsecured Claim, as applicable.

6.4        9.4 Compensation and Benefit Programs.  Except to the extent restricted by the Plan, all employee compensation and benefit plans, policies and programs of Debtor applicable generally to its employees as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, stock incentive plans, and life, accidental death and dismemberment insurance plans, shall continue in full force and effect, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate any of the foregoing arrangements.

## ARTICLE VII~~ARTICLE X~~

## EFFECT OF CONFIRMATION

7.1    ~~10.1~~ Binding Effect.  The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in the Debtor and the estate assets, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the commencement of the Bankruptcy Case.  The distributions made pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of the Allowed Claims on account of which such distributions are made.  Confirmation of the Plan shall bind and govern the acts of the Reorganized Debtor whether or not: (i) a proof of Claim or proof of Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or Interest has accepted the Plan.

7.2    ~~10.2~~ Discharge and Permanent Injunction  Except as otherwise set forth in the Plan, confirmation of the Plan shall discharge the Debtor from all Claims or other debts that arose at any time before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim has accepted the Plan.  As of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined, to the full extent provided under Sections 524(a) and 1141 of the Bankruptcy Code, from "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability" of the Debtor or the Reorganized Debtor, except as otherwise set forth in this Plan.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Debtor that was or could have been commenced before the entry of the Confirmation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Order, (b) the enforcement against Reorganized Debtor or its assets of a judgment obtained before the Petition Date, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon all or any part of the assets. Nothing contained in the foregoing discharge shall, to the full extent provided under Section 524(e) of the Bankruptcy Code, affect the liability of any other entity on, or the property of any other entity for, any debt of the Debtor that is discharged under the Plan.

7.3    10.3 Limitation of Liability. The Debtor and the Reorganized Debtor and each of their respective Agents shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

7.4    10.4 Exculpation. The Debtor, the Reorganized Debtor and each of their respective Agents, shall not be liable to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with the Bankruptcy Case or the negotiation, formulation, development, proposal, disclosure, confirmation or implementation of the Plan and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan, provided, however, that the foregoing provisions shall have no affect on the Tonkon Claims or the liabilities of any person that resulted from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted negligence, breach of fiduciary duty or willful misconduct.

**ARTICLE VIII**ARTICLE XI

**RETENTION OF JURISDICTION**

8.1    11.1 Jurisdiction of the Bankruptcy Court. Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code:

(a)    to resolve controversies and disputes regarding any Avoidance Action,

(b)    to classify the Claim or Interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(c) to determine requests for payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed in this Bankruptcy Case,

(d) to avoid transfers or obligations to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(e) to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(f) to resolve controversies and disputes regarding the interpretation of this Plan,

(g) to implement the provisions of this Plan and enter orders in aid of confirmation,

(h) to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Bankruptcy Case, and

(i) to enter a final decree closing this Bankruptcy Case.

8.2 ~~11.2~~ Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in, or related to this Bankruptcy Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE IX~~ARTICLE XII~~

## ADMINISTRATIVE PROVISIONS

9.1 ~~12.1~~ Modification or Withdrawal of the Plan. Debtor may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time that the Bankruptcy Court has signed the Confirmation Order. After such time, and prior to the substantial consummation of the Plan, Debtor may, so long as the treatment of holders of Claims and Interests under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to

carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

9.2    ~~12.2~~ Revocation or Withdrawal of Plan.  Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtor or any other Entity or to prejudice in any manner the rights of Debtor or any Entity in any further proceeding involving Debtor.

9.3    ~~12.3~~ Modification of Payment Terms.  The Debtor may modify the treatment of any Allowed Claim or Interest in any manner adverse only to the holder of such Claim or Interest at any time after the Effective Date upon the prior written consent of the person whose Allowed Claim or Interest treatment is being adversely affected.

9.4    ~~12.4~~ Nonconsensual Confirmation.  Debtor shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are met.

9.5    ~~12.5~~ Compromise of Controversies.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of Debtor.

9.6    ~~12.6~~ Final Decree.  At any time following the Effective Date, the Reorganized Debtor shall be authorized to file a motion for the entry of a final decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARTICLE X~~ARTICLE XIII~~

## CONDITIONS PRECEDENT TO CONFIRMATION

## AND CONSUMMATION OF THE PLAN

10.1    ~~13.1~~ Conditions to Confirmation.  The following are conditions precedent to the confirmation of this Plan:

10.1.1    ~~13.1.1~~ The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtor; ~~and~~

10.1.2    ~~13.1.2~~ The Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor; and

10.1.3    A written settlement agreement shall have been executed by and among the Debtor, the guarantors of the Debtor's obligations to Umpqua Bank (the "Guarantors") and Umpqua Bank containing the following release terms and agreements not to make a demand, all of which shall be effective as of the Effective Dale: (a) a waiver and release of all claims against Umpqua Bank and its officers and employees by Debtor and the Guarantors; (b) an acknowledgement by the Debtor and the Guarantors that the obligations to Umpqua Bank (as revised by the Plan) are without defense and counterclaim and that the guaranties are fully enforceable; and (c) an agreement by Umpqua Bank that it will not make a demand on the Debtor or the Guarantors for defaults that occurred before the Effective Date.

10.2    ~~13.2~~ Conditions to Effective Date.  The following are conditions precedent to the occurrence of the Effective Date:

10.2.1    ~~13.2.1~~ The Confirmation Date shall have occurred;

10.2.2    ~~13.2.2~~ The Confirmation Order shall have become a Final Order;

10.2.3    13.2.3 No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, of made, remains pending;

10.2.4    13.2.4 The Debtor shall have determined that it has sufficient Cash reserves necessary to make all payments required to be made on the Effective Date.

10.3    13.3 Waiver of Conditions.  Other than paragraph 11.1.3, the Conditions to Confirmation and the Effective Date may be waived, in whole or in part, by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

## ARTICLE XIARTICLE XIV

## MISCELLANEOUS PROVISIONS

11.1    14.1 Revesting.  Except as otherwise expressly provided herein, on the Effective Date, all property and assets of the estate of Debtor including, without limitation, all forfeited escrow depositsArlie Escrow Deposits not yet returned to Debtor, shall revest in Reorganized Debtor, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors arising on or before the Effective Date, and Reorganized Debtor may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

11.2    14.2 Rights of Action.  Except as otherwise expressly provided herein, any claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination including, without limitation, the Tonkon Claims, claims under Section 550(a) of the bankruptcyBankruptcy Code or any of the sections referenced therein (including, without limitation, any and all Avoidance Actions) accruing to Debtor shall remain assets of Reorganized Debtor.  Reorganized Debtor may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for its benefit.

11.3    14.3 Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall govern

the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

11.4    14.4 Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtor and Reorganized Debtor shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Reorganized Debtor may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable Reorganized Debtor to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  Pursuant to Section 346(f) of the Bankruptcy Code, the Reorganized shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.

11.5    14.5 Time.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

11.6    14.6 Section 1146(c) Exemption.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real property of Debtor or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, including

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

without limitation the sale of any real property by Debtor or Reorganization Debtor (in Hawaii, Oregon or otherwise) pursuant to and in performance of Reorganized Debtors obligations under this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in which any instrument, including any deed conveying any of Reorganized Debtor's interest in any of its real property, hereunder is to be recorded shall, be ordered and directed to accept such instrument without requiring the payment of any conveyance fee, documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax or fee.

11.7  14.7 Severability.  In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.  To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Debtor, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

11.8  14.8 Successors and Assigns.  The provisions of the Plan shall bind Debtor, Reorganized Debtor and all holders of Claims and Interests, and their respective successors, heirs and assigns.

11.9  14.9 Notices to Claim and Interest Holders.  Notices to Persons holding a Claim or Interest will be sent to the addresses set forth in such Person's proof of Claim or Interest or, if none was filed, at the address set forth in the Schedules.

11.10  14.10 Post Effective-Date Notices.  Following the Effective Date, notices will only be served on the Reorganized Debtor, the Office of the United States Trustee, the Unsecured Creditors' Committee and those persons who file with the Court and serve upon the Reorganized Debtor a request, which includes such person's name, contact person, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters.  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and

other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request with the Bankruptcy Court.

11.11 ~~14.11~~ Retiree Benefits.  On or after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code, maintained or established by Debtor prior to the Effective Date, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate the foregoing arrangements.

11.12 ~~14.12~~ Provisions Enforceable.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan is valid and enforceable in accordance with its terms.

11.13 ~~14.13~~ Recordable Order.  The Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

11.14 ~~14.14~~ Plan Controls.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

11.15 ~~14.15~~ Delivery of Promissory Notes.  To the extent that this Plan provides for Reorganized Debtor to deliver a promissory note to a Secured Creditor in connection with an Allowed Secured Claim, except as otherwise specifically provided in this Plan or in any note or document delivered in connection with this Plan, this Plan and any note or other document delivered in connection herewith shall replace and supersede all pre-petition notes, loan agreements, trust deeds, security documents or other documents executed by Debtor in connection with the obligations giving rise to the Allowed Claim.  The Reorganized Debtor shall provide the Unsecured Creditors' Committee with copies of any such promissory notes or other security documents executed pursuant to the Plan.  Unless otherwise provided in this Plan, each Creditor will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date.  Accordingly, unless otherwise provided in this Plan, the validity and priority of any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

trust deed or other security document executed in connection with the obligations giving rise to the Creditor's Allowed Claim will not be impaired by this Plan. However, except as otherwise specifically provided in this Plan, to the extent that any such trust deed or other security document contains any provisions that impose any covenants, requirements or obligations on Debtor or Reorganized Debtor that are not specifically provided for or contained in, or are otherwise inconsistent with, this Plan, then such provisions shall be of no force and effect.

     11.16 14.16 Effectuating Documents and Further Transactions. Debtor and Reorganized Debtor shall execute, deliver, file or record such contracts, instruments, assignments, and other agreements or documents, and take or direct such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

DATED this 10 14th day of January February, 2011.

<div align="center">

Respectfully submitted,

ARLIE & COMPANY

</div>

By /s/ Scott Diehl
       Scott Diehl, Chief Financial Officer

PACHULSKI STANG ZIEHL & JONES LLP

By /s/ John D. Fiero
    John D. Fiero, (CA Bar No. 136557)
    Linda F. Cantor, (CA Bar No. 153762)
    Attorneys for Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

John D. Fiero (CA Bar No. 136557)
Linda F. Cantor (CA Bar No. 153762)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: jfiero@pszjlaw.com
        lcantor@pszjlaw.com
        tkapur@pszjlaw.com

and

Brad T. Summers (OSB No. 911116)
David W. Criswell (OSB No. 925930)
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone: 503/228-2525
Facsimile: 503/295-1058
Email: tsummers@balljanik.com
        dcriswell@balljanik.com

Attorneys for Debtor Arlie & Company

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 10-60244-aer11 |
| **ARLIE & COMPANY,** | Chapter 11 |
| Debtor. | **DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION (FEBRUARY 14, 2011)** |
| | **Hearing**<br>Date: April 4, 2011<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>405 E. 8th Avenue<br>Courtroom #6<br>Eugene, Oregon 97401<br>Judge: Honorable Frank R. Alley |

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINITIONS** ...................................................................... 1

1.1 "Administrative Expense Claim"........................................................ 1

1.2 "Agent". ........................................................................................... 1

1.3 "Allowed". ....................................................................................... 1

1.4 "Avoidance Actions". ...................................................................... 2

1.5 "Bankruptcy Case". ......................................................................... 2

1.6 "Bankruptcy Code". ......................................................................... 2

1.7 "Bankruptcy Court". ........................................................................ 2

1.8 "Bankruptcy Rules". ........................................................................ 2

1.9 "BLM Secured Creditors"................................................................ 2

1.10 "Building D Value". ........................................................................ 2

1.11 "Business Day". ............................................................................... 3

1.12 "Cash" ............................................................................................. 3

1.13 "Claim". ........................................................................................... 3

1.14 "Class". ............................................................................................ 3

1.15 "Collateral". ..................................................................................... 3

1.16 "Confirmation Date". ...................................................................... 3

1.17 "Confirmation Hearing". ................................................................. 3

1.18 "Confirmation Order". ..................................................................... 3

1.19 "Creditor". ....................................................................................... 3

1.20 "Debtor". ......................................................................................... 3

1.21 "Deficiency Claim". ........................................................................ 3

1.22 "Disclosure Statement". .................................................................. 4

1.23 "Disputed Claim". ........................................................................... 4

1.24 "Effective Date". ............................................................................. 4

1.25 "Entity" ........................................................................................... 4

1.26 "Excess Sale Proceeds" ................................................................... 4

1.27 "Filed". ............................................................................................ 4

1.28 "Final Order". .................................................................................. 4

1.29 "General Unsecured Claim". ........................................................... 4

1.30 "Interests". ....................................................................................... 5

1.31 "Lord Byron Collateral Value" ....................................................... 5

1.32 "Maturity Date". .............................................................................. 5

1.33 "Non-core assets". ........................................................................... 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| 1.34 | "Other Priority Claim". | 5 |
| 1.35 | "Petition Date". | 5 |
| 1.36 | "Plan". | 5 |
| 1.37 | "Plan Supplement". | 5 |
| 1.38 | "Priority Tax Claim". | 5 |
| 1.39 | "Pro Rata". | 5 |
| 1.40 | "Property Tax". | 5 |
| 1.41 | "Property Tax Lien Claim". | 6 |
| 1.42 | "Rejection Claim". | 6 |
| 1.43 | "Reorganized Debtor". | 6 |
| 1.44 | "Roberts Distributions". | 6 |
| 1.45 | "Schedules" | 6 |
| 1.46 | "Scheduled Amounts". | 6 |
| 1.47 | "Secured Claim" | 6 |
| 1.48 | "Small Unsecured Claim". | 6 |
| 1.49 | "Tonkon Claims". | 6 |
| 1.50 | "Unsecured Claim". | 6 |

**ARTICLE II UNCLASSIFIED CLAIMS** ....... 7

| 2.1 | Administrative Expense Claims. | 7 |
| 2.2 | Priority Tax Claims. | 7 |
| 2.3 | Bankruptcy Fees. | 7 |

**ARTICLE III CLASSIFICATION** ....... 8

| 3.1 | Class 1 (Other Priority Claims). | 8 |
| 3.2 | Class 2 (BofA). | 8 |
| 3.3 | Class 3 (Century Bank). | 8 |
| 3.4 | Class 4 (Pioneer). | 8 |
| 3.5 | Class 5 (Siuslaw Bank). | 8 |
| 3.6 | Class 6 (Summit Bank). | 8 |
| 3.7 | Class 7 (Umpqua Bank). | 8 |
| 3.8 | Class 8 (Washington Federal Savings). | 8 |
| 3.9 | Class 9 (BLM Secured Creditors). | 8 |
| 3.10 | Class 10 (Property Tax Lien Claims). | 8 |
| 3.11 | Class 11 (Small Unsecured Claims). | 8 |
| 3.12 | Class 12 (General Unsecured Claims). | 9 |
| 3.13 | Class 13 (Interests). | 9 |

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ....... 9

| 4.1 | Class 1 (Other Priority Claims). | 9 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.2 Class 2 (Allowed Secured Claims of BofA)................................................ 9

4.3 Class 3 (Allowed Secured Claim of Century Bank) .................................. 12

4.4 Class 4 (Allowed Secured Claim of Pioneer)........................................... 12

4.5 Class 5 (Allowed Secured Claims of Siuslaw Bank)................................ 13

4.6 Class 6 (Summit Bank)........................................................................... 20

4.7 Class 7 (Umpqua Bank)......................................................................... 23

4.8 Class 8 (Washington Federal Savings). .................................................. 37

4.9 Class 9 (BLM Secured Creditors)........................................................... 39

4.10 Class 10 (Property Tax Lien Claims)...................................................... 42

4.11 Class 11 (Small Unsecured Claims)........................................................ 42

4.12 Class 12 (General Unsecured Claims)..................................................... 43

4.13 Class 13 (Interests)................................................................................ 43

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** ............................... 43

5.1 Distributions by Debtor.......................................................................... 43

5.2 Disputed Claims; Objections to Claims  .............................................. 43

5.3 Subsequent Allowance of Disputed Claims. ........................................... 44

5.4 Unclaimed Distributions. ....................................................................... 44

**ARTICLE VI MEANS FOR EXECUTION OF PLAN** .......................................... 44

6.1 Continued Business Operations. .............................................................. 44

6.2 Siuslaw Loan. ........................................................................................ 44

6.3 Operating Revenues................................................................................ 45

6.4 Sales or Refinancing of Real Property Collateral..................................... 45

6.5 Marketing and Sales of Non-Core Assets. .............................................. 46

6.6 Setoffs. .................................................................................................. 46

6.7 Corporate Action.................................................................................... 46

6.8 Saturday, Sunday, or Legal Holiday. ...................................................... 46

6.9 Deposits. ................................................................................................ 47

6.10 Event of Default; Remedy.. .................................................................... 47

6.11 Continuation of Unsecured Creditors' Committee. .................................. 47

**ARTICLE VII EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................... 48

7.1 Assumption and Rejection...................................................................... 48

7.2 Assignment. .......................................................................................... 49

7.3 Rejection Claims. ................................................................................... 49

7.4 Compensation and Benefit Programs...................................................... 49

**ARTICLE VIII EFFECT OF CONFIRMATION** ................................................ 49

8.1 Binding Effect........................................................................................ 49

8.2 Discharge and Permanent Injunction  ................................................... 50

| | | |
|---|---|---:|
| 8.3 | Limitation of Liability | 51 |
| 8.4 | Exculpation | 51 |

**ARTICLE IX RETENTION OF JURISDICTION** .................................................... 51

| | | |
|---|---|---:|
| 9.1 | Jurisdiction of the Bankruptcy Court. | 51 |
| 9.2 | Failure of Bankruptcy Court to Exercise Jurisdiction | 52 |

**ARTICLE X ADMINISTRATIVE PROVISIONS** ..................................................... 52

| | | |
|---|---|---:|
| 10.1 | Modification or Withdrawal of the Plan. | 52 |
| 10.2 | Revocation or Withdrawal of Plan | 52 |
| 10.3 | Modification of Payment Terms. | 53 |
| 10.4 | Nonconsensual Confirmation | 53 |
| 10.5 | Compromise of Controversies. | 53 |
| 10.6 | Final Decree. | 53 |

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION** ...................... 53

**AND CONSUMMATION OF THE PLAN** .............................................................. 53

| | | |
|---|---|---:|
| 11.1 | Conditions to Confirmation. | 53 |
| 11.2 | Conditions to Effective Date | 54 |
| 11.3 | Waiver of Conditions. | 54 |

**ARTICLE XII MISCELLANEOUS PROVISIONS** ................................................... 54

| | | |
|---|---|---:|
| 12.1 | Revesting. | 54 |
| 12.2 | Rights of Action. | 55 |
| 12.3 | Governing Law. | 55 |
| 12.4 | Withholding and Reporting Requirements. | 55 |
| 12.5 | Time. | 56 |
| 12.6 | Section 1146(c) Exemption. | 56 |
| 12.7 | Severability. | 56 |
| 12.8 | Successors and Assigns. | 56 |
| 12.9 | Notices to Claim and Interest Holders. | 57 |
| 12.10 | Post Effective-Date Notices. | 57 |
| 12.11 | Retiree Benefits. | 57 |
| 12.12 | Provisions Enforceable. | 57 |
| 12.13 | Recordable Order. | 57 |
| 12.14 | Plan Controls. | 57 |
| 12.15 | Delivery of Promissory Notes. | 58 |
| 12.16 | Effectuating Documents and Further Transactions. | 58 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Arlie & Company, as debtor and debtor-in-possession ("Debtor"), proposes the following Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code.

The Plan provides for the repayment in full of Debtor's obligations to its Creditors. A Disclosure Statement is enclosed herewith to assist you in understanding the Plan and making an informed judgment concerning its terms.

## ARTICLE I

## DEFINITIONS

Definitions of certain terms used in the Plan are set forth below. Other terms are defined in the text of the Plan or in the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in the Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1 "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2 "Agent" means any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

1.3 "Allowed" means, when used to modify the term Claim or Administrative Expense Claim, either a proof of which has been properly Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

contingent or an Administrative Expense Claim that the Debtor has received by the applicable bar date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent (a) such objection is resolved between such claimant and either the Debtor or the Reorganized Debtor or (b) such Claim is allowed by a Final Order.

1.4 "Avoidance Actions" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law (including, without limitation, Sections 506(c), 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

1.5 "Bankruptcy Case" means the case under Chapter 11 of the Bankruptcy Code with respect to Debtor, pending in the District of Oregon, administered as *In Arlie & Company,* Case No. 10-60244-aer11.

1.6 "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

1.7 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or any proceeding therein, including the United States District Court for the District of Oregon, to the extent that the reference to the Bankruptcy Case or any proceeding therein is withdrawn.

1.8 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

1.9 "BLM Secured Creditors" means each of Francis Cline, William Greenhoot, McKillop II Limited Partnership, Karen Merwin, Alice Smith and Linda Trickey.

1.10 "Building D Value" means $4,000,000.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.11   "Business Day" means a day other than a Saturday, Sunday, any legal holiday as defined in Bankruptcy Rule 9006(a), or other day on which banks in Portland, Oregon are authorized or required by law to be closed.

1.12   "Cash" means lawful currency of the United States of America and equivalents, including, without limitation, checks, wire transfers and drafts.

1.13   "Claim" means (a) any right to payment from Debtor arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.14   "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.15   "Collateral" means any property in which Debtor has an interest that is subject to a lien or security interest securing the payment of an Allowed Secured Claim.

1.16   "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

1.17   "Confirmation Hearing" means the hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

1.18   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.19   "Creditor" means any entity holding a Claim against Debtor.

1.20   "Debtor" means Arlie & Company, as Debtor and Debtor-in-Possession in the Bankruptcy Case.

1.21   "Deficiency Claim" has the meaning set forth in the sentence following the definition of "Secured Claim."

1.22    "Disclosure Statement" means Debtor's Disclosure Statement as amended, modified, restated or supplemented from time to time, pertaining to the Plan.

1.23    "Disputed Claim" means a Claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of such Claim.  If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only to the extent of the objection.

1.24    "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all conditions to the occurrence of the Effective Date set forth in Article 11.2 of this Plan have been either satisfied or waived but in no event later than April 25, 2010.

1.25    "Entity" shall have the meaning ascribed to it by Section 101(15) of the Bankruptcy Code.

1.26    "Excess Sale Proceeds" means proceeds from the sale of property of the Debtor after payment of all debt secured by such property, Property Taxes, commissions, closing and transaction costs including, without limitation, legal and marketing expenses.

1.27    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

1.28    "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

1.29    "General Unsecured Claim" means any Unsecured Claim that is not otherwise classified under the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.30     "Interests" means an equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code.

1.31     "Lord Byron Collateral Value" means $1,500,000.

1.32     "Maturity Date" means the fifth anniversary of the Effective Date.

1.33     "Non-core assets" means those real property assets of Reorganized Debtor identified by Reorganized Debtor on Exhibit B to the Disclosure Statement as assets that are not core to Reorganized Debtor's long-term business success.

1.34     "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Section 507(a)(3), (4), (5) (6) or (7) of the Bankruptcy Code.

1.35     "Petition Date" means January 20, 2010, the date on which the petition commencing this Bankruptcy Case was Filed.

1.36     "Plan" means this Plan of Reorganization, as amended, modified, restated or supplemented from time to time.

1.37     "Plan Supplement" means such documents, schedules and exhibits to the Plan that are not filed contemporaneously with the filing of the Plan, and any amendments to exhibits filed contemporaneously with the filing of the Plan (or any amendments or supplements to any previously filed Plan Supplement).  The Debtor shall file and serve the Plan Supplement no later than ten days prior to the Plan voting deadline.

1.38     "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.39     "Pro Rata" means a proportionate share, so that the ratio of (a) the amount of property distributed on account of any Allowed Claim, or retained on account of a Disputed Claim, in a Class, to (b) the amount distributed on account of all Allowed Claims, or allocated to on account of all disputed claims, in such Class, is the same as the ratio (x) such Claim bears to (y) the total amount of all Claims (including Disputed Claims in their respective Disputed Claim Amounts) in such Class.

1.40     "Property Tax" means *ad valorem* property taxes or similar impositions by a governmental unit on property of the Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1.41    "Property Tax Lien Claim" means the Secured Claim of any governmental unit for Property Taxes that are secured by statutory liens on any of Debtor's property (real or personal).

1.42    "Rejection Claim" means a Claim arising from the rejection of an unexpired lease or executory contract.

1.43    "Reorganized Debtor" means Debtor from and after the Effective Date.

1.44    "Roberts Distributions" means any and all distributions made to Debtor or Reorganized Debtor from the Bankruptcy estate of In re: Roberts Prof. Const. Svcs., Inc. (Case No. 08-60615-fra7).

1.45    "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

1.46    "Scheduled Amounts" means the Claim amounts as set forth in Debtor's Schedules.

1.47    "Secured Claim" means any Claim against Debtor held by any entity, including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.  Unless otherwise provided in the Plan, the unsecured portion, if any, of such Claim shall be treated as a General Unsecured Claim and shall be referred to herein as "Deficiency Claim."

1.48    "Small Unsecured Claim" means any Unsecured Claim that is equal to or less than $2,000, or that has been reduced by election in writing to $2,000, provided that such written election shall be served on Debtor not later than the first date fixed by the Bankruptcy Court for the filing of acceptances or rejections of the Plan.

1.49    "Tonkon Claims" means all of the Debtor's claims for relief and causes of action, whether legal or equitable, against Tonkon Torp LLP, whether sounding in contract or tort specifically including but not limited to professional negligence related to Tonkon Torp LLP's representation of the Debtor at any time.

1.50    "Unsecured Claim" means a Claim that is not an Administrative Expense

Claim, a Priority Tax Claim, an Other Priority Claim, a Property Tax Lien Claim, or a Secured Claim.

## ARTICLE II

## UNCLASSIFIED CLAIMS

2.1     <u>Administrative Expense Claims</u>.  Each holder of an Allowed Administrative Expense Claim shall be paid by Reorganized Debtor in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute or regulation governing such Claim); provided, however, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtor during the Bankruptcy Case shall be paid by Debtor or Reorganized Debtor in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

2.2     <u>Priority Tax Claims</u>.  Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtor the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D), together with interest as provided in 11 U.S.C. § 511, over a period ending not later than five years after the date on which such claim was assessed.

2.3     <u>Bankruptcy Fees</u>.  Any then outstanding fees payable by Debtor under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date.  After confirmation, Reorganized Debtor shall continue to pay quarterly fees of the Office of the United States Trustee and will continue to file quarterly reports with the Office of the United States Trustee until this case is closed by the Bankruptcy Court, dismissed or converted except as otherwise ordered by the Bankruptcy Court.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARTICLE III

## CLASSIFICATION

For purposes of this Plan, Claims (except those treated under Article II) are classified as provided below.  A Claim is classified in a particular Class only to the extent that such Claim qualifies within the description of such Class, and is classified in a different Class to the extent that such Claim qualifies within the description of such different Class.

3.1     <u>Class 1 (Other Priority Claims)</u>.  Class 1 consists of all Allowed Other Priority Claims.

3.2     <u>Class 2 (BofA)</u>.  Class 2 consists of the Allowed Secured Claims of Bank of American, N.A. ("BofA").

3.3     <u>Class 3 (Century Bank)</u>.  Class 3 consists of the Allowed Secured Claims of Century Bank.

3.4     <u>Class 4 (Pioneer)</u>.  Class 4 consists of the Allowed Secured Claim of Pioneer Asset Investment Ltd. ("Pioneer").

3.5     <u>Class 5 (Siuslaw Bank)</u>.  Class 5 consists of the Allowed Secured Claims of Siuslaw Bank.

3.6     <u>Class 6 (Summit Bank)</u>.  Class 6 consists of the Allowed Secured Claims of Summit Bank.

3.7     <u>Class 7 (Umpqua Bank)</u>.  Class 7 consists of the Allowed Secured Claims of Umpqua Bank.

3.8     <u>Class 8 (Washington Federal Savings)</u>.  Class 8 consists of the Allowed Secured Claims of Washington Federal Savings ("Washington Federal").

3.9     <u>Class 9 (BLM Secured Creditors)</u>.  Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors.

3.10     <u>Class 10 (Property Tax Lien Claims)</u>.  Class 10 consists of all Allowed Property Tax Lien Claims.

3.11     <u>Class 11 (Small Unsecured Claims)</u>.  Class 11 consists of all Allowed Small Unsecured Claims.

3.12    Class 12 (General Unsecured Claims).  Class 12 consists of all Allowed General Unsecured Claims.

3.13    Class 13 (Interests).  Class 13 consists of all Interests.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.1    Class 1 (Other Priority Claims).  Class 1 is impaired. Each Class 1 Claimant will be paid in full in Cash the amount of its Class 1 Claim on the latter of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such Class 1 Claimant shall agree or has agreed to a different treatment of its Class 1 Claim (including any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim).

4.2    Class 2 (Allowed Secured Claims of BofA).  Class 2 is impaired.  The Class 2 Claim of BofA includes Claims for amounts owing under two separate loans, each of which will be separately classified and treated as hereinafter described.  Each property of Debtor that is Collateral of BofA shall serve as Collateral for each of BofA's Class 2 Claims.  As security for BofA's Class 2 Claims, BofA will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

4.2.1    Class 2.1 – Building A Loan.

BofA will have an Allowed Class 2.1 Claim in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the Effective Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about February 27, 2007 in the original principal amount of $9,000,000 (the "Building A Loan"), which loan is secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building A ("Building A").

BofA's Class 2.1 Claim shall be satisfied by delivery of a promissory note to BofA (the "Building A Note") in the amount of the Allowed Class 2.1 Claim.  The Building A Note will

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building A Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the Building A Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Building A Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.2.2     Class 2.2 – Building D Loan.

BofA will have an Allowed Class 2.2 Claim in the amount of all principal, accrued interest, and reasonable fees and costs owing to BofA as of the Petition Date (as such amounts are determined by agreement of Debtor and BofA or as determined and Allowed by the Bankruptcy Court) under that certain loan made by BofA to Debtor on or about November 2, 2007 in the original principal amount of $5,376,088.93 (the "Building D Loan"), which loan is secured by, among other things, Debtor's real property and improvements located in Eugene, Oregon commonly known as Crescent Village Building D ("Building D").

BofA's Class 2.2 Claim shall be satisfied by the delivery of two promissory notes – one in the amount of the Building D Value ("Building D Note 1") and one for the difference between the amount of the Allowed Class 2.2 Claim and the Building D Value ("Building D Note 2").

Building D Note 1 shall have the following attributes: (a) it will bear interest at a fixed rate of 4.5% per annum; (b) commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 24th month following the Effective Date, Reorganized Debtor will make interest only payments on the Building D Note 1; (c) commencing on the tenth day of the 25th month after the Effective Date and continuing on the tenth day of each month thereafter until Building D Note 1 has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Building D Note 1 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date; (d) to the extent that the loan to value ratio of the loan represented by the Building D Note 1 exceeds 75% of the value of Building D (which, for these purposes shall be valued as of the 24th month following the Effective Date after applying an 8% cap rate to the net operating income of Building D), the Reorganized Debtor shall make a cash paydown of the Building D Note 1 in the amount necessary to reduce such loan to value ratio to 75%; (e) the Reorganized Debtor shall establish on the Effective Date a $405,000 reserve account for tenant improvements associated with future leasing activities related to Building D ("the Building D Reserve") which shall be funded with $205,000 cash derived from the BofA cash collateral account and $200,000 from the Roberts Distributions. BofA shall retain its liens and security interests in Building D, which shall serve as security for amounts due under the Building D Note 1 only. Aside from the $200,000 contribution to the Building D Reserve, BofA shall have no claim to any other Roberts Distributions.

The Building D Note 2 shall have the following attributes: (a) it will bear interest at a fixed rate of 3.5% per annum; (b) it will be payable in two installments with the first installment of one half of the principal plus all then accrued interest being due on the tenth day of the 37th month after the Effective Date, and the second installment of all remaining amounts owed thereunder being due on the Maturity Date. There shall be no security for the Building D Note 2, but it shall be cross-defaulted with the Building D Note 1.

                4.2.3          <u>Treatment of Bank of America's Cash Collateral Accounts</u>.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building A (the "Building A Cash Collateral") for payment of any past due Property Taxes on Building A. The remainder of the Building A Cash Collateral will be either contributed to the Building D Reserve as described in Article 4.2.2 or retained and used by Reorganized Debtor for its general operating purposes.

On the Effective Date, Debtor will utilize the cash collateral in the bank account established and maintained by Debtor with respect to Building D (the "Building D Cash Collateral")

for payment of any past due Property Taxes on Building D. The remainder of the Building D Cash Collateral will be either contributed to the Building D Reserve as described in Article 4.2.2 or retained and used by Reorganized Debtor for its general operating purposes.

4.3 <u>Class 3 (Allowed Secured Claim of Century Bank)</u> Class 3 is impaired. Century Bank will have an Allowed Class 3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Century Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Century Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Century Bank to Debtor on or about April 10, 2009 in the original principal amount of $236,000 (the "3058 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3058 Kinney Loop.

As Collateral for the Class 3 Claim, Century Bank will retain its security interests in and liens upon its Collateral that secures the 3058 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Century Bank's Class 3 Claim shall be satisfied by delivery of a promissory note to Century Bank in the amount of the Allowed Class 3 Claim (the "3058 Kinney Loop Note"). The 3058 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3058 Kinney Loop Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the 3058 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3058 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.4 <u>Class 4 (Allowed Secured Claim of Pioneer)</u>. The Class 4 Secured Claim of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Pioneer is disputed.  If and to the extent Pioneer is determined by Final Order to have a valid, perfected security interest in or lien upon property of the Debtor, Pioneer will have an Allowed Class 4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Pioneer as of the Effective Date (in such amounts as are determined by agreement of Debtor and Pioneer or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Pioneer to Debtor on or about September 12, 2008 in the original principal amount of $1,500,000 (the "Pioneer Loan').

As Collateral for the Pioneer Allowed Class 4 Claim, Pioneer will retain its security interest and liens upon its Collateral that secures the Pioneer Loan with the same priority and to the same extent such security had as of the Petition Date and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Pioneer's Allowed Class 4 Claim shall be satisfied by delivery of a promissory note to Pioneer (the "Pioneer Note") in the amount of the Pioneer Class 4 Claim.  The Pioneer Note will bear interest at a fixed rate of 4.5% per annum.  The Pioneer Note will be payable by Reorganized Debtor as follows:

The Pioneer Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date.  In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Pioneer Note.  At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Pioneer Note

If and to the extent the Pioneer Secured Claim is avoided or otherwise determined to be unsecured by Final Order, the Pioneer Claim will be treated as a Class 12 Claim.

4.5     Class 5 (Allowed Secured Claims of Siuslaw Bank).  Class 5 is impaired.  The Class 5 Claims of Siuslaw Bank includes Claims for amounts owing under eight separate loans.  Each loan is separately classified and treated as hereinafter described.

4.5.1     Class 5.1 – Crescent Village Lots Loan.

Siuslaw Bank will have an Allowed Class 5.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about August 17, 2006 in the original principal amount of $4,000,000 (the "Crescent Village Lots Loan"), which loan is secured by real property and improvements owned by Debtor located in Eugene, Oregon commonly referred to as Crescent Village Lots 10, 11, 12 and 13 (the "Crescent Village Lots").

As Collateral for the Class 5.1 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Crescent Village Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.1 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Crescent Village Lots Note") in the amount of the Allowed Class 5.1 Claim, payable by Reorganized Debtor as follows.

The Crescent Village Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Crescent Village Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Crescent Village Lots Note.

Notwithstanding the foregoing, in the event Reorganized Debtor consummates a sale of the Crescent Village Lots to the U.S. Department of Veterans Affairs (the "VA Sale") prior to the Maturity Date, the Reorganized Debtor shall pay off the Crescent Village Lots Note, including all accrued and unpaid interest then owing under the Crescent Village Lots Note, and shall utilize twenty percent (20%) of the Excess Sale Proceeds (the "Siuslaw Payoff Proceeds") to pre-pay such other Allowed Class 5 Secured Claim(s) of Siuslaw Bank (other than the Florence Medical Building Note, as hereinafter defined) as shall be determined by agreement of Reorganized Debtor and Siuslaw Bank.

4.5.2    Class 5.2 – 2850 Kinney Loop Loan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Siuslaw Bank will have an Allowed Class 5.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about July 10, 2008 in the original principal amount of $88,318 (the "2850 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2850 Kinney Loop.

As Collateral for the Class 5.2 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2850 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.2 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2850 Kinney Loop Note") in the amount of the Allowed Class 5.2 Claim. The 2850 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2850 Kinney Loop Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the 2850 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2850 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 2850 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.3 Class 5.3 – 2960 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about August 20, 2008 in the original principal amount of $245,000 (the "2960 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2960 & 3100 Kinney Loop.

As Collateral for the Class 5.3 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 2960 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.3 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "2960 Kinney Loop Note") in the amount of the Allowed Class 5.3 Claim. The 2960 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 2960 Kinney Loop Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the 2960 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 2960 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 2960 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.4    Class 5.4 – 3082 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtor on or about October 15, 2007 in the original principal amount of $219,910 (the "3082 Kinney Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3082 Kinney Loop.

As Collateral for the Class 5.4 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3082 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.4 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3082 Kinney Loop Note") in the amount of the Allowed Class 5.4 Claim. The 3082 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3082 Kinney Loop Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the 3082 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3082 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 3082 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.5    Class 5.5 – 3108 Kinney Loop Loan.

Siuslaw Bank will have an Allowed Class 5.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about October 15, 2007 in the original principal amount of $180,000 (the "3108 Kinney

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Loop Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3108 Kinney Loop.

As Collateral for the Class 5.5 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the 3108 Kinney Loop Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.5 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "3108 Kinney Loop Note") in the amount of the Allowed Class 5.5 Claim. The 3108 Kinney Loop Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the 3108 Kinney Loop Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the 3108 Kinney Loop Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the 3108 Kinney Loop Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Notwithstanding the foregoing, the 3108 Kinney Loop Note may be prepaid, in whole or in part, by Reorganized Debtor from the Siuslaw Payoff Proceeds.

4.5.6    Class 5.6 – Florence Medical Building Loan.

Siuslaw Bank will have an Allowed Class 5.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about March 27, 2009 in the original principal amount of $611,250 (the "Florence Medical Building Loan"), which loan is secured by Debtor's real property and improvements in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Florence, Oregon commonly referred to as 4480 Hwy. 101 N., Florence (the "Florence Medical Building").

As Collateral for the Class 5.6 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Florence Medical Building Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.6 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Florence Note") in the amount of the Allowed Class 5.6 Claim. The Florence Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

On the Effective Date, Reorganized Debtor shall pay down the Florence Note to the original principal amount of the Florence Medical Building Loan. Thereafter, commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Florence Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the Florence Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Florence Note based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

4.5.7     Class 5.7 – Kinney Loop Lots Loan.

Siuslaw Bank will have an Allowed Class 5.7 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Siuslaw Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Siuslaw Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Siuslaw Bank to Debtor on or about March 20, 2007 in the original principal amount of $1,087,500 (the "Kinney Loop Lots Loan"), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2802/2804 & 2834 Kinney Loop and 2729 & 2743 Coburg Road.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

As Collateral for the Class 5.7 Claim, Siuslaw Bank will retain its security interests in and liens upon its Collateral that secures the Kinney Loop Lots Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Siuslaw Bank's Class 5.7 Claim shall be satisfied by delivery of a promissory note to Siuslaw Bank (the "Kinney Loop Lots Note") in the amount of the Allowed Class 5.7 Claim, payable by Reorganized Debtor as follows.

The Kinney Loop Lots Note will accrue interest at the fixed rate of 4.5% per annum and will be payable in full on the Maturity Date. In addition, within 3 years after the Effective Date, Reorganized Debtor shall have pre-paid at least 50% of the principal of the Kinney Loop Lots Note. At the time of any such pre-payment, Reorganized Debtor shall also pay all accrued but unpaid interest then owing under the Kinney Loop Lots Note.

4.5.8    Treatment of Siuslaw Bank's Cash Collateral Account.

On the Effective Date, all amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Siuslaw Bank pursuant to the Cash Collateral Order shall be utilized to pay any past due Property Taxes on the Collateral securing the Class 5 Claims. Any amounts remaining in the account after the payment of such taxes shall be utilized by the Reorganized Debtor for its general operating purposes.

4.6    Class 6 (Summit Bank). Class 6 is impaired. The Class 6 Claim of Summit Bank includes two subclaims, each of which will be separately classified and treated as hereinafter described.

4.6.1    Class 6.1 – Road Radio Tower Loan.

Summit Bank will have an Allowed Class 6.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Summit Bank as of the Effective Date (as such amounts are determined by agreement of Debtor and Summit Bank or as determined and Allowed by the Bankruptcy Court) under that certain loan made by Summit Bank to Debtor on or about November 4, 2004 in the original principal amount of $331,946 (the "Radio

Tower Loan "), which loan is secured by Debtor's real property and improvements in Eugene, Oregon commonly referred to as 650 Goodpasture Island Road.

As Collateral for the Class 6.1 Claim, Summit Bank will retain its security interests in and liens upon its Collateral that secures the Radio Tower Loan with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

Summit Bank's Class 6.1 Claim shall be satisfied by delivery of a promissory note to Summit Bank (the "Radio Tower Note") in the amount of the Allowed Class 6.1 Claim. The Radio Tower Note will bear interest at a fixed rate of 4.5% per annum and will be payable by Reorganized Debtor as follows.

Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Radio Tower Note. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the Radio Tower Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Radio Tower Note based on a 25 year amortization schedule, with a balloon payment due of all principal and interest due on the Maturity Date.

<center>4.6.2       Class 6.2 – Guaranty Claim.</center>

Debtor executed in favor of Summit Bank a guaranty dated June 7, 2006 (the "Churchill Media Guaranty") pursuant to which Debtor guaranteed the obligations of Churchill Media, LLC (an affiliate of Debtor) to Summit Bank. In connection with such guaranty and such indebtedness, including a promissory note in the original principal amount of $3,000,000 dated May 8, 2007 from Churchill Media, LLC to Summit Bank, Debtor granted Summit Bank a security interest in Debtor's real property in Eugene, Oregon generally known as NNK Crescent Drive (Crescent Village Lot 4) and in Debtor's real property in Eugene, Oregon commonly known as NNK Willow Creek Road (W. 11th & Willow Creek, hereinafter referred to as the "Willow Creek Property").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Summit Bank will have an Allowed Class 6.2 claim in the amount owing by Debtor

2  under the Churchill Media Guaranty.  As security for the Class 6.2 Claim, Summit Bank will retain

3  its security interest in and liens upon its Collateral securing the Churchill Media Guaranty with the

4  same priority and to the same extent such security had as of the Petition Date, and Reorganized

5  Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

6  Summit Bank's Class 6.2 Claim will be satisfied by the delivery of a promissory note to Summit

7  Bank (the "Guaranty Note") payable as follows.

8    The Guaranty Note will accrue interest at the fixed rate of 4.5% per annum, and will

9  be payable in full on the Maturity Date.  In addition, Reorganized Debtor shall pre-pay a portion of

10  the Guaranty Note through the sale or turnover of the Willow Creek Property as follows.

11  Reorganized Debtor shall have six (6) months after the Effective Date to enter into a letter of intent

12  for the sale of the Willow Creek Property, provided that any such sale must close within two (2)

13  months after the execution of the letter of intent.  The Willow Creek Property net sale proceeds (after

14  payment of Property Taxes, commissions, closing and transaction costs including, without

15  limitation, legal and marketing expenses) will be applied to pay down the Guaranty Note.  In the

16  event a sale is not effectuated as set forth above, Reorganized Debtor shall transfer title to the

17  Willow Creek Property to Summit Bank, subject to any and all past due and current Property Taxes,

18  by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Summit

19  Bank, and the amount outstanding under the Guaranty Note shall be reduced by the assessed value of

20  the Willow Creek Property.  For purposes of this Article 4.6.2, "assessed value" shall mean the value

21  ascribed to the Willow Creek Property as agreed to by the Reorganized Debtor and Summit Bank

22  and, if no such agreement is reached, such value as determined by the Bankruptcy Court.

23    All payments received by Summit Bank from Churchill or any successor to or trustee

24  or receiver for Churchill will be applied by Summit Bank in reduction of the principal owing on the

25  Guaranty Note.  In the event that Reorganized Debtor pays or satisfies the Guaranty Note, then

26  Reorganized Debtor will be subrogated to the position of Summit Bank with respect to the

27  obligations of Churchill and Summit Bank will execute and deliver such documents as may be

28  necessary or appropriate to evidence such payment and subrogation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### 4.6.3 Treatment of Summit Bank's Cash Collateral Account.

On the Effective Date, Reorganized Debtor shall utilize the amounts maintained in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Summit Bank pursuant to the Cash Collateral Order towards payment by Reorganized Debtor of any past due Property Taxes on the Collateral securing the Class 6 Claims. Any amounts remaining in the account after payment of such taxes shall be retained by Reorganized Debtor to be used for general operating purposes.

### 4.7 Class 7 (Umpqua Bank).

Class 7 is impaired. The Class 7 Claim of Umpqua Bank includes Claims for amounts owing under twelve separate loans, each of which will be classified and treated as hereinafter described. The total amount of each Umpqua Bank Allowed Claim includes the principal balance owing under the Umpqua Bank loan, together with all accrued and unpaid non-default interest owing under the loan as of the Effective Date and such fees (excluding any late payment fees) and costs as allowed by Umpqua Bank's existing loan documents with Debtor as of the Effective Date and allocated in accordance with Article 4.7.15 of the Plan (the "Umpqua Bank Fees"). Umpqua Bank shall have no Claims and shall make no demands on Debtor, Reorganized Debtor or any guarantor of an Umpqua Bank Loan for events or defaults that occurred before the Effective Date and any such events or defaults shall be deemed waived, released and extinguished, provided that such pre-Effective Date waiver shall not apply to defaults continuing after the Effective Date that materially harm or affect the value of Umpqua Bank's interest in the real property Collateral. Except to the extent specifically modified by this Plan, Umpqua Bank will retain its pre-Petition Date security interests in and liens upon its Collateral (including assets generated or purchased after the Effective Date but perfected before the Petition Date) with the same priority and to the same extent such security had as of the Petition Date, all of which liens and security interests are and will continue to be cross-defaulted and cross collateralized. Notwithstanding the foregoing, Umpqua Bank shall have no claim against, lien on or security interest in the Roberts Distributions.

Reorganized Debtor will conform to the requirements set forth in such loan and security documents provided by Debtor to Umpqua Bank as amended, other than any financial covenant requirements or financial reporting requirements which shall be of no force or effect.

Notwithstanding the foregoing, Debtor and/or Reorganized Debtor shall execute and deliver to Umpqua Bank such amendments to the existing loan documents as Umpqua Bank generally requires to conform the loan documents to the terms of this Plan. Without limiting the foregoing, such amendments will include having the following financial reports provided to Umpqua Bank (all in such form as reasonably required by Umpqua Bank): 45 days after the end of each calendar quarter, internally prepared financial statements (including balance sheet and cash flow statement); 120 days after each year end, internally prepared financial statements; annual financial statements 120 days after year end and copies of corporate tax returns with schedules when filed and copies of non-residential lease agreements after they are signed. In addition, Reorganized Debtor shall provide such financial reports to Umpqua Bank as it reasonably requests in light of the treatment of Umpqua's Claims under the Plan and the nature of Umpqua Bank's Collateral. Without limiting the preceding, in the event and to the extent that any provision of the Plan is inconsistent with the provisions set forth in any Umpqua Bank loan document, the provisions of the Plan shall control and take precedence.

As used below, the "Arlie Debt Amount" as to any property securing an Umpqua Bank loan is the amount of principal and the then accrued and outstanding non-default interest owing on the Umpqua loan associated with such property.

4.7.1    Class 7.1 – Westlane Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about February 12, 2002 in the original principal amount of $5,910,000 (the "Westlane Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Veneta, Oregon commonly referred to as 88330 N. Territorial Road (the "Westlane Property"). Umpqua Bank's Class 7.1 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Westlane Property at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, provided that any such sale must close within two (2) months after the execution of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

letter of intent, (b) purchase the Westlane Property at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property or (c) transfer title to the Westlane Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property and the applicable Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the Westlane Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3) of any sale proceeds in excess of the sum of (a) reasonable commissions, closing and transaction costs including, without limitation, legal and marketing expenses (collectively, the "Closing Costs"), (b) the applicable Arlie Debt Amount, (c) Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7 Claim, other than a Class 7.1, 7.2, or 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). Any sale or purchase by Reorganized Debtor of the Westlane Property shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or purchase.

<div align="center">4.7.2       Class 7.2 - West 11th Land Loan.</div>

Umpqua Bank will have an Allowed Class 7.2 Claim in the amount of all principal, accrued non-default interest and the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about December 29, 2003 in the original principal amount of $1,404,650 (the "West 11th Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3802, 3810 and 3838 W. 11th. Avenue, Eugene, Oregon (the "West 11th Land Property"). Umpqua Bank's Class 7.2 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the West 11th Land Property at a price for cash at closing in

an amount that will pay Umpqua Bank the applicable Arlie Debt Amount and Umpqua Bank Fees

for such property, provided that any such sale must close within two (2) months after the execution

of the letter of intent, (b) purchase the West 11th Land Property at a price for cash at closing in an

amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such

property, or (c) transfer title to the West 11th Land Property to Umpqua Bank, subject to any and all

past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably

agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the

Arlie Debt Amount for such property and the applicable Umpqua Bank Fees, shall be deemed

satisfied, waived and forgiven.  Provided that Reorganized Debtor effectuates a sale of the West 11th

Land Property within the time limits set forth in the immediately preceding sentence, two-thirds

(2/3) of any sale proceeds in excess of the sum of (a) Closing Costs, (b) the Arlie Debt Amount, (c)

Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be

retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds

will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7

Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the

Woodburn Loan).  Any sale or purchase by Reorganized Debtor of the West 11th Land Property shall

be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie

Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or

purchase.

4.7.3     Class 7.3 – 2892 Crescent Ave. Loan.

Umpqua Bank will have an Allowed Class 7.3 Claim in the amount of all principal,

accrued non-default interest and the applicable Umpqua Bank Fees under that certain loan made by

Umpqua Bank to Debtor on or about October 27, 2008 in the original principal amount of

$2,000,000 (the "2892 Crescent Ave. Loan"), which loan is secured by, among other things,

Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2892 Crescent

Avenue ("2892 Crescent Avenue"). Umpqua Bank's Class 7.3 Claim shall be satisfied as follows.

Reorganized Debtor shall have six (6) months after the Effective Date to either (a)

enter into a letter of intent for the sale of 2892 Crescent Avenue at a price for cash at closing in an

amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, (b) purchase 2892 Crescent Avenue at a price for cash at closing in an amount that will pay Umpqua Bank the Arlie Debt Amount and the Umpqua Bank Fees for such property, or (c) transfer title to 2892 Crescent Avenue to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount for such property and the Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of 2892 Crescent Avenue within the time limits set forth in the immediately preceding sentence, two-thirds (2/3) of any sale proceeds in excess of the sum of (a) Closing Costs, (b) the Arlie Debt Amount, (c) Property Taxes paid from proceeds at closing, and (d) the applicable Umpqua Bank Fees, will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). Any sale or purchase by Reorganized Debtor of 2892 Crescent Avenue shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and applicable Umpqua Bank Fees have been or will be paid upon such sale or purchase.

4.7.4    Class 7.4 Woodburn and College Park Loan.

Umpqua Bank will have an Allowed Class 7.4 Claim in the amount of all principal, accrued non-default interest and the applicable Umpqua Bank Fees under that certain line of credit loan made by Umpqua Bank to Debtor on or about July 29, 1999 in the original principal amount of $600,000 (with 1/20/2006 Change in Terms Agreement increasing principal amount to $4,000,000) (the "Woodburn and College Park Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 85701 Scharen Road, Lane County, Northside of Cemetery Road near Lorane Highway, Lane County (the "College Park Property"), and Debtor's real property and improvements in Woodburn, Oregon commonly referred

to as 2450 Country Club Road, Marion County (the "Woodburn Property"). Umpqua Bank's Class 7.4 Claim shall be satisfied as follows.

The Arlie Debt Amount for the Woodburn Property shall be $845,000 together with 25% of accrued and unpaid interest on the Woodburn and College Park Loan. Reorganized Debtor shall have six (6) months after the Effective Date to either (a) enter into a letter of intent for the sale of the Woodburn Property at a price for cash at closing in an amount in excess of the Arlie Debt Amount for such property, provided that any such sale must close within two (2) months after the execution of the letter of intent, (b) purchase the Woodburn Property at a price for cash at closing in an amount in excess of the Arlie Debt Amount for such property, or (c) transfer title to the Woodburn Property to Umpqua Bank, subject to any and all past due and current Property Taxes, by non-merger deed in lieu in such form as reasonably agreeable to Reorganized Debtor and Umpqua Bank, in which case any remaining liability for the Arlie Debt Amount relating to the Woodburn Property and the applicable Umpqua Bank Fees, shall be deemed satisfied, waived and forgiven. Provided that Reorganized Debtor effectuates a sale of the Woodburn Property within the time limits set forth in the immediately preceding sentence, two-thirds (2/3) of any sale proceeds in excess of the Arlie Debt Amount, Property Taxes, Closing Costs and applicable Umpqua Bank Fees will be retained by Reorganized Debtor for its own account, and one-third (1/3) of such excess sale proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2 or a Class 7.3 Claim. Any sale or purchase by Reorganized Debtor of the Woodburn Property shall be free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount has been or will be paid upon such sale or purchase.

As of the Effective Date, the remainder of the Woodburn and College Park Loan shall have a non-default simple fixed interest rate of 4.5% per annum and will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the Woodburn and College Park Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount for the College Park Property plus all past due real estate taxes (less any previously paid real estate taxes included therein) (the "College Park Pay Down"). The College Park Pay Down will not include application from the sale of approximately 315 acres of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

College Park Property approved by the Bankruptcy Court in the Bankruptcy Case or from the disposition of the Woodburn Property described above. The Arlie Debt Amount for the College Park Property shall be the balance of the Woodburn and College Park Loan including accrued and unpaid interest (at the non-default rate).

<div align="center">4.7.5     <u>Class 7.5 – Roseburg Loan #1</u>.</div>

Umpqua Bank will have an Allowed Class 7.5 Claim in the amount of all principal, accrued non-default interest and the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about January 16, 2004 in the original principal amount of $2,630,000 (the "Roseburg Loan #1"), which loan is secured by, among other things, Debtor's real property and improvements in Roseburg, Oregon commonly referred to as 1156, 1176 and 1200 N.W. Garden Valley Boulevard (the "Roseburg Property"). Umpqua Bank's Class 7.5 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use good funds in the cash collateral bank account established and maintained by Debtor with respect to Umpqua Bank pursuant to the Bankruptcy Court's cash collateral order (the "Umpqua Cash Collateral Account") to bring current the Roseburg Loan #1 by making all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) and any past due Property Taxes on the Roseburg #1 Property. Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to Roseburg Loan #1 before the Effective Date shall be deemed waived or released. Thereafter, the non-default interest will accrue on the Roseburg Loan #1 at a simple fixed rate of 4.5% per annum. Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Roseburg Loan #1 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

In accordance with paragraph 4.7.18 of this Plan, Reorganized Debtor may use up to $457,000 of good funds in the Umpqua Cash Collateral Account for the reasonable and necessary costs of removing the fascia from the Hollywood Video building, erecting a demising wall and

otherwise provide the tenant improvements required by the prospective tenants for such building, provided that (a) Umpqua Bank shall have a security interest in such improvements, (b) Debtor shall provide Umpqua Bank copies of invoices and documents pertaining to the work performed when the draw for such work is made, and (c) Debtor shall assure that no liens are asserted against the property on account of the work performed and, upon request by Umpqua Bank, will obtain lien releases as payments are made.

### 4.7.6    Class 7.6 – Roseburg Loan #2

Umpqua Bank will have an Allowed Class 7.6 Claim in the amount of all principal, accrued non-default interest and the applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about April 1, 2008 in the original principal amount of $1,720,000 (the "Roseburg Loan #2"), which loan is secured by, among other things, the Roseburg Property. Umpqua Bank's Class 7.6 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use good funds in the Umpqua Cash Collateral Account to make all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Roseburg Loan #2.  Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to Roseburg Loan #2 before the Effective Date shall be deemed waived or released.  Thereafter, interest will accrue on the Roseburg Loan #2 at a simple fixed rate of 4.5% per annum.  Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on Roseburg Loan #2 based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

### 4.7.7    Class 7.7 – Oil Can Henry's Loan.

Umpqua Bank will have an Allowed Class 7.1 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about July 31, 2008 in the original principal amount of $668,000 (the "Oil Can Henry's Loan"), which loan is secured by, among other things, Debtor's real property and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

improvements in Eugene, Oregon commonly referred to as 3804 W. 11th Avenue (the "Oil Can Henry's Property").  Umpqua Bank's Class 7.7 Claim shall be satisfied as follows.

On the Effective Date, Reorganized Debtor will use good funds in the Umpqua Cash Collateral Account to bring current the Oil Can Henry's Loan by making all regularly scheduled but then unpaid payments of interest (at the non-default contract rate) on the Oil Can Henry's Loan and any past due Property Taxes on the Oil Can Henry Property.  Any default interest, late fees, or other charges (other than the Umpqua Bank Fees) that could have been asserted with respect to the Oil Can Henry's Loan before the Effective Date shall be deemed waived or released.  Thereafter, interest will accrue on the Oil Can Henry's Loan at a simple fixed rate of 4.5% per annum.  Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Oil Can Henry's Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.

4.7.8       Class 7.8 – My Coffee Loan.

Umpqua Bank will have an Allowed Class 7.8 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fess under that certain loan made by Umpqua Bank to Debtor on or about August 22, 2005 in the original principal amount of $661,600 (the "My Coffee Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3808 W. 11th Avenue (the "My Coffee Property").  Umpqua Bank's Class 7.8 Claim shall be satisfied as follows.

As of the Effective Date, the non-default interest rate on the My Coffee Loan will accrue at a simple fixed rate of 4.5% per annum.  Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the My Coffee Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date.  Additionally, the non-default interest that accrued on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the My Coffee Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

### 4.7.9    Class 7.9 – Building B Loan.

Umpqua Bank will have an Allowed Class 7.9 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about August 10, 2006 in the original principal amount of $8,265,000 (as subsequently increased to $10,150,000) (the "Building B Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as Lot 6 Crescent Village, Phase I, Lane County ("Building B"). Umpqua Bank's Class 7.9 Claim shall be satisfied as follows.

As of the Effective Date, the non-default interest rate on the Building B Loan will accrue at a simple fixed rate of 4.5% per annum. Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the Building B Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date. Additionally, the non-default interest that accrued on the Building B Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

### 4.7.10    Class 7.10 – Grumman Hangar Loan.

Umpqua Bank will have an Allowed Class 7.10 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about March 27, 2007 in the original principal amount of $245,000 (the "Grumman Hangar Loan "), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 28737 Grumman Drive (the "Grumman Hangar Property"). Umpqua Bank's Class 7.10 Claim shall be satisfied as follows.

As of the Effective Date, the non-default interest on the Grumman Hangar Loan will accrue at a simple fixed rate of 4.5% per annum. Commencing on the tenth day of the first month

following the Effective Date and continuing on the tenth day of each month thereafter through and including the Maturity Date, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the outstanding principal amount of the Grumman Hangar Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest and the applicable Umpqua Bank Fees due on the Maturity Date. Additionally, the non-default interest that accrued on the Grumman Hangar Loan between the Petition Date and the Effective Date shall be due and payable on the Maturity Date.

### 4.7.11 Class 7.11 – 3032 Kinney Loop Loan.

Umpqua Bank will have an Allowed Class 7.11 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about December 23, 2008 in the original principal amount of $184,000 (the "3032 Kinney Loop Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as 3032 Kinney Loop ("3032 Kinney Loop"). Umpqua Bank's Class 7.11 Claim shall be satisfied as follows.

As of the Effective Date, the non-default rate of interest on the 3032 Kinney Loop Loan will be fixed at the simple rate of 4.5% per annum. The Allowed Class 7.11 Claim will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the 3032 Kinney Loop Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes for such property (less any previously paid real estate taxes included therein) (the "Kinney Loop Pay Down").

### 4.7.12 Class 7.12 - Crescent Village Land Loan.

Umpqua Bank will have an Allowed Class 7.12 Claim in the amount of all principal, accrued non-default interest and applicable Umpqua Bank Fees under that certain loan made by Umpqua Bank to Debtor on or about March 15, 2002 in the original principal amount of $5,286,000 (the "Crescent Village Land Loan"), which loan is secured by, among other things, Debtor's real property and improvements in Eugene, Oregon commonly referred to as Lots 1 and 2 Cone Plat, Lane County (the "Crescent Village Land Property"). Umpqua Bank's Class 7.12 Claim shall be satisfied as follows.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

As of the Effective Date, the non-default rate of interest on the Crescent Village Land Loan will be fixed at the simple rate of 4.5% per annum. The Allowed Class 7.12 Claim will be payable in full on the Maturity Date, provided that Reorganized Debtor shall make a mandatory pay down of the Crescent Village Land Loan within three years of the Effective Date in the aggregate amount of 50% of the Arlie Debt Amount plus all past due real estate taxes for such property (less any previously paid real estate taxes included therein) (the "Crescent Village Pay Down").

4.7.13    Refinance of Properties Encumbered by Umpqua Bank's Liens.

Provided that no Event of Default has occurred that is not timely cured, Reorganized Debtor may satisfy an Arlie Debt Amount through a refinancing of the applicable property of the Debtor that is the Collateral of Umpqua Bank at any time after the Reorganized Debtor has made the Kinney Loop Pay Down, the Crescent Village Pay Down and the College Park Pay Down, provided that Umpqua Bank receives the Arlie Debt Amount and Umpqua Bank Fees associated with such property. To the extent that such refinancing is in excess of the sum of (a) the Arlie Debt Amount, (b) Property Taxes, (c) Closing Costs, and (d) applicable Umpqua Bank Fees, the net excess financing proceeds shall be distributed in accordance with paragraph 4.7.14 of this Plan.

4.7.14    Sale of Collateral Free and Clear of Umpqua Bank's Liens and Application of Excess Proceeds.

Notwithstanding that each property of Debtor that is Collateral of Umpqua Bank serves as Collateral for all of Umpqua Bank's Class 7 Claims, and provided no Event of Default has occurred that is not timely cured, Reorganized Debtor may from time to time sell a property for cash at closing free and clear of any liens, claims and encumbrances of Umpqua Bank provided that the Arlie Debt Amount and Umpqua Bank Fees associated with such property has been paid or will be paid upon such sale. To the extent that the sale proceeds exceed the sum of (a) the Arlie Debt Amount, (b) Property Taxes, (c) Closing Costs, and (d) the applicable Umpqua Bank Fees, such excess proceeds (the "Arlie Excess Proceeds") will be divided as follows: For any sale by Reorganized Debtor that occurs within one year of the Effective Date, or within 2 months of a letter of intent obtained within such one year period, two-thirds (2/3) of the Arlie Excess Proceeds will be

retained by Reorganized Debtor for its own account, and one-third (1/3) of the Arlie Excess Proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Bank Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). For any sale by Reorganized Debtor that occurs after such date, one -third (1/3) of any Arlie Excess Proceeds will be retained by Reorganized Debtor for its own account, and two-thirds (2/3) of any Arlie Excess Proceeds will be for the account of Umpqua Bank to be credited against any Umpqua Allowed Class 7 Claim, other than a Class 7.1, 7.2, 7.3 Claim or a Class 7.4 Claim (solely with respect to the Woodburn Loan). Notwithstanding the foregoing, upon tender of the Arlie Debt Amount and the Umpqua Bank Fees associated with the 3032 Kinney Loop Property, Umpqua Bank will consent to the release of its liens and security interests against the 3032 Kinney Loop Property.

Umpqua Bank shall provide partial releases of its liens related to a portion of each parcel that serves as Collateral for Umpqua Bank's Class 7 Claims, provided that 110% of the Arlie Debt Amount and the Umpqua Bank Fees associated with such specific portion of parcel (on a pro rata basis determined in light of the comparative value of the portion of parcel to be sold with the value of the remaining portion of the parcel not being sold) has been paid or will be paid to Umpqua Bank upon such sale.

### 4.7.15 Payment of Umpqua Bank Fees.

Unless otherwise provided by the Plan, upon the sale or refinance of any property of the Debtor that is Collateral of Umpqua Bank, Reorganized Debtor shall pay a proportionate share of the Umpqua Bank Fees on a pro rata basis so that the ratio of (a) the Umpqua Bank Fees being paid, to (b) the aggregate Umpqua Bank Fees, is the same ratio as (x) the Arlie Debt Amount for the property being sold or refinanced, to (y) the aggregate Arlie Debt Amount.

### 4.7.16 Property Taxes.

Other than Property Taxes relating to the Roseburg Property and the Oil Can Henry's Property (which taxes shall remain current under the Plan), Property Taxes on any property owned by the Debtor that is Collateral of Umpqua Bank shall at no time be no more than two years past due.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.7.17    Settlement of Claims by and among Debtor,

Reorganized Debtor and Umpqua Bank.

Upon confirmation of this Plan and effective as of the Effective Date, (a) the Arlie

Debt Amount and the Umpqua Bank Fees shall not be subject to reduction by defense, counterclaim,

or claim of recoupment by Debtor or Reorganized Debtor, (b) Debtor and Reorganized Debtor will

be deemed to have waived any and all claims against Umpqua Bank and its present directors,

officers and employees for any and all actions (or in-actions) that occurred before the Effective Date,

(c) all guarantees that guaranty the obligations of Debtor to Umpqua Bank shall continue to guaranty

the obligations of Reorganized Debtor to Umpqua Bank, as such obligations have been modified by

this Plan, and (d) subject to the provisions of paragraph 4.7 hereof, Umpqua Bank will not make a

demand on the Debtor and the guarantors for defaults that occurred before the Effective Date.

4.7.18    Treatment of Umpqua Bank's Cash Collateral Account.

With respect to the College Park Sale, the balance of good funds in the Umpqua Cash

Collateral Account shall be allocated as follows (and in the following order):  (a) payment of past

due Property Taxes on the Oil Can Henry's Property and the Roseburg Property, (b) payments of all

regularly scheduled but then unpaid payments of non-default interest on Roseburg Loan #1 and #2

and on the Oil Can Henry's Loan, (c) $457,000 to be used for tenant improvements for Roseburg as

such improvements are made, provided that (i) Umpqua Bank shall have a security interest in such

Roseburg improvements, (ii) Debtor shall provide Umpqua Bank copies of invoices and documents

pertaining to the work performed when the draw for such work is made, and (iii) Debtor shall assure

that no liens are asserted against the property on account of the work performed and, upon request by

Umpqua Bank, will obtain lien releases as payments are made, (d) $211,374 to be reserved by

Reorganized Debtor for payment of Debtor's income taxes associated with the College Park Sale, (e)

$315,000 to be paid to Umpqua Bank to be applied to the principle balance of the obligation

associated with the College Park Property, (f) $150,000 to be used by Reorganized Debtor for any

purpose without restriction, and (g) the remainder to be held in an account at Umpqua Bank, which

will be subject to Umpqua Bank's security interest, to be used at Reorganized Debtor's discretion

solely for debt service or taxes on property held by Reorganized Debtor that is the Collateral of Umpqua Bank and not subject to a sale or refinance agreement.

4.7.19    Use of Rents Generated From Umpqua Properties.

Commencing on the Effective Date, all rents generated from the properties securing the Umpqua Bank loans may be used by Reorganized Debtor for any purpose without restriction including, without limitation, for general overhead and general administrative expenses.

4.8    Class 8 (Washington Federal Savings). Class 8 is impaired. The Class 8 Claim of Washington Federal Savings includes Claims for amounts owing under five separate loans, each of which will be separately classified and treated as hereinafter described.

4.8.1    Class 8.1 –Lord Byron Loan.

On or about November 14, 2008, Washington Federal made a loan to Debtor in the original principal amount of $2,000,000 (the "Lord Byron Loan"). The Lord Byron Loan is secured by deeds of trust on the Debtor's real property and improvements in Eugene, Oregon commonly referred to as 2909 Lord Byron Place, 2915 Lord Byron Place, 2931 Lord Byron Place, 2977 Lord Byron Place and 2993 Lord Byron Place (collectively, the "Lord Byron Collateral"). The Lord Byron Collateral Value is less than the amounts owing under the Lord Byron Loan.

Washington Federal will have Allowed Claims in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Washington Federal as of the Effective Date as allowed by the Lord Byron Loan documents (the "Washington Claim Amount"). Washington Federal shall have a Secured Class 8 Claim in the aggregate amount of the Lord Byron Collateral Value, and an Unsecured Claim in an amount representing the difference between Lord Byron Collateral Value and the Washington Claim Amount (the "Washington Federal Unsecured Claim").

The Washington Federal Secured Class 8 Claim shall be satisfied by the delivery of five promissory notes to Washington Federal, as follows: the 2909 Lord Byron Note in the principal amount of $279,600 , the 2915 Lord Byron Note in the principal amount of $296,000, the 2931 Lord Byron Note in the principal amount of $327,950, the 2977 Lord Byron Note in the principal amount of $269,350, and the 2993 Lord Byron Note in the principal amount of $327,100 (individually, a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Lord Byron Note" and collectively, the "Lord Byron Notes"). Each Lord Byron Note will bear simple interest at a fixed rate of 4.5% per annum. Commencing on the tenth day of the first month following the Effective Date and continuing on the tenth day of each month thereafter through and including the 36th month following the Effective Date, Reorganized Debtor will make interest only payments on the Lord Byron Notes. Commencing on the tenth day of the 37th month after the Effective Date and continuing on the tenth day of each month thereafter until the Lord Byron Notes have been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the Lord Byron Notes based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date.

Each Lord Byron Note will be secured by a security interest in and lien upon its separate Lord Byron Property, pursuant to deeds of trust to be delivered to Washington Federal on the Effective Date. Each such deed of trust will have the same priority that Washington Federal had in such Collateral as of the Petition Date. Reorganized Debtor will maintain the Lord Byron Collateral in good repair and insure the Lord Byron Collateral to its full usable value.

Washington Federal will release its liens, claims and security interests in any Lord Byron Property upon payment of all principal and accrued interest then owing on the Lord Byron Note applicable to such property. Each Lord Byron Note shall be assumable by a purchaser of the applicable Lore Byron Property, subject to reasonable approval by Washington Federal.

    4.8.2    <u>Treatment of Washington Federal's Cash Collateral Account</u>.

On the Effective Date, amounts then held by Debtor in the separate and segregated cash collateral bank account established and maintained by Debtor with respect to Washington Federal pursuant to the Cash Collateral Order may be utilized by the Reorganized Debtor to pay any past due Property Taxes on the Collateral securing the Class 8 Claim. Any amounts remaining in the cash collateral bank account after the payment of such taxes may be used by Reorganized Debtor for any purpose without restriction including, without limitation, for general overhead and general administrative expenses.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### 4.8.3 Treatment of the Washington Federal Unsecured Claim.

The Washington Federal Unsecured Claim shall bear simple interest at the fixed rate of 3.5% per annum and shall be payable in full on the Maturity Date.

4.9 **Class 9 (BLM Secured Creditors).** Class 9 is impaired. Class 9 consists of the Allowed Secured Claims of the BLM Secured Creditors. The Class 9 Claims are secured by a deed of trust on Debtor's real property and improvements commonly referred to as 2890 Chad Drive, Eugene, Oregon (the "BLM Office Building").

#### Class 9.1 – Francis Cline.

Francis Cline will have an Allowed Class 9.1 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Cline as of the Effective Date under that certain loan made by Ms. Cline to Debtor on or about on or about November 4, 2008 in the original principal amount of $347,065 (the "Cline Loan"), which loan is secured by a deed of trust on BLM Office Building. The Class 9.1 Claim shall be treated as follows.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of all obligations owing under the Cline Loan. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested.

#### Class 9.2 – William Greenhoot.

William Greenhoot will have an Allowed Class 9.2 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Mr. Greenhoot as of the Effective Date under that certain loan made by Mr. Greenhoot to Debtor on or about on or about November 4, 2008 in the original principal amount of $347,065 (the "Greenhoot Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Greenhoot Loan and the Class 9.2 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

<u>Class 9.3 – McKillop II Limited Partnership</u>.

The McKillop II Limited Partnership ("McKillop") will have an Allowed Class 9.3 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to the Partnership as of the Effective Date under those certain loans made by Herbert McKillop to Debtor on or about on or about November 4, 2008 in the original principal amounts of $120,000 and $1,453,482 (collectively, the "McKillop Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the McKillop Loan and the Class 9.3 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Class 9.4 – Karen Merwin.

Karen Merwin will have an Allowed Class 9.4 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Merwin as of the Effective Date under that certain loan made by Ms. Merwin to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Merwin Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Merwin Loan and the Class 9.4 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

Class 9.5 – Alice Smith.

Alice Smith will have an Allowed Class 9.5 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Smith as of the Effective Date under that certain loan made by Ms. Smith to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Smith Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Smith Loan and the Class 9.5 Claim.

Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

### Class 9.6 – Linda Trickey.

Linda Trickey will have an Allowed Class 9.6 Claim in the amount of all principal, accrued non-default interest, and reasonable fees and costs owing to Ms. Trickey as of the Effective Date under that certain loan made by Ms. Trickey to Debtor on or about on or about November 4, 2008 in the original principal amount of $694,130 (the "Trickey Loan"), which loan is secured by a deed of trust on the BLM Office Building.

On the Effective Date, Reorganized Debtor shall pay all outstanding property taxes on the BLM Office Building and perform maintenance on the BLM Office Building at a cost to the Reorganized Debtor of not more than $10,000. Thereafter, Reorganized Debtor shall transfer title to the BLM Office Building to the holders of the Class 9 Claims, by non-merger deed in lieu, in such form as reasonably agreeable to Reorganized Debtor and the BLM Creditors, in full and complete satisfaction of the all obligations owing under the Trickey Loan and the Class 9.6 Claim. Notwithstanding the foregoing, at the request of all of the BLM Secured Creditors, Reorganized Debtor will market the BLM Office Building for sale and provide tenant improvement and any necessary rezoning services, if requested, upon such terms as may be agreed to by and between the BLM Secured Creditors and the Reorganized Debtor.

4.10    Class 10 (Property Tax Lien Claims). Class 10 is impaired. Class 10 Claimants will retain their security interest with the same priority to which it is entitled by law. Each Class 10 Claimant shall be paid the full amount of its Allowed Class 10 Claim in full in accordance with 11 U.S.C. §1129(a)(9)(d), but no later than the earlier of (i) 5 years after the Petition Date, or (ii) upon a sale of the property securing the Claim.

4.11    Class 11 (Small Unsecured Claims). Class 11 is impaired. Each holder of an Allowed Small Unsecured Claim will be paid in Cash the full amount of their Small Unsecured Claim in Cash, without interest, within 60 days following the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.12     <u>Class 12 (General Unsecured Claims)</u>.  Class 12 is impaired.  Class 12 General Unsecured Claims shall accrue interest from the Petition Date until such Claims are paid in full at a uniform annual interest rate of 3.5% per annum.  No pre-petition or post-petition default interest or post-petition contract rate of interest shall be paid on any General Unsecured Claim.  Reorganized Debtor shall make periodic payments to holders of Class 12 Claims as and when funds are available.  At the time Reorganized Debtor makes any principal payment on a General Unsecured Claim, Reorganized Debtor shall also pay all accrued but unpaid interest then owing on such General Unsecured Claim.  Within 3 years after the Effective Date, Reorganized Debtor shall have paid at least 50% of the principal amount of each General Unsecured Claim plus accrued interest.  All Class 12 Claims shall be paid, in full with interest, no later than the Maturity Date.

4.13     <u>Class 13 (Interests)</u>.  Class 13 is unimpaired.  Existing Interests in Debtor will be preserved.

**ARTICLE V**

**PROVISIONS GOVERNING DISTRIBUTIONS**

5.1     <u>Distributions by Debtor</u>.  The Reorganized Debtor shall administer Claims and make distributions in respect of Allowed Claims.  Distributions to be made by the Reorganized Debtor may be made by any person designated or retained by the Reorganized Debtor to serve as disbursing agent without the need for any further order of the Bankruptcy Court.

5.2     <u>Disputed Claims; Objections to Claims</u>  Only Claims that are Allowed shall be entitled to distributions under the Plan.  No Cash or other property shall be distributed under the Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such Disputed Claim becomes an Allowed Claim.  Debtor reserves the right to contest and object to any Claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtor currently believes is validly due and owing.  All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

5.3     Subsequent Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes Allowed in full or in part subsequent to the Effective Date shall receive Cash distributions (including any make-up distributions) on the next applicable distribution date following the allowance of such Disputed Claim.

5.4     Unclaimed Distributions.  Any entity which fails to claim any Cash distribution within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the Reorganized Debtor shall be authorized to cancel any distribution that is not timely claimed.  Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Reorganized Debtor, free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditors shall have no claim whatsoever against the Reorganized Debtor or any holder of an Allowed Claim to whom distributions are made by the Reorganized Debtor.

# ARTICLE VI

# MEANS FOR EXECUTION OF PLAN

6.1     Continued Business Operations  From and after the Effective Date, the Reorganized Debtor shall continue to engage in business with the goal of maximizing the value of its assets and, subject to the provisions of the Plan governing distributions and the retention of jurisdiction provisions hereof, the Reorganized Debtor shall continue such business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.  The Reorganized Debtor shall be authorized, without limitation, to use and dispose of its assets, to insure its assets, to borrow money, to employ and compensate agents, to reconcile and object to Claims, and to make distributions to Creditors in accordance with the Plan.

6.2     Siuslaw Loan  Siuslaw Bank has agreed to make a loan to the Reorganized Debtor on the Effective Date in the amount of $615,000 (the "New Siuslaw Loan").  The New Siuslaw Loan shall bear simple interest at a fixed per annum rate of 5.5% and, as collateral for the New Siuslaw Loan, Reorganized Debtor shall grant Siuslaw Bank liens upon and security interests

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

in the Florence Medical Building (described in Article 4.5.6 hereof) with the same priority as the liens and security interests held by Siuslaw Bank securing the Florence Medical Building Note. On the Funding Date, Reorganized Debtor shall establish a separate cash reserve account at Siuslaw Bank into which will be deposited funds sufficient to satisfy the first six (6) months of payments on account of Class 5 Claims under the Plan. Reorganized Debtor shall make interest only payments on the New Siuslaw Loan commencing on the tenth day of the first month following the date Reorganized Debtor obtains the New Siuslaw Loan (the "Funding Date") and continuing on the tenth day of each month thereafter through and including the 36th month following the Funding Date. Commencing on the tenth day of the 37th month after the Funding Date and continuing on the tenth day of each month thereafter until the New Siuslaw Loan has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the New Siuslaw Loan based on a 25 year amortization schedule, with a balloon payment of all unpaid principal and interest due on the Maturity Date. Other than the establishment of the cash reserve account described above, the Reorganized Debtor may use the proceeds of the New Siuslaw Loan for any purpose without restriction.

　　　　6.3　　Operating Revenues. Reorganized Debtor will fund payments to its Creditors from proceeds of asset sales implemented during the Bankruptcy Cases, the net operating income generated from Reorganized Debtor's continued business operations, and from the future sale or refinancing of assets of Reorganized Debtor from time to time. A core aspect of Debtor's business is marketing and selling real property acquired by Debtor from time to time. Reorganized Debtor will continue to market and sell real its real property assets in the ordinary course of business to fund continued business operations and to fund payments required under this Plan. Such sales may occur without further order of the Bankruptcy Court.

　　　　6.4　　Sales or Refinancing of Real Property Collateral. Without limiting Article 6.3 above, and except as set forth with respect to a particular Creditor under the Plan, Reorganized Debtor may at any time sell or refinance Collateral that secures a Secured Claim free and clear of any lien of the Creditor in such Collateral provided that on or before the closing of the sale of such Collateral Reorganized Debtor pays in full the Allowed Secured Claim of such Creditor that is

secured by the Collateral.  Any excess net proceeds from the sale or refinancing of such Collateral shall be paid to Reorganized Debtor (or as otherwise directed by Reorganized Debtor) and may be used by Reorganized Debtor to fund Reorganized Debtor's continued business operations and to fund payments required under this Plan.  Such sales or refinancing may occur without further order of the Bankruptcy Court.

        6.5      <u>Marketing and Sales of Non-Core Assets</u>.  In addition to marketing and selling its real property assets in the ordinary course of its business, Reorganized Debtor may market and sell its non-core assets on an accelerated basis as is necessary or appropriate to ensure that Reorganized Debtor will have sufficient funds to make all payments required of Debtor under this Plan.  Without limiting the preceding, if at any time Reorganized Debtor determines in its discretion that it may not have sufficient funds to make any upcoming payment required under this Plan, Reorganized Debtor will before such payment is due sell at public auction one or more of Reorganized Debtor's Non-core assets to raise the funds necessary to make the required Plan payment.  Such auctions and sales may occur without further order of the Bankruptcy Court.

        6.6      <u>Setoffs</u>.  Reorganized Debtor may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever which Debtor or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim Debtor or Reorganized Debtor may have against such holder.

        6.7      <u>Corporate Action</u>.  Upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the execution, delivery, and performance of all documents and agreements relating to the Plan, and any of the foregoing.  On the Effective Date, the appropriate officers of Reorganized Debtor are authorized and directed to execute and deliver any and all agreements, documents, and instruments contemplated by the Plan and/or the Disclosure Statement in the name of and on behalf of Reorganized Debtor.

        6.8      <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.9    Deposits. All utilities holding a utility deposit obtained as a result of this Bankruptcy Case shall immediately after the Effective Date return or refund such utility deposit to Reorganized Debtor.  At the sole option of Reorganized Debtor, Reorganized Debtor may apply any such utility deposit that has not been refunded to Reorganized Debtor in satisfaction of any payments due or to become due from Reorganized Debtor to a utility holding such a utility deposit.  All escrow deposits made by the Debtor for prospective purchases of property which did not close prior to the Effective Date (the "Arlie Escrow Deposits") and which have not been returned to the Debtor as of the Effective Date, shall be turned over to Reorganized Debtor immediately after the Effective Date for its own account.

6.10    Event of Default; Remedy. Any failure by Reorganized Debtor to perform any term of this Plan, which failure continues for a period of ten Business Days following receipt by Reorganized Debtor of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, both the holder of an Allowed Claim to whom performance is due and the Reorganized Debtor shall each have all rights and remedies granted by law, this Plan or any agreement between the holder of such Claim and Debtor or Reorganized Debtor.  An Event of Default with respect to one Creditor shall not be an Event of Default with respect to any other Creditor.  Notwithstanding the foregoing, in the event of a failure to perform any term of this Plan with respect to a Class 11 or Class 12 Claim, the Unsecured Creditors' Committee may provide the Reorganized Debtor with written notice of an Event of Default on behalf of the holder of such Unsecured Claim.

6.11    Continuation of Unsecured Creditors' Committee. To the extent that one or more members of the Unsecured Creditors' Committee agrees to continue to serve on the Unsecured Creditors' Committee following the Effective Date, the Unsecured Creditors' Committee will continue in existence following the Effective Date for so long as any such members continue to agree to serve on such Unsecured Creditors' Committee.  For so long as such Unsecured Creditors' Committee remains in existence, Reorganized Debtor will provide to the Unsecured Creditors'

Committee a quarterly compliance certificate executed by the Chief Financial Officer of Reorganized Debtor that certifies that either (i) the Reorganized Debtor is in full compliance with the Plan, or (ii) the Reorganized Debtor is not in full compliance with the Plan. The first such compliance certificate shall be delivered to the Unsecured Creditors' Committee 45 days after the end of the third month following the Effective Date and each quarterly compliance certificate shall be delivered 45 days after the end of each subsequent three month period, unless another quarterly schedule is agreed to by and between the Reorganized Debtor and the Creditors' Committee. If the Reorganized Debtor is not in full compliance with the Plan, the Reorganized Debtor shall state what steps are being taken to remedy or cure any non-compliance with the Plan. In addition, provided that the members of the continuing Unsecured Creditors' Committee have executed in favor of Reorganized Debtor a confidentiality and non-disclosure agreement in form and substance satisfactory to Reorganized Debtor in its reasonable discretion, Reorganized Debtor shall provide annual reviewed financial statements to the Unsecured Creditors' Committee. Upon payment in full of all Allowed General Unsecured Claims, the Unsecured Creditors' Committee shall automatically cease to exist. During the existence of the Unsecured Creditors' Committee, the Unsecured Creditors' Committee may retain legal or other advisors to assist the Unsecured Creditors' Committee, and Reorganized Debtor will pay the fees and expenses of such advisors, not to exceed $10,000 in the aggregate in any 12 month period, in the ordinary course of business, provided that any dispute concerning such fees and expenses shall be resolved by the Bankruptcy Court or other court of competent jurisdiction.

<div align="center">

**ARTICLE VII**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

7.1    <u>Assumption and Rejection</u>.  Except as may otherwise be provided in the Plan Supplement, all executory contracts and unexpired leases of Debtor which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by Reorganized Debtor on the Effective Date. The Confirmation Order shall constitute an order authorizing assumption of all executory contracts and unexpired leases except for those otherwise specifically rejected or otherwise provided for in the Plan Supplement or subject to other Court

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Order or pending motion.  Reorganized Debtor shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any monetary defaults for executory contracts and unexpired leases being assumed and shall perform its obligations under such assumed executory contracts and unexpired leases from and after the Effective Date in the ordinary course of business.

       7.2    <u>Assignment</u>.  To the extent necessary, all assumed executory contracts and unexpired leases shall be deemed assigned to Reorganized Debtor as of the Effective Date.  The Confirmation Order shall constitute an order authorizing such assignment of assumed executory contracts and unexpired leases, and no further assignment documentation shall be necessary to effectuate such assignment.

       7.3    <u>Rejection Claims</u>.  Rejection Claims must be Filed no later than 30 days after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the entry of the Confirmation Order, whichever is sooner.  Any such Rejection Claim not Filed within such time shall be forever barred from asserting such Claim against Debtor, Reorganized Debtor, its property, estates, and any guarantors of such obligations.  Each Rejection Claim resulting from such rejection shall constitute a General Unsecured Claim or a Small Unsecured Claim, as applicable.

       7.4    <u>Compensation and Benefit Programs</u>.  Except to the extent restricted by the Plan, all employee compensation and benefit plans, policies and programs of Debtor applicable generally to its employees as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, stock incentive plans, and life, accidental death and dismemberment insurance plans, shall continue in full force and effect, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate any of the foregoing arrangements.

## ARTICLE VIII

## EFFECT OF CONFIRMATION

       8.1    <u>Binding Effect</u>.  The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in the Debtor and the estate assets, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the

commencement of the Bankruptcy Case. The distributions made pursuant to this Plan shall be in full and final satisfaction, settlement, release and discharge of the Allowed Claims on account of which such distributions are made. Confirmation of the Plan shall bind and govern the acts of the Reorganized Debtor whether or not: (i) a proof of Claim or proof of Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim or Interest has accepted the Plan.

8.2     Discharge and Permanent Injunction   Except as otherwise set forth in the Plan, confirmation of the Plan shall discharge the Debtor from all Claims or other debts that arose at any time before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim has accepted the Plan. As of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined, to the full extent provided under Sections 524(a) and 1141 of the Bankruptcy Code, from "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability" of the Debtor or the Reorganized Debtor, except as otherwise set forth in this Plan. Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Debtor that was or could have been commenced before the entry of the Confirmation Order, (b) the enforcement against Reorganized Debtor or its assets of a judgment obtained before the Petition Date, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon all or any part of the assets. Nothing contained in the foregoing discharge shall, to the full extent provided under Section 524(e) of the Bankruptcy Code, affect the liability of any other entity on, or the property of any other entity for, any debt of the Debtor that is discharged under the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.3     Limitation of Liability.  The Debtor and the Reorganized Debtor and each of their respective Agents shall have all of the benefits and protections afforded under Section 1125(e) of the Bankruptcy Code and applicable law.

8.4     Exculpation.  The Debtor, the Reorganized Debtor and each of their respective Agents, shall not be liable to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with the Bankruptcy Case or the negotiation, formulation, development, proposal, disclosure, confirmation or implementation of the Plan and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan, provided, however, that the foregoing provisions shall have no affect on the Tonkon Claims or the liabilities of any person that resulted from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted negligence, breach of fiduciary duty or willful misconduct.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1     Jurisdiction of the Bankruptcy Court.  Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code:

(a)     to resolve controversies and disputes regarding any Avoidance Action,

(b)     to classify the Claim or Interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

(c)     to determine requests for payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed in this Bankruptcy Case,

(d)     to avoid transfers or obligations to subordinate Claims under Chapter 5 of the Bankruptcy Code,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(e)     to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(f)     to resolve controversies and disputes regarding the interpretation of this Plan,

(g)     to implement the provisions of this Plan and enter orders in aid of confirmation,

(h)     to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Bankruptcy Case, and

(i)     to enter a final decree closing this Bankruptcy Case.

9.2     Failure of Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in, or related to this Bankruptcy Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE X

## ADMINISTRATIVE PROVISIONS

10.1     Modification or Withdrawal of the Plan.  Debtor may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time that the Bankruptcy Court has signed the Confirmation Order.  After such time, and prior to the substantial consummation of the Plan, Debtor may, so long as the treatment of holders of Claims and Interests under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

10.2     Revocation or Withdrawal of Plan.  Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtor

or any other Entity or to prejudice in any manner the rights of Debtor or any Entity in any further proceeding involving Debtor.

10.3    Modification of Payment Terms.  The Debtor may modify the treatment of any Allowed Claim or Interest in any manner adverse only to the holder of such Claim or Interest at any time after the Effective Date upon the prior written consent of the person whose Allowed Claim or Interest treatment is being adversely affected.

10.4    Nonconsensual Confirmation.  Debtor shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are met.

10.5    Compromise of Controversies.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of Debtor.

10.6    Final Decree.  At any time following the Effective Date, the Reorganized Debtor shall be authorized to file a motion for the entry of a final decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

11.1    Conditions to Confirmation.  The following are conditions precedent to the confirmation of this Plan:

11.1.1    The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtor;

11.1.2    The Confirmation Order shall be in a form and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

substance reasonably acceptable to the Debtor; and

11.1.3    A written settlement agreement shall have been executed by and among the Debtor, the guarantors of the Debtor's obligations to Umpqua Bank (the "Guarantors") and Umpqua Bank containing the following release terms and agreements not to make a demand, all of which shall be effective as of the Effective Dale: (a) a waiver and release of all claims against Umpqua Bank and its officers and employees by Debtor and the Guarantors; (b) an acknowledgement by the Debtor and the Guarantors that the obligations to Umpqua Bank (as revised by the Plan) are without defense and counterclaim and that the guaranties are fully enforceable; and (c) an agreement by Umpqua Bank that it will not make a demand on the Debtor or the Guarantors for defaults that occurred before the Effective Date.

11.2    Conditions to Effective Date.  The following are conditions precedent to the occurrence of the Effective Date:

11.2.1    The Confirmation Date shall have occurred;

11.2.2    The Confirmation Order shall have become a Final Order;

11.2.3    No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, of made, remains pending;

11.2.4    The Debtor shall have determined that it has sufficient Cash reserves necessary to make all payments required to be made on the Effective Date.

11.3    Waiver of Conditions.  Other than paragraph 11.1.3, the Conditions to Confirmation and the Effective Date may be waived, in whole or in part, by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

# ARTICLE XII

# MISCELLANEOUS PROVISIONS

12.1    Revesting.  Except as otherwise expressly provided herein, on the Effective Date, all property and assets of the estate of Debtor including, without limitation, all Arlie Escrow

Deposits not yet returned to Debtor, shall revest in Reorganized Debtor, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors arising on or before the Effective Date, and Reorganized Debtor may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

12.2    Rights of Action.  Except as otherwise expressly provided herein, any claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or rights of offset, recoupment, subrogation or subordination including, without limitation, the Tonkon Claims, claims under Section 550(a) of the Bankruptcy Code or any of the sections referenced therein (including, without limitation, any and all Avoidance Actions) accruing to Debtor shall remain assets of Reorganized Debtor.  Reorganized Debtor may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for its benefit.

12.3    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

12.4    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtor and Reorganized Debtor shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Reorganized Debtor may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable Reorganized Debtor to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  Pursuant to Section 346(f) of the Bankruptcy Code, the Reorganized shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.

12.5 <u>Time</u>. Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

12.6 <u>Section 1146(c) Exemption</u>. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real property of Debtor or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, including without limitation the sale of any real property by Debtor or Reorganization Debtor (in Hawaii, Oregon or otherwise) pursuant to and in performance of Reorganized Debtors obligations under this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in which any instrument, including any deed conveying any of Reorganized Debtor's interest in any of its real property, hereunder is to be recorded shall, be ordered and directed to accept such instrument without requiring the payment of any conveyance fee, documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax or fee.

12.7 <u>Severability</u>. In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan. To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Debtor, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

12.8 <u>Successors and Assigns</u>. The provisions of the Plan shall bind Debtor,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Reorganized Debtor and all holders of Claims and Interests, and their respective successors, heirs and assigns.

12.9   <u>Notices to Claim and Interest Holders.</u>  Notices to Persons holding a Claim or Interest will be sent to the addresses set forth in such Person's proof of Claim or Interest or, if none was filed, at the address set forth in the Schedules.

12.10   <u>Post Effective-Date Notices.</u>  Following the Effective Date, notices will only be served on the Reorganized Debtor, the Office of the United States Trustee, the Unsecured Creditors' Committee and those persons who file with the Court and serve upon the Reorganized Debtor a request, which includes such person's name, contact person, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters.  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Case will not receive notice of post-Effective Date matters unless such persons file a new request with the Bankruptcy Court.

12.11   <u>Retiree Benefits.</u>  On or after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code, maintained or established by Debtor prior to the Effective Date, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate the foregoing arrangements.

12.12   <u>Provisions Enforceable</u>.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan is valid and enforceable in accordance with its terms.

12.13   <u>Recordable Order</u>.  The Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

12.14   <u>Plan Controls</u>.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

12.15 <u>Delivery of Promissory Notes</u>. To the extent that this Plan provides for Reorganized Debtor to deliver a promissory note to a Secured Creditor in connection with an Allowed Secured Claim, except as otherwise specifically provided in this Plan or in any note or document delivered in connection with this Plan, this Plan and any note or other document delivered in connection herewith shall replace and supersede all pre-petition notes, loan agreements, trust deeds, security documents or other documents executed by Debtor in connection with the obligations giving rise to the Allowed Claim. The Reorganized Debtor shall provide the Unsecured Creditors' Committee with copies of any such promissory notes or other security documents executed pursuant to the Plan. Unless otherwise provided in this Plan, each Creditor will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date. Accordingly, unless otherwise provided in this Plan, the validity and priority of any trust deed or other security document executed in connection with the obligations giving rise to the Creditor's Allowed Claim will not be impaired by this Plan. However, except as otherwise specifically provided in this Plan, to the extent that any such trust deed or other security document contains any provisions that impose any covenants, requirements or obligations on Debtor or Reorganized Debtor that are not specifically provided for or contained in, or are otherwise inconsistent with, this Plan, then such provisions shall be of no force and effect.

12.16 <u>Effectuating Documents and Further Transactions</u>. Debtor and Reorganized Debtor shall execute, deliver, file or record such contracts, instruments, assignments, and other agreements or documents, and take or direct such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

DATED this 14th day of February, 2011.

Respectfully submitted,

ARLIE & COMPANY

By /s/ Scott Diehl
    Scott Diehl, Chief Financial Officer

PACHULSKI STANG ZIEHL & JONES LLP


By /s/ John D. Fiero
    John D. Fiero, (CA Bar No. 136557)
    Linda F. Cantor, (CA Bar No. 153762)
    Attorneys for Debtor

## CERTIFICATE OF SERVICE

I, Diane H. Hinojosa, declare as follows:

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and am not a party to this action.  My business address is 10100 Santa Monica Boulevard, Suite 1100, Los Angeles, California.

I certify that on February 14, 2011, I caused to be served the **DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION (FEBRUARY 14, 2011)** by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users and by U.S. mail to the attached service list.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 14, 2011, at Los Angeles, California.

<div align="right">

_____/s/ *Diane H. Hinojosa*_____
Diane H. Hinojosa

</div>

Label Matrix for local noticing
0979-6
Case 10-60244-aer11
District of Oregon
Eugene
Mon Feb 14 08:36:04 PST 2011

American Express Bank FSB
c/o becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Arlie & Company
2911 Tennyson Ave., #400
Eugene, OR 97408-4693

Century Bank
c/o Michael Butler
P.O. Box 769
Eugene, OR 97440-0769

Gartland, Nelson, McCleery, Wade & Walloch,
44 Club Road, Suite 200
Eugene, OR 97401-2460

WmThomas Construction
POB 2409
Florence, OR 97439-0155

405 E 8th Ave #2600
Eugene, OR 97401-2725

2 form Architecture
121 Lawrence St
Eugene, OR 97401-2221

AT&T
Global Imaging Center
POB 1828
Alpharetta, GA 30023-1828

Abdulaziz Al-Sabah
2750 Shadow View Dr.
#425
Eugene, OR 97408-4644

Abee Windows Screens & Glass
795 River Ave #B
Eugene, OR 97404-2539

Acocella Tile Inc
7967 Thurston Rd
Springfield, OR 97478-9680

Adam & Allison Lesh
2750 Shadow View Dr.
#211
Eugene, OR 97408-4641

Adam Grosowsky
1675 Crest Dr
Eugene, OR 97405-1988

Adam H. Falk,
584 Romie Howard Rd
Yoncalla, OR 97499-9704

Ajeet & Kartar Khalsa & William Zaworsk
2751 Shadow View Dr #412
Eugene, OR 97408-4671

Al King Securities, LLC
2745 Shadow View Dr.
Eugene, OR 97408-4610

Alice Smith
32624 Christian Way
Coburg, OR 97408-9255

All Bright Carpet Cleaning
30 Honor Loop
Creswell, OR 97426-9899

Allstate Real Estate
24957 Hwy. 126
Veneta, OR 97487-9459

Amanda Ostrom
2751 Shadow View Dr #333
Eugene, OR 97408-4662

Amanda Porte & Audrey Geib
2751 Shadow View Dr #334
Eugene, OR 97408-4662

American Medical Concepts
2650 Suzanne Way, Suite 130
Eugene, OR 97408-7619

American Medical Concepts Inc
28050 SW Boberg Rd
Wilsonville OR 97070-7200

Amy Miller
POB 1327
Franklin, TN 37065-1327

Andrea Garcia
2751 Shadow View Dr #432
Eugene, OR 97408-4671

Angela Copeland
2750 Shadow View Dr.
#335
Eugene, OR 97408-4643

Anna Gasperowicz
2750 Shadow View Dr.
#332
Eugene, OR 97408-4643

Anna Hu
2750 Shadow View Dr.
#423
Eugene, OR 97408-4644

Apartment Guide
Consumer Source Inc
POB 402039
Atlanta, GA 30384-2039

April Peterson
2751 Shadow View Dr #232
Eugene, OR 97408-4661

Arlene Cancel
2750 Shadow View Dr.
#435
Eugene, OR 97408-4644

Associated Heating & A/C Inc
3981 W 12th Ave
Eugene, OR 97402-5622

B2 Wine Bar
2794 Shadow View Dr
Eugene OR 97408-4610

Balzhiser & Hubbard Inc
100 West 13th Ave
Eugene, OR 97401-3433

Bank of America NA
c/o Daniel P Pepple
Pepple Johnson Cantu & Schmidt PLLC
1501 Western Ave #600
Seattle WA 98101-3501

Beehive Rental Company
POB 25139
Eugene, OR 97402-0446

Bell Hardware
208 Madison
Eugene, OR 97402-5033

Berry Architects
460 East Second Ave
Eugene, OR 97401-2419

Blink New Media
86152 Garden Valley Rd
Eugene, OR 97405-9640

Bob Cherney
2751 Shadow View Dr #234
Eugene, OR 97408-4661

Bonne Chance Bistro
POB 41707
Eugene OR 97404-0500

Braun Landscape Inc
POB 2671
Eugene, OR 97402-0223

Brent Dorman
2751 Shadow View Dr #331
Eugene, OR 97408-4662

Brittany & Tracy Thompson
2750 Shadow View Dr.
#312
Eugene, OR 97408-4643

Brooke Conlon
2750 Shadow View Dr.
#223
Eugene, OR 97408-4642

Brothers Cleaning Services Inc
582 Shelley St
Springfield, OR 97477-1967

Bruce Moore
2751 Shadow View Dr #212
Eugene, OR 97408-4640

Buck's Sanitary Service
POB 21527
Eugene, OR 97402-0409

Builder's Electric Inc
195 Madison St
Eugene, OR 97402-5030

Burr, Pilger & Mayer LLP
Two Palo Alto Square
Palo Alto, CA 94306-2122

Burrell Bros. Electric
POB 697
Walterville, OR 97489-0697

Buster Messmer
3082 Kinney Lp.
Eugene, OR 97408-5024

C & K Market
615 5th St
Brookings OR 97415-9199

CC Reporting & Videoconferencing
172 E 8th Ave
Eugene, OR 97401-2921

CPM Development Corp. dba Eugene Sand & Grav
c/o Atty Douglas L Gallagher
423 Lincoln St
Eugene OR 97401-2516

Camas Landscaping Service
POB 42284
Eugene, OR 97404-0600

Carolyn R. Chatman
29840 Willow Ck. Rd #23
Eugene, OR 97402-9186

Carter's Window Coverings
4257 Barger Dr #141
Eugene, OR 97402-1310

Casey Torstenson
2750 Shadow View Dr.
#310
Eugene, OR 97408-4656

| | | |
|---|---|---|
| Cassandra Champion<br>2802 Kinney Lp.<br>Eugene, OR 97408-5022 | Cavanagh Ent LLC / Century Lighting<br>550 G Shelley St<br>Springfield OR 97477-1999 | Central Coast Disposal Inc<br>POB 1629<br>Florence, OR 97439-0105 |
| Central Lincoln PUD<br>2129 N. Coast Hwy<br>Newport, OR 97365-1705 | Central Print<br>47 West 5th<br>Eugene, OR 97401-2675 | Century Bank<br>POB 769<br>Eugene, OR 97440-0769 |
| Cessna Aircraft Co<br>23260 Network Pl<br>Chicago, IL 60673-1232 | Chad Westphal<br>2750 Shadow View Dr.<br>#320<br>Eugene, OR 97408-4643 | Chambers Construction<br>3028 Judkins Rd<br>Eugene, OR 97403-2226 |
| Charlene & Nykolas Westbrook<br>2750 Shadow View Dr.<br>#231<br>Eugene, OR 97408-4642 | Charles Thurston<br>2863 Lord Byron Pl.<br>Eugene, OR 97408-4636 | Chase Connor & Ashley Delp<br>2750 Shadow View Dr.<br>#224<br>Eugene, OR 97408-4642 |
| Child Center, The<br>3995 Marcola Rd<br>Springfield, OR 97477-7948 | Chris Blanchard<br>3108 Kinney Lp.<br>Eugene, OR 97408-5025 | Christenson Electric Inc<br>POB 13010<br>Eugene, OR 97440-0032 |
| Christina Friesen<br>2751 Shadow View Dr #322<br>Eugene, OR 97408-4662 | City of Eugene<br>Financial Services<br>Eugene, OR 97440 | City of Florence<br>250 Hwy 101<br>Florence, OR 97439-7628 |
| City of Veneta<br>88184 8th St<br>Veneta, OR 97487-9797 | City of Veneta<br>88184 Eighth St<br>Veneta, OR 97487-9797 | Comcast<br>POB 34744<br>Seattle, WA 98124-1744 |
| Comfort Flow Heating<br>1951 Don St<br>Springfield, OR 97477-1993 | Comstock & Assoc Inc<br>POB 70690<br>Eugene, OR 97401-0134 | Construction Specialties Inc<br>POB 415278<br>Boston, MA 02241-5278 |
| Construction Specialties Inc<br>c/o Commercial Collection Corp<br>POB 288<br>Tonavanda NY 14151-0288 | Consumer Source Holding, Inc.<br>c/o Greg A. Pfister<br>720 SW Washington St. #750<br>Portland, OR 97205-3509 | Cornerstone Caf<br>2729 Shadow View Dr<br>Eugene OR 97408-4610 |
| Costco Credit Account<br>POB 5219<br>Carol Stream, IL 60197-5219 | County Transfer & Recycling<br>Dept 1433<br>Los Angeles, CA 90084-0001 | County of Hawaii Finance Dept<br>25 Aupuni St #2103<br>Hilo HI 96720-4245 |

Courtney Jacobs
2750 Shadow View Dr.
#225
Eugene, OR 97408-4642

Creative Commercial Environments Inc
4219 West 5th Ave
Eugene, OR 97402-5306

Crescent Village Restaurants LLC
2911 Tennyson Ave #400
Eugene OR 97408-4693

Cyndy Stechelin
2850 Kinney Lp.
Eugene, OR 97408-5022

Dairy Queen/T&C Investments
24943 Hwy. 126
Veneta, OR 97487-9459

Dave Stearns
2750 Shadow View Dr.
#331
Eugene, OR 97408-4643

David Dowd
2750 Shadow View Dr.
#230
Eugene, OR 97408-4642

Del Oeste Equine Hospital
90238 Prairie Rd
Eugene, OR 97402-9606

Delta Landscape & Irrigation
POB 40217
Eugene, OR 97404-0029

DiMar Real Estate
24957 Hwy 126
Veneta OR 97487-9459

Donald & Christine Wilson
2853 Lord Byron Pl.
Eugene, OR 97408-4636

Donald & Derek Hadley
2750 Shadow View Dr.
#212
Eugene, OR 97408-4641

Donald Kaipus
2750 Shadow View Dr.
#232
Eugene, OR 97408-4642

Douglas County Assessor
1036 SE Douglas Ave
Roseburg, OR 97470-3396

Douglas County Tax Collector
POB 5710
Portland, OR 97228-5710

Douglas County Tax Collector
POB 850
Roseburg OR 97470-0205

Downtown Athletic Club
999 Willamette St
Eugene, OR 97401-3100

Edward Zancanella
2750 Shadow View Dr.
#424
Eugene, OR 97408-4644

Ehler's Construction
1085 Madeira St
Eugene, OR 97402-2087

Electrical Services & Construction Inc
3986 Carnes Rd
Roseburg OR 97471-4522

Elizabeth Brody
2751 Shadow View Dr #336
Eugene, OR 97408-4671

Embarq
POB 660068
Dallas, TX 75266-0068

Emerald Excavating
4250 West 5th Ave
Eugene, OR 97402-5306

Emerald People's Utility Board
33733 Seavey Loop Rd
Eugene, OR 97405-9602

Emerald Valley Sweeping
POB 41113
Eugene, OR 97404-0303

Empire Group
1410 NW Kearney St #1021
Portland, OR 97209-2772

Erica & Joshua Rich
2751 Shadow View Dr #223
Eugene, OR 97408-4661

Erin Lynch & Michael Johnson
2751 Shadow View Dr #213
Eugene, OR 97408-4640

Essential Building Technologies
Attn: Scott Conley
600 SE Maritime Ave #240
Vancouver, WA 98661-9303

Eugene Area Chamber
1401 Willamette St
Eugene, OR 97401-4003

| | | |
|---|---|---|
| Eugene Magazine<br>1400 High St #C-3<br>Eugene, OR 97401-4192 | Eugene Rotary Club<br>132 E Broadway #732<br>Eugene, OR 97401-3137 | Eugene Sand & Gravel Inc<br>POB 1067<br>Eugene, OR 97440-1067 |
| Eugene Water & Electric Board<br>POB Box 10148<br>Eugene, OR 97440-2148 | Evergreen Land Title Co<br>1651 Centennial Blvd<br>Springfield OR 97477-3363 | Executive Cleaning Service<br>POB 70606<br>Eugene, OR 97401-0131 |
| Eye Beam Event Services<br>POB 427<br>Springfield, OR 97477-0063 | Fabrication & Mechanical Group<br>POB 42173<br>Eugene OR 97404-0581 | FedEx Customer Information Svc<br>Attn Revenue Recovery/Bkcy<br>3965 Airways Blvd Module G 3rd Fl<br>Memphis TN 38116-5017 |
| Federal Express<br>POB 7221<br>Pasadena, CA 91109-7321 | Fern Ridge Chamber of Commerce<br>POB 335<br>Veneta, OR 97487-0335 | Fifth Third Bank<br>c/o Daniel J Carragher<br>Day Pitney LLP<br>One International Plaza<br>Boston MA 02110-3179 |
| Figaro's Pizza<br>88340 Territorial Rd<br>Veneta OR 97487-9401 | Firas Abduljawad<br>2750 Shadow View Dr.<br>#323<br>Eugene, OR 97408-4643 | Fireman's Fund Insurance<br>POB 7166<br>Pasadena, CA 91109-7166 |
| Flightcraft<br>POB 5077<br>Portland, OR 97208-5077 | Flightcraft Inc<br>7777 NE Airport Way<br>Portland OR 97218-1025 | Francis G. Cline<br>c/o Emerald Exchange<br>240 E. 15th<br>Eugene, OR 97401-4167 |
| GE Capital Corp<br>POB 31001-0802<br>Pasadena, CA 91110-0001 | Garrett James<br>3004 Kinney Lp.<br>Eugene, OR 97408-5024 | Gartland Nelson McCleery<br>44 Club Rd, # 200<br>Eugene, OR 97401-2460 |
| Geoffrey & Pearlenna Walser<br>2751 Shadow View Dr #430<br>Eugene, OR 97408-4671 | George Edward Seaman III<br>1735 Lexington Ave<br>Eugene OR 97403-2383 | Gerald Druliner<br>2750 Shadow View Dr.<br>#336<br>Eugene, OR 97408-4644 |
| Glumac<br>Attn: Kevin Dow<br>320 SW Washington St<br>Portland, OR 97204-2640 | Great Basin Insurance<br>1140 Willagillespie Rd #15<br>Eugene OR 97401-6701 | Greg Stewart<br>Consumer Source Holding Co Inc<br>3585 Engineering Dr<br>Norcross GA 30092-2831 |
| Guard Publishing<br>POB 10188<br>Eugene, OR 97440-2188 | Guardian Pest Control<br>POB 40385<br>Eugene, OR 97404-0060 | HD Supply Facilities Maintenance<br>POB 509058<br>San Diego, CA 92150-9058 |

```
HS Restaurant, LLC                    HSBC Bank Nevada, N.A.                 Haas Contracting Inc
4351 NW Boxwood Dr.                    Bass & Associates, P.C.               4660 Main St #340
Corvallis, OR 97330-3382              3936 E. Ft. Lowell Rd., Suite 200     Springfield, OR 97478-4015
                                      Tucson, AZ 85712-1083


Harvey & Price                        Hawaii County Dept of Finance         Hawaii Forest Industry Assn
POB 1910                              Real Property Tax Div                 POB 5594
Eugene, OR 97440-1910                 Attn: Stanley Sitko, Administator     Kailua-Kona, HI 96745-5594
                                      101 Pauahi St #4
                                      Hilo, HI 96720-4224


Heinke Wholesalers                    Herbert D. McKillop                   Hohbach-Lewin Inc
645 Adams St                          c/o Emerald Exchange                  260 Sheridan Ave #150
Eugene, OR 97402-5120                 240 E. 15th                           Palo Alto, CA 94306-2008
                                      Eugene, OR 97401-4167


Hollywood Video                       Home Depot                            Housing Options
9275 W Payton Lane                    POB 6029                              2751 Shadow View Dr #433
Wilsonville OR 97070-9200             The Lakes, NV 89163-0001              Eugene, OR 97408-4671


Hugh McNair Tobin                     IKON Office Services                  (p)INTERNAL REVENUE SERVICE
2873 Lord Byron Pl.                   1516 West 17th St                     CENTRALIZED INSOLVENCY OPERATIONS
Eugene, OR 97408-4636                 #103                                  PO BOX 7346
                                      Tempe, AZ 85281-6218                  PHILADELPHIA PA 19101-7346


Ikon Office Solutions                 Inkwell Medical Gorup, LLC            Integra Telecom
Accounts Receivable Ctr               2911 Tennyson Ave.                    1201 NE Lloyd Blvd
Attn Bkcy Team                        #201                                  #500
3920 Arkwright Rd #400                Eugene, OR 97408-4393                 Portland, OR 97232-1259
Macon GA 31210-1748


Interior Technology                   Ipsenault                            Iron Mountain Information Management, Inc.
POB 80400                             3791 River Rd North #F                ATTN: Joseph Corrigan, Esquire
Portland, OR 97280-1400               Keizer, OR 97303-4824                 745 Atlantic Avenue, 10th Floor
                                                                            Boston, MA 02111-2735


Iron Mountain Information Management, Inc.   Iron Mountain Records Mgmt      Ixtapa Mexican Restaurant
c/o Frank F. McGinn, Esq.             POB 27128                             24965 Hwy 126
Bartlett Hackett Feinberg P.C.        New York, NY 10087-7128               Veneta OR 97487-9459
155 Federal Street, 9th Floor
Boston, MA 02110-1610


J.C. Oil Company                      JB Electric Inc                       JC Laundry West Lane
3804 West 11th Ave                    4685 Isabelle St                      3561 Crocker Rd
Eugene OR 97402-3056                  Eugene, OR 97402-9765                 Eugene Or 97404-1696


JRH Engineering                       James Heating & Air Conditioning      Jeff King Contractor
4765 Village Plaza Loop               115 Lawrence St                       POB 798
Eugene, OR 97401-6676                 Eugene, OR 97401-2221                 Lebanon, OR 97355-0798
```

Jeff Markee
2751 Shadow View Dr #414
Eugene, OR 97408-4671

Jennifer Gazo
2751 Shadow View Dr #220
Eugene, OR 97408-4661

Jerry's Home Improvement Center
POB 2611
Eugene, OR 97402-0228

Jesse & Joyce VanHall
2751 Shadow View Dr #236
Eugene, OR 97408-4661

Jessica Foleck
2750 Shadow View Dr.
#430
Eugene, OR 97408-4644

Jessica Pittman
2751 Shadow View Dr #221
Eugene, OR 97408-4661

Jessica Schultz
2750 Shadow View Dr.
#236
Eugene, OR 97408-4642

Jessie Hannah
2751 Shadow View Dr #214
Eugene, OR 97408-4661

Joanna Gonzales & Otto Radke
2751 Shadow View Dr #411
Eugene, OR 97408-4671

John J. Musumeci
2911 Tennyson Ave #400
Eugene OR 97408-4693

John Schwind
2750 Shadow View Dr.
#233
Eugene, OR 97408-4642

Jon & Emily Johnston
2751 Shadow View Dr #238
Eugene, OR 97408-4661

Joon Park Meen & Cho Yoon
2751 Shadow View Dr #235
Eugene, OR 97408-4661

Joseph Noviello
2729 Coburg Rd.
Eugene, OR 97408-4605

Joshua Kermisch
2993 Lord Byron Pl.
Eugene, OR 97408-4638

Joy's Uptown Style
2734 Shadow View Dr.
Eugene, OR 97408-4610

Juan Heredia
2751 Shadow View Dr #337
Eugene, OR 97408-4671

Judith Burke
2751 Shadow View Dr #313
Eugene, OR 97408-4662

Julie Lostritto
2750 Shadow View Dr.
#333
Eugene, OR 97408-4643

KEZI
POB 7009
Eugene, OR 97401-0009

KPFF Consulting Engineers
111 SW Fifth #2500
Portland, OR 97204-3628

Kai Felton
2750 Shadow View Dr.
#325
Eugene, OR 97408-4643

Karen L. Merwin
35379 McKenzie View Dr
Springfield, OR 97478-8709

Katherine Watkinson
2751 Shadow View Dr#237
Eugene, OR 97408-4661

Kathryn & Kenneth Bell
2751 Shadow View Dr #323
Eugene, OR 97408-4662

Keith Schneider
2750 Shadow View Dr.
#321
Eugene, OR 97408-4643

Kelli Fowler
2750 Shadow View Dr.
#330
Eugene, OR 97408-4643

Kimberly Nickelson
2750 Shadow View Dr.
#234
Eugene, OR 97408-4642

Kimberly Rhoades
2750 Shadow View Dr.
#432
Eugene, OR 97408-4644

King County Int'l Airport
7277 Perimeter Rd S
Seattle WA 98108-3844

Kristen Mack
2751 Shadow View Dr #231
Eugene, OR 97408-4661

Kyounga, Connie, Bella & Priya Song
2751 Shadow View Dr #312
Eugene, OR 97408-4662

LDN Comfort LLC
1956 Woodson Loop
Eugene, OR 97405-7019

Lago Blu Gelato
2780 Shadow View Dr.
Eugene, OR 97408-4610

Lamar Advertising Co
Attn Credit Dept
POB 66338
Baton Rouge LA 70896-6338

Lane Council of Government
859 Willamette St
Eugene, OR 97401-2910

Lane County
Solid Waste Management Div
3040 Delta Hwy North
Eugene, OR 97408-1696

Lane County Assessment & Taxation
125 E. 8th Ave
Eugene, OR 97401-2968

Lane County Glass
1369 W. 6th St
Eugene, OR 97402-4576

Lanz Cabinets
3025 W 7th Pl
Eugene, OR 97402-6911

Larry Tardie
2751 Shadow View Dr #423
Eugene, OR 97408-4671

Laurie Cole
2751 Shadow View Dr #436
Eugene, OR 97408-4680

Linda Mccord
2750 Shadow View Dr.
#433
Eugene, OR 97408-4644

Linda S. Trickey
83780 Raintree
Creswell, OR 97426-9439

Lindsey M. Kruger
1784 Cal Young Rd #2013
Eugene, OR 97401-2001

Lucas & Natalie Winder
2750 Shadow View Dr.
#421
Eugene, OR 97408-4644

Lucy Nelson
2750 Shadow View Dr.
#436
Eugene, OR 97408-4645

Lydia & Martin Foster
2751 Shadow View Dr #420
Eugene, OR 97408-4671

MG Midwest/Movie Gallery
24972 Hwy 126
Veneta OR 97487

Macenzi's Too Bar & Grill
POB 40818
Eugene OR 97404-0140

Mackenzie Stewart & Caleb Tommasini
2750 Shadow View Dr.
#311
Eugene, OR 97408-4643

Mailelani Clark
2750 Shadow View Dr.
#334
Eugene, OR 97408-4643

Marion County Assessor
555 Court St Northeast
Salem, OR 97301-3736

Marion County Tax Collector
POB 2511
Salem OR 97308-2511

Marion County Tax Collector
POB 3416
Portland, OR 97208-3416

Mark A. Miksis,
3265 Van Buren
Eugene, OR 97405-2325

Market of Choice
2580 Willakenzie Rd
Eugene, OR 97401-4805

Marsha K. Westling
510 Dartmoor Dr
Eugene, OR 97401-5730

Marti Chaney
2750 Shadow View Dr.
#434
Eugene, OR 97408-4644

Martin Ball
2750 Shadow View Dr.
#220
Eugene, OR 97408-4641

Martina Young; Emily Alison & Lyndsi Ka
2750 Shadow View Dr.
#438
Eugene, OR 97408-4645

Mary Lokkesmoe
2750 Shadow View Dr.
#237
Eugene, OR 97408-4642

McCormack Enterprises
PO Box 51600
Eugene, OR 97405-0910

McKenzie Glass Inc
2219 Main St
Springfield, OR 97477-5073

McKenzie River Assoc LLC
1186 Olive St
Eugene, OR 97401-3547

McKillop II Limited Partnership
c/o Hamilton W Budge Jr PC
725 Country Club Rd
Eugene OR 97401-6008

Megan Budge
2751 Shadow View Dr #321
Eugene, OR 97408-4662

Mezza Luna CV, Inc.
2776 Shadow View Dr.
Eugene, OR 97408-4610

Michael Cahn
2931 Lord Byron Pl.
Eugene, OR 97408-4638

Michael K. Cooper
POB 582
Florence, OR 97439-0020

Michael P. Kearney, PC
POB 1758
Eugene, OR 97440-1758

Mid-State Industrial Inc
88696 McVay Hwy
Eugene, OR 97405-9698

Mid-Valley Glass & Millwork
Stephanie Thompson
POB 2666
Eugene, OR 97402-0245

Miller's Custom Services Inc
POB 40023
Eugene, OR 97404-0001

Monica Deshpande
2751 Shadow View Dr #335
Eugene, OR 97408-4662

Monica Tallerday
2035 Alder St
Eugene, OR 97405-2939

My Coffee
POB FF
Springfield OR 97477-0082

NW Farm Credit Services
2911 Tennyson Ave #301
Eugene OR 97408-4693

Nada & Lamees Alharthi
2751 Shadow View Dr #431
Eugene, OR 97408-4671

Napa County Airport
2030 Airport Rd
Napa, CA 94558-6208

National Surety Corp
Attn: Debbie Holstedt
777 San Marin Dr
Novato, CA 94945-1345

Navigators Specialty Ins Co
The Navigators Group Inc
One Penn Plaza
32nd Fl
New York, NY 10119-3299

New Way Electric Inc
POB 21503
Eugene, OR 97402-0409

Nina's Pony Espresso
PO Box 823
Veneta, OR 97487-0823

Nora N. Mitchell,
940 Diamond Hill Rd
Harrisburg, OR 97446-9739

Northwest Elevator Company
Dept LA 21592
Pasadena, CA 91185-0001

Northwest Natural Gas
220 NW 2nd Ave
Portland, OR 97209-3991

Northwest Wall Systems Inc
751 River Ave
Eugene, OR 97404-2514

ODR Bkcy
955 Center NE #353
Salem, OR 97301-2553

Oldfield's Appliance
1465 West 7th Ave
Eugene, OR 97402-4423

Omlid & Swinney
157 S 47th St
Springfield, OR 97478-6625

Oregon Cardiology
4480 Hwy 101 #102
Florence OR 97439-8831

Oregon Water Services Inc
30086 Federal Ln
Eugene OR 97402-9763

Otis Elevator
975 Oak St
Eugene, OR 97401-3136

Otis Elevator Co et al
Attn Treasury Svc-Credit/Coll 1st Fl
1 Farm Springs
Farmington CT 06032-2572

Pacific Air Comfort Inc
POB 790
Roseburg, OR 97470-0161

Pacific Environmental Group Inc
POB 22306
Eugene, OR 97402-0417

Pacific Power
POB 25308
Salt Lake City UT 84125-0308

Pacific Power & Light
825 NE Multnomah
Portland, OR 97232-2135

Pacific Source
2751 Shadow View Dr #233
Eugene, OR 97408-4661

Pacific Source
POB 7068
Eugene, OR 97401-0068

Parties to Go
1022 Green Acres Rd
Eugene, OR 97408-6501

Patricia A. Stroh
734 D St
Springfield, OR 97477-4737

Paul J. Drakes
2 Sawmill Ln.
Ashbury, NJ 08802-1219

Pension Planners Northwest
71 Centennial Loop
Eugene, OR 97401-2443

Pioneer Asset Investment Limited
c/o Wilson C. Muhlheim, Attorney at Law
88 E. Broadway
Eugene, Oregon 97401-3135

Pioneer Asset Investment Ltd.
c/o Joseph Boucher
Neider & Boucher S.C.
440 Science Dr, #300
Madison, WI 53711-1064

Pitney Bowes
1 Elmcroft Rd
Stamford, CT 06926-0700

Pitney Bowes Inc
4901 Belfort Rd #120
Jacksonville FL 32256-6016

Professional Video & Tape Inc
10260 SW Nimbus Ave #M4
Tigard, OR 97223-4344

QBE Specialty Insurance Co
Wall St Plaza
88 Pine St
New York, NY 10005-1801

Qwest
200 Valley River Ctr
Eugene, OR 97401-2174

Qwest Corp
Attn Jane Frey
1801 California St #900
Denver CO 80202-2609

Ready Rooter & Chapman Plumbing
90557 Link Rd
Eugene, OR 97402-9634

Red's Fire Protection Inc
POB 1697
Cottage Grove, OR 97424-0068

Rental Owners Association
POB 51318
Eugene, OR 97405-0905

Rethink LLP
465 California St #310
San Francisco, CA 94104-1839

Rexius
1275 Bailey Hill Rd
Eugene, OR 97402-3002

Richard Guy
2804 Kinney Lp.
Eugene, OR 97408-5022

Rimal Binaya & Pankaja Achakya
2750 Shadow View Dr.
#324
Eugene, OR 97408-4643

Rita Healey
2750 Shadow View Dr.
#338
Eugene, OR 97408-4644

Roadrunner Delivery
POB 25812
Eugene, OR 97402-0460

Roberston Sherwood Architects PC
132 East Broadway #540
Eugene, OR 97401-3176

Robert Gallager
c/o Melanie Hakola
662 NE Stephens St
Roseburg, OR 97470-3151

Robert Liao
2751 Shadow View Dr #410
Eugene, OR 97408-4671

Robert Wilson
2751 Shadow View Dr #230
Eugene, OR 97408-4661

Robinson Plumbing Inc
POB 23753
Eugene, OR 97402-0431

Rodeo Steak House Grill
1200 NW Garden Valley Blvd.
Roseburg, OR 97471-1925

Roger Bingham
2751 Shadow View Dr #211
Eugene, OR 97408-4640

Roseburg Urban Sanitary Authority
POB 1185
Roseburg, OR 97470-0265

Rowell Brokaw Architects PC
1 East Broadway #300
Eugene, OR 97401-3166

Rupa Pillai
2751 Shadow View Dr #330
Eugene, OR 97408-4662

S & S Sweeping
4384 Carnes Rd
Roseburg, OR 97471-4609

SAIF
400 High St SE
Salem, OR 97312-1000

Sadie A. Dressekie
2360 Riverview St
Eugene, OR 97403-2240

Safeco
Liberty Mutual Gorup
175 Berkeley St
Boston, MA 02116-3350

Sanipac
POB 10928
Eugene, OR 97440-2928

Sarah Focht
2750 Shadow View Dr.
#238
Eugene, OR 97408-4642

Sarah Wobbe
32494 Twin Buttes Dr
Halsey, OR 97348-9724

Scott Frost
2977 Lord Byron Pl.
Eugene, OR 97408-4638

Scott M. Diehl
2058 Morning View Dr
Eugene, OR 97405-1632

SecureCom Inc
1940 Don St #100
Springfield OR 97477-5911

Select Medical Corp.
4714 Old Gettysburg Rd.
Gettysburg, PA 17055-4325

ServiceMaster Cleaning Services
POB 42228
Eugene, OR 97404-0591

Shao Yitong
2750 Shadow View Dr.
#337
Eugene, OR 97408-4644

Shawn Wells
143 Stults Ave
Eugene, OR 97404-3270

Siuslaw Bank
POB 11529
Eugene, OR 97440-3729

Siuslaw Bank
c/o John D Albert
POB 968
Salem OR 97308-0968

Sizzler/Double D Foods
302 Shelly St
Springfield OR 97477-5903

Skyview Aerial Surveys Inc
POB 10333
Eugene, OR 97440-2333

| | | |
|---|---|---|
| Solarc Architecture and Engineering Inc<br>223 W. 12 Ave<br>Eugene, OR 97401-3409 | Stanley Security Solutions<br>Dept Ch 10651<br>Palatine, IL 60055-0001 | Staples<br>POB 95708<br>Chicago, IL 60694-5708 |
| Staples Inc<br>Attn Bryan Mannlein<br>555 W 112th Ave<br>Northglenn CO 80234-3022 | State of Texas<br>Comptroller of Public Accounts<br>POB 149348<br>Austin TX 78714-9348 | Structured<br>12901 SE 97th Ave #400<br>Clackamas, OR 97015-7907 |
| Stuart Chinn<br>2750 Shadow View Dr.<br>#235<br>Eugene, OR 97408-4642 | Summit Bank<br>c/o Andrew Parks<br>POB 1758<br>Eugene OR 97440-1758 | Sun Life & Health Ins.<br>POB 1477<br>Greenfield, MA 01302-1477 |
| Sunset Heating & Air Inc<br>5729 Main St<br>Springfield, OR 97478-5426 | Suzanne K. Arlie<br>2911 Tennyson Ave #400<br>Eugene OR 97408-4693 | Systems West Engineers Inc<br>411 High St<br>Eugene, OR 97401-2427 |
| Taco Time<br>POB 40051<br>Eugene OR 97404-0004 | Tara Carlton<br>2751 Shadow View Dr #332<br>Eugene, OR 97408-4662 | Taylor Equipment Sales<br>c/o Donald & Rowdon Catheryn Taylor<br>2750 Shadow View Dr.<br>#410<br>Eugene, OR 97408-4657 |
| Teresa A. Bishow<br>3520 High St<br>Eugene, OR 97405-3861 | Teresa Courtney<br>2751 Shadow View Dr #210<br>Eugene, OR 97408-4640 | The Automation Group<br>2751 Shadow View Dr #438<br>Eugene, OR 97408-4680 |
| The Carpet Company Inc<br>1585 W. 7th<br>Eugene, OR 97402-4462 | The Fifth Third Bank<br>c/o Conrad K. Chiu, Esq.<br>7 Times Square<br>Times Square Tower<br>New York, NY 10036-6524 | The Hartford<br>POB 2907<br>Hartford, CT 06104-2907 |
| The Keyhole Locksmith<br>1775 West 11th<br>Eugene, OR 97402-3713 | Third Generation Painting<br>POB 24728<br>Eugene, OR 97402-0441 | Thompson Landscape Co<br>POB 11562<br>Eugene, OR 97440-3762 |
| Thorp Purdy Jewett Urness & Wilkinson PC<br>1011 Harlow Road, Suite 300<br>Springfield, OR 97477-1187 | Thorp, Purdy, Jewett<br>1011 Harlow Rd #300<br>Springfield, OR 97477-1187 | Tiffany's Drug Co.<br>337 Goodpasture Island Rd<br>Eugene OR 97401-2109 |
| Tim Hanf & Mary Brookes<br>2751 Shadow View Dr #311<br>Eugene, OR 97408-4662 | Tonkon Torp LLP<br>888 SW Fifth Ave #1600<br>Portland OR 97204-2012 | Triple J&S Signs<br>86501 Lorane Hwy<br>Eugene, OR 97405-9212 |

Twin Rivers Plumbing
1525 Irving Rd
Eugene, OR 97402-9753

U.S. Forest Service
4480 Hwy 101 #101
Florence OR 97439-8831

US Trustee, Eugene
405 E 8th Ave #1100
Eugene, OR 97401-2728

USAIF
1501 Fourth Ave #1600
Seattle, WA 98101-3613

Umpqua Bank
c/o John Casey Mills
Miller Nash LLP
111 SW 5th Ave #3400
Portland OR 97204-3699

Umpqua Roofing
POB 22424
Eugene, OR 97402-0418

United States Liability Co
190 S. Warner Rd
POB 6700
Wayne, PA 19087-8700

Universal Avionics
Dept 9273
Los Angeles, CA 90084-9273

University of Oregon
POB 3157
Eugene OR 97403-0157

Vanessa Markham
2751 Shadow View Dr #314
Eugene, OR 97408-4662

Velocity
c/o Real Page Inc
POB 671622
Dallas, TX 75267-1622

Veneta Beauty Salon
88920 Lois Lane
Elmira OR 97437-9729

Veneta Gas & Go
24927 Hwy 126
Veneta OR 97487-9459

Veneta Subway
24927-A Hwy 126
Veneta OR 97487

Verb Marketing & PR Inc
446 Charnelton St
Eugene OR 97401-2626

Verizon Wireless
Bankruptcy Administration
POB 3397
Bloomington, IL 61702-3397

Verizon Wireless
PO BOX 3397
Bloomington, IL 61702-3397

Vyanet
748 Goodpasture Island Rd
Eugene, OR 97401-1751

W2005 SVH Realty LLC
875 East Silverado Ranch Rd
Las Vegas, NV 89183-5887

Warren & Donna Harvey
2751 Shadow View Dr #310
Eugene, OR 97408-4679

Washington Federal Savings
300 SW Ellsworth
Albany, OR 97321-2268

Water Flow Specialties
POB 71452
Eugene, OR 97401-0198

Wes & Kara Towne
2751 Shadow View Dr #434
Eugene, OR 97408-4671

Western Asphalt Maintenance Inc
POB 2460
Eugene, OR 97402-0148

Westlane Storage
24945 Hwy 126
Veneta OR 97487-9459

Willamette Media
945 Garfield St
Eugene OR 97402-2780

Willamette Net
1574 Coburg Rd #118
Eugene, OR 97401-4802

William R Greenhoot
14422 N Chronicle St
Mead WA 99021-9400

William R. Greenhoot
1126 Gateway Loop
#100
Springfield, OR 97477-7748

Wooley's Refrigeration Contractors Inc
POB 42025
Eugene, OR 97404-0570

Yvonne Dekayie
2750 Shadow View Dr.
#210
Eugene, OR 97408-4641

bello Salon & Spa
2746 Shadow View Dr
Eugene OR 97408-4610

BRAD T SUMMERS
101 SW Main #1100
Portland, OR 97204-3219

DOUGLAS R WILKINSON
1011 Harlow Rd #300
Springfield, OR 97477-1187

David E. Bomar
Balzhiser & Hubbard Engineers, Inc.
100 W 13th Ave
Eugene, OR 97401-3433

Gregory Brokaw
Rowell Brokaw Architects, PC
1 East Broadway #300
Eugene, OR 97401-3166

JOHN D FIERO
150 California St - 15th Fl
San Francisco, CA 94111-4554

JONATHAN POLLAND
Rethink LLP
465 California St #310
San Francisco, CA 94104-1839

JUSTIN D LEONARD
101 SW Main St #1100
Portland, OR 97204-3219

James R. Hanks
JRH Transportation Engineering
4765 Village Plaza Lp #201
Eugene, OR 97401-6676

Jerry Vicars
Fabrication & Mechanical Group Inc
POB 42173
Eugene, OR 97404-0581

LINDA F CANTOR
10100 Santa Monica Blvd - 11th Fl
Los Angeles, CA 90067-4003

MICHAEL P KEARNEY
POB 1758
Eugene, OR 97440-1758

Micheal Roberts
1919 Myers Road
Eugene, OR 97401-1940

Mike Broadsword
Eugene Sand & Gravel
POB 1067
Eugene, OR 97440-1067

TEDDY M KAPUR
10100 Santa Monica Blvd 11th Fl
Los Angeles, CA 90067-4003